No. 22-15815

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

BRANDON BRISKIN,
on behalf of himself and those similarly situated,
*Plaintiff-Appellant,*

v.

SHOPIFY INC., *et al.*,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California, No. 4:21-cv-06269-PJH
Hon. Phyllis J. Hamilton, United States District Judge

## OPENING BRIEF FOR PLAINTIFF-APPELLANT

Seth Safier
Matthew T. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94114
(415) 639-9090

Nicolas A. Sansone
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiff-Appellant*

December 12, 2022

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ....................................................... 3

ISSUES PRESENTED ...................................................................... 4

STATEMENT OF THE CASE ............................................................. 4

   I.    The Shopify Defendants and Their Joint Extraction and
        Dissemination of Sensitive Consumer Data ............................... 4

   II.   Brandon Briskin's Unwitting Disclosure of Personal Data
        to Shopify ............................................................................. 10

   III.  Procedural History and the District Court's Opinion .............. 11

SUMMARY OF THE ARGUMENT ..................................................... 15

STANDARD OF REVIEW ................................................................ 18

ARGUMENT ................................................................................. 18

   I.    The district court erred in dismissing for lack of personal
        jurisdiction. ........................................................................... 18

        A. California may exercise jurisdiction over defendants on
           claims that they deliberately extracted, used, and
           disclosed sensitive data from a California consumer
           conducting a California transaction. .................................... 19

        B. At a minimum, the district court abused its discretion
           when it denied jurisdictional discovery without giving a
           reason. ............................................................................. 30

   II.   The SAC complies with Rule 8(a) by giving each defendant
        notice of the claims against it and of the course of business
        conduct from which those claims arise. ................................... 33

i

CONCLUSION .......................................................................... 40

CERTIFICATE OF COMPLIANCE ...................................................... 41

CERTIFICATE OF SERVICE ............................................................ 42

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adobe Systems Inc. v. Blue Source Group, Inc.,*
  125 F. Supp. 3d 945 (N.D. Cal. 2015) ........................................... 37

*Austin v. University of Oregon,*
  925 F.3d 1133 (9th Cir. 2019) .................................................. 34, 35

*Axiom Foods, Inc. v. Acerchem International, Inc.,*
  874 F.3d 1064 (9th Cir. 2017) ....................................................... 18

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) ....................................................... 22

*Burri Law PA v. Skurla,*
  35 F.4th 1207 (9th Cir. 2022) ........................................................ 20

*CollegeSource, Inc. v. AcademyOne, Inc.,*
  653 F.3d 1066 (9th Cir. 2011) ....................................................... 21

*Cook v. Brewer,*
  637 F.3d 1002 (9th Cir. 2011) ....................................................... 18

*DeSoto Cab Co. v. Uber Technologies, Inc.,*
  No. 16-cv-06385, 2018 WL 10247483 (N.D. Cal. Sept. 24, 2018) .. 38

*Esquivel v. United States,*
  21 F.4th 565 (9th Cir. 2021) .......................................................... 18

*Ford Motor Co. v. Montana Eighth Judicial District Court,*
  141 S. Ct. 1017 (2021) ............................................................. 28, 30

*Gillibeau v. City of Richmond,*
  417 F.2d 426 (9th Cir. 1969) ..................................................... 35, 36

*Hearns v. San Bernardino Police Department,*
  530 F.3d 1124 (9th Cir. 2008) ................................................... 36, 37

*Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry of Southern California*,
648 F.2d 1252 (9th Cir. 1981) ........................................ 31

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ........................................ 30

*Laub v. United States Department of the Interior*,
342 F.3d 1080 (9th Cir. 2003) ................................. 31, 32

*LNS Enterprises LLC v. Continental Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ........................................ 19

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
797 F.3d 160 (2d Cir. 2015) ........................................ 39

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........................... passim

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ................................. 35, 36

*Ochoa v. J.B. Martin & Sons Farms, Inc.*,
287 F.3d 1182 (9th Cir. 2002) ........................................ 23

*Quality Auto Painting Center of Roselle, Inc. v. State Farm Indemnity Co.*,
917 F.3d 1249 (11th Cir. 2019) ........................................ 35

*Roberts v. County of Riverside*,
No. EDCV 19-1877, 2020 WL 3965027 (C.D. Cal. June 5, 2020) .. 38

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........................................ 5

*United States ex rel. Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2018) ........................................ 39

*United States v. Corinthian Colleges,*
    655 F.3d 984 (9th Cir. 2011) ........................................38

*Williams v. Yamaha Motor Co.,*
    851 F.3d 1015 (9th Cir. 2017) .....................................33

**Statutes**

28 U.S.C. § 1291 ...............................................................3

28 U.S.C. § 1332 ...............................................................3

Cal. Bus. & Prof. Code § 17200 ..............................12

Cal. Penal Code § 502...................................................12

Cal. Penal Code § 631...................................................12

Cal. Penal Code § 635...................................................12

**Rules**

Federal Rules of Appellate Procedure

    Rule 4......................................................................3

Federal Rules of Civil Procedure

    Rule 4....................................................................19

    Rule 8.............................................................. passim

    Rule 9.............................................................38, 39

    Rule 12..................................................................13

# INTRODUCTION

Defendants-Appellees Shopify Inc., Shopify (USA) Inc., and Shopify Payments (USA) Inc. (collectively, "Shopify") are three related companies that together create and operate web-based sales platforms for merchants that sell products online. The operative complaint in this case alleges that Shopify has violated several specific provisions of California law by using these sales platforms to surreptitiously extract vast troves of sensitive personal data from unconsenting third-party consumers when those consumers make California-based purchases from Shopify's merchant network. The complaint further alleges that Shopify then uses that data for its own benefit by, among other things, creating individualized profiles of California consumers that it sells to third parties for their commercial use.

The district court dismissed the operative complaint without leave to amend, accepting Shopify's argument that California's exercise of personal jurisdiction over Shopify on the claims alleged would violate due process. The district court further held that the complaint failed to meet the pleading standards of Federal Rule of Civil Procedure 8(a) because it

supposedly gave the three individual Shopify entities insufficient notice of the claims against them.

Both holdings demand reversal. As for personal jurisdiction, Shopify has pursued commercial gain by actively inserting itself into large numbers of sales transactions occurring in California, and due process does not forbid California from taking jurisdiction over Shopify on claims that arise directly out of Shopify's deliberate involvement in those transactions. This Court has already recognized that, for jurisdictional purposes, a company may be found to direct its online activities at users in California even when it also directs those activities at Internet users in other states. Here, then, the operative complaint's allegations about Shopify's role in California transactions—and Shopify's subsequent commercial use of the California consumer data it extracts during those transactions—suffice to establish personal jurisdiction in this case. And even if they did not, the proper course for the district court would have been to order limited jurisdictional discovery, not to dismiss.

As for Rule 8(a), the operative complaint clearly sets forth the joint course of commercial conduct for which Plaintiff-Appellant Brandon Briskin seeks to hold each of the three Shopify entities liable. It then

articulates six specific legal claims against all three entities based on that alleged conduct, giving each entity fair notice of the claims against it. The complaint accordingly does exactly what this Court has held that Rule 8(a) requires.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the amount in controversy exceeds $5,000,000. Because the district court entered a final judgment dismissing the action in its entirety without leave to amend, ER 4, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.[1] The district court entered its final judgment on May 5, 2022, ER 4, and Plaintiff-Appellant Briskin filed his notice of appeal on June 1, 2022, *see* ER 140–41. This appeal is therefore timely pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

---

[1] All citations with the form "ER [page number]" are to the Excerpts of Record filed with this brief. Where a citation is to an entry on the district court docket, ER 146–54, it takes the form "ER [page number] (DE [docket entry number])."

## ISSUES PRESENTED

1.    Whether the district court erred in holding that it would offend due process for a court in California to take jurisdiction over Shopify on claims that Shopify unlawfully extracted a California resident's personal data during a California-based sales transaction for Shopify's own active commercial use.

2.    Whether the district court abused its discretion when, without explanation, it denied Plaintiff-Appellant Briskin's request for leave to take limited jurisdictional discovery.

3.    Whether the district court erred in holding that the operative complaint failed to put the three Shopify entities on notice of the claims against them because the complaint referenced those entities collectively when describing the joint course of conduct that gave rise to those claims.

## STATEMENT OF THE CASE

## I.    The Shopify Defendants and Their Joint Extraction and Dissemination of Sensitive Consumer Data

Shopify Inc. is a Canadian corporation, with headquarters in Ottawa, that sells web-based payment platforms and related services to merchants that conduct online sales transactions with third-party

consumers.[2] ER 95. Shopify Inc. directly contracts with over 80,000 California merchants, some of which are its largest customers, and it operates at least one California fulfillment center from which it ships its customers' goods to end consumers. ER 95–96. Since 2018, Shopify Inc. has maintained a physical store in Los Angeles to attract new California customers and to build relationships with its existing ones. ER 95–96. As Shopify Inc.'s vice president explained upon the store's opening, "[I]t made sense for us to debut in the Los Angeles market as the region is one of our densest in customer base." ER 96.

Shopify (USA) Inc. ("Shopify USA"), a wholly owned subsidiary of Shopify Inc., is a Delaware corporation with its principal place of business in Canada. ER 97. Shopify Inc. describes Shopify USA as a "subprocessor" of the data collected from consumers during their online transactions with the merchants that use Shopify's sales platforms. ER 97. Shopify USA serves thousands of California businesses,

---

[2] The brief draws its recitation of the facts from the complaint's allegations and the affidavits the parties submitted in support of their arguments on personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (noting that allegations in the complaint are taken as true on a motion to dismiss for lack of personal jurisdiction unless specifically controverted by affidavit).

maintained an office in San Francisco until most of its employees transitioned to remote work during the COVID-19 pandemic, and employs a workforce that is roughly 25% Californian. ER 97; *see* ER 88.

Shopify Payments (USA) Inc. ("Shopify Payments"), also a wholly owned subsidiary of Shopify Inc., is a Delaware corporation with its principal place of business in Delaware. ER 97. Shopify Payments contracts with Shopify Inc. merchants to provide software that enables the merchants to accept and process online credit- and debit-card payments. ER 97. To satisfy its obligations under these contracts, Shopify Payments relies exclusively on a payment processor, Stripe, Inc., that has its principal place of business in California. ER 98. Shopify Payments explains to its merchants that it and Stripe "collect, use, process and disclose" personal data that Shopify Payments extracts from the merchants' customers during their online payment transactions. ER 97. Thousands of California merchants have contracts with Shopify Payments, and each and every consumer payment transaction that occurs on the Shopify platform relies on Shopify Payments. ER 97.

The three Shopify companies together create "an e-commerce platform that enables merchants to easily sell products online." ER 92. A

merchant that wants to enable consumers to buy its products online can provide Shopify with its product catalogue, prices, shipping options, and other information, and Shopify will create code for an online sales platform to embed within the merchant's website. ER 99–100. Shopify, not the merchant, handles payments made via the platform. ER 99–100.

Unbeknownst to end consumers, Shopify collects vast quantities of consumer data through the sales platforms it builds and operates for its customers. When an end consumer accesses a Shopify platform through a merchant's website, the consumer appears to be interacting solely with the merchant. ER 100. In fact, Shopify sends code to the consumer's device, and the device then executes the code to display the sales portal and route data from the user's device to Shopify's servers. ER 100–04. This data includes information consumers submit during sales transactions, such as shipping or payment details, as well as information consumers never affirmatively disclose at all, such as IP addresses and geolocation data that indicate where sales took place. ER 106. Once a consumer completes a purchase, Shopify processes the consumer's payment in collaboration with third parties such as Stripe and sends the consumer a confirmation email that appears to emanate from the

merchant. ER 104–05. Shopify and Stripe retain the data they receive during this process even after the purchase is complete. ER 106.

In addition to the data Shopify extracts through sales transactions, it also collects information about individuals' commercial habits more broadly. ER 105. When a consumer visits a Shopify merchant's website, Shopify installs tracking files known as "cookies" on the consumer's browser. ER 105. These cookies let Shopify track the consumer's behavior across its entire network of over one million merchants. ER 105.

Shopify uses the data it extracts to build profiles of individual consumers that enable it and its partners like Stripe to develop a risk analysis of consumers' transactions. ER 107–09. A Shopify merchant involved in a transaction with a consumer can access the data Shopify has extracted from the consumer and can use Shopify's filters preemptively to block or cancel any transaction designated as high risk based on factors such as whether the characteristics of the consumer's order are "similar to non-fraudulent orders observed in the past," whether the billing address matches the credit card's registered address, and whether the shipping address is geographically proximate to the IP address from which the consumer is placing the order. ER 106–08. These

cancellations can damage consumers by increasing the risk of further cancellations. ER 109.

Shopify's consumer database thus enables Shopify to provide valuable services to its merchant network. Moreover, because the database contains geolocation data for each consumer transaction, ER 106, Shopify knows the identity of the states from which it is extracting consumer data. In other words, after collecting data from large numbers of Californians, Shopify knowingly and intentionally processes and uses that data for its own commercial benefit.

Beyond building individualized consumer profiles, Shopify discloses consumer data to third parties that engage in similar profiling. ER 109. For example, Shopify shares consumer data with its payment processor, Stripe, which in turn creates consumer-specific "risk insights" profiles that it then sells to its own customers. ER 109. This retention and dissemination of sensitive personal data puts affected consumers at increased risk of identity theft, credit-card theft, and fraud. ER 110.

Meanwhile, Shopify deliberately fails to disclose its involvement in the online sales process—including its collection, retention, and dissemination of consumer data—to the individuals who buy from its

merchants. ER 111–12. And because Shopify's sales platforms are embedded seamlessly within Shopify merchants' own websites, consumers who make purchases through these platforms are unaware that they are divulging their personal data to Shopify rather than to the merchants with which they believe they are communicating. ER 100–05.

## II. Brandon Briskin's Unwitting Disclosure of Personal Data to Shopify

On June 14, 2019, Brandon Briskin, who resides in California, made an online purchase from IABMFG, a fitness-apparel vendor with its principal place of business in California. ER 113; *see* ER 95. At checkout, Briskin entered his full name, shipping and billing addresses, phone number, and credit-card information into an online payment form that he believed IABMFG had generated. ER 113–14. The payment form, though, used Shopify's code and, as a result, caused Briskin's device to connect to Shopify's computer network, install Shopify's tracking cookies, and transmit Briskin's personal data directly to Shopify. ER 114. Shopify then stored, analyzed, and processed the data, and shared it with Stripe. ER 114.

Shopify has used the personal information that it extracted from Briskin to conduct a risk analysis of his subsequent transactions with

other Shopify merchants. ER 115. Stripe also has made the personal information that Shopify shared with it about Briskin available to its own merchant network. ER 115. Meanwhile, Shopify has used Briskin's data to send him unsolicited marketing emails and text messages about IABMFG products. ER 116.

At the time of his IABMFG purchase, Briskin was unaware that Shopify played any role in the transaction, and he did not consent to Shopify's collection and use of his personal data. ER 114–15. Briskin would not have made the purchase had he known it would cause Shopify to track his consumer behavior, store and disseminate his private data, and create a risk profile based on his transaction history. ER 116.

## III.  Procedural History and the District Court's Opinion

Briskin filed a class-action complaint in August 2021 against Shopify Inc. and Shopify USA on behalf of himself and others who had also submitted payment information via Shopify's sales platforms while located in California. ER 148 (DE 1). Briskin promptly superseded the original complaint with an amended one, and Shopify Inc. and Shopify USA then moved to dismiss the amended complaint. ER 149–50 (DE 17, 29–30). Briskin opposed these motions while also moving for leave to file

a Second Amended Complaint ("SAC"). ER 151 (DE 36–38). The district court granted Briskin leave to amend and accordingly terminated the pending motions to dismiss. ER 151 (DE 43).

Briskin filed the SAC on January 24, 2022. ER 91. The SAC added Shopify Payments as a defendant and alleged that Shopify's unconsented collection, use, and dissemination of consumer data violated California's Invasion of Privacy Act, Cal. Penal Code §§ 631, 635; the right to privacy found in the California Constitution; California's common-law prohibition on intrusion upon seclusion; California's Computer Data Access and Fraud Act, Cal. Penal Code § 502; and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ER 119–38. The SAC sought individual and class-wide monetary and equitable relief. ER 138.

Each Shopify entity moved separately to dismiss the SAC. ER 152 (DE 51–53). As relevant, Shopify argued that the district court lacked personal jurisdiction over any of the three Shopify entities and that the SAC failed to satisfy the pleading standards of Federal Rule of Civil

Procedure 8(a).[3] ER 73. Briskin opposed the motions. ER 153 (DE 58–60). He also moved for leave to take limited jurisdictional discovery in the event the district court found the existing record insufficient to establish personal jurisdiction: specifically, he sought authorization to conduct two two-hour depositions with each Shopify defendant and to serve a specific set of discovery requests that he included with his motion. ER 21; *see* ER 59–71.

The district court granted Shopify's motions and dismissed the action without leave to amend based on its conclusion that it lacked personal jurisdiction over any of the defendants. ER 13. Characterizing Shopify's alleged activity as simply selling IABMFG an online sales platform and "providing hosting services for [IABMFG's] website," the district court held that this sort of "passive conduct" was insufficient to establish any "intentional act directed at California residents." ER 12. Although the court acknowledged that Shopify Inc. had a physical store in Los Angeles, it did not "consider[] that to be purposeful availment of

---

[3] Shopify also argued that the SAC should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for relief. ER 73. The district court's order dismissed the case solely on personal jurisdiction and Rule 8(a) grounds. ER 8–12.

[California's] benefits," and it further held that Briskin had not shown "how his Internet-based claims arise from or … relate to" that in-state activity. ER 12. Nor, the district court concluded, did Shopify Payments' contract with Stripe, which has its principal place of business in California, establish jurisdiction because this contractual relationship did not "show that [Shopify Payments] expressly aimed acts at [California]." ER 12.

The district court also held that the SAC failed to comply with Rule 8(a). ER 9–10. As the district court put it, the SAC "d[id] not allege [Briskin's] particular claims against any specific defendant, and rather generally allege[d] all claims against all defendants without identifying which defendant is responsible for his alleged injuries." ER 9–10. The SAC thus supposedly "fail[ed] to put any of the three defendants fairly on notice of the claims against them" and so had to be dismissed. ER 10.

The district court noted that it would have granted leave to amend the complaint had the supposed Rule 8(a) pleading deficiency been the only basis for dismissal. ER 13. But because the court held that it lacked personal jurisdiction over any defendant, it specified that dismissal was without leave to amend, ER 13, and it entered final judgment

accordingly, ER 4. The court did not address Briskin's motion for leave to take limited jurisdictional discovery, but the effect of its judgment was to deny that motion without explanation.

## SUMMARY OF THE ARGUMENT

**I.** The district court's sole ground for dismissing without leave to amend was its holding that it could not constitutionally take personal jurisdiction over any of the three Shopify entities on Briskin's claims. Because this holding was error, this Court should reverse and remand.

The SAC's uncontroverted factual allegations establish that Briskin's claims arise from activity that Shopify purposefully directed into California: Shopify inserted itself into a sales transaction occurring in California between Briskin—a California resident—and a company with its principal place of business in California. Shopify operated the online payment platform through which Briskin unwittingly transmitted sensitive personal data out of California and directly to Shopify. And Shopify sought commercial gain by using and disseminating the data that it deliberately extracted from California, while knowing that the data emanated from California. Contrary to the district court's opinion, this conduct cannot credibly be characterized as "passive" or as simply

playing host to a California merchant's website—particularly when the SAC's allegations are viewed in the light most favorable to Briskin, as required at this stage in the litigation.

Although Shopify argued below that it could not have purposefully directed its activities at California because its online platforms were available to Internet users across the country, this Court's precedent forecloses that argument. In *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), this Court held that an out-of-state defendant could be subject to personal jurisdiction in California for its display of images on a nationally accessible website because the defendant anticipated and sought substantial viewership in California. Here, Shopify has fostered extensive California business ties in an effort to facilitate its in-state commercial activities. And making California's jurisdiction doubly clear, those in-state activities did not consist of passively displaying images for California viewers as in *Mavrix Photo*. Instead, Shopify's in-state activity deliberately induced California shoppers to transmit personal data directly to Shopify through an interactive platform, enabling Shopify to extract data at the expense of California consumers and to use that data for its own commercial benefit.

Even if the SAC's uncontroverted allegations were insufficient to establish jurisdiction, reversal and remand would still be the proper course because the district court abused its discretion in denying Briskin the limited jurisdictional discovery he requested. This Court has made clear that such a denial is proper only if discovery would clearly not produce facts supporting jurisdiction. The district court gave no reason why this case satisfies that demanding standard, and it does not.

**II.** This Court should also reverse on the Rule 8(a) issue. Rule 8(a) guarantees defendants fair notice of the claims against them and of the factual allegations that support those claims. The SAC satisfies this guarantee. It raises six enumerated legal claims against each of the three Shopify defendants and describes the alleged data-extraction scheme that gives rise to those claims. The district court would require the SAC to spell out each Shopify entity's precise role in this joint scheme. That requirement, however, has no basis in this Court's Rule 8(a) precedents. And it would work particular inequity in cases like this one, where detailed knowledge about the specifics of a small set of closely affiliated corporate defendants' coordinated operations rests with the defendants themselves, not with the plaintiff.

In any event, the district court recognized that, if it possessed personal jurisdiction, Briskin would have been entitled to leave to amend to satisfy the court's view of Rule 8(a)'s requirements. This Court accordingly should remand if it reverses on personal jurisdiction, irrespective of how it rules on Rule 8(a).

## STANDARD OF REVIEW

This Court reviews dismissal for failure to comply with Rule 8(a) or for lack of personal jurisdiction de novo. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017) (personal jurisdiction); *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (Rule 8(a)). It reviews the district court's denial of jurisdictional discovery for abuse of discretion. *Esquivel v. United States*, 21 F.4th 565, 572 (9th Cir. 2021).

## ARGUMENT

### I.  The district court erred in dismissing for lack of personal jurisdiction.

The district court entered a final judgment dismissing this case without leave to amend on the ground that it would offend due process for a court in California to take personal jurisdiction over Shopify on the claims asserted here. ER 12–13. That holding is untenable in light of the SAC's uncontroverted allegations. Even if these allegations were

insufficient in themselves to establish jurisdiction, moreover, the district court abused its discretion by withholding limited jurisdictional discovery.

**A. California may exercise jurisdiction over defendants on claims that they deliberately extracted, used, and disclosed sensitive data from a California consumer conducting a California transaction.**

The district court may take personal jurisdiction over Shopify on the claims alleged if a California court of general jurisdiction could do the same under state and federal law. *See Mavrix Photo*, 647 F.3d at 1223; Fed. R. Civ. P. 4(k)(1)(A). Because California authorizes its courts to take personal jurisdiction on any basis consistent with constitutional due process, "the jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo*, 647 F.3d at 1223. Briskin has not argued that any of the Shopify entities is subject to general, all-purpose jurisdiction in California. The question is thus whether Shopify has "sufficient minimum contacts with [California] that are relevant to the lawsuit," such that Shopify is subject to specific jurisdiction on Briskin's claims. *LNS Enters. LLC v. Continental Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). The answer is yes.

Because Briskin's claims "sound[] in tort," for personal jurisdiction he must show that (1) Shopify "purposefully direct[ed] activities toward the forum state" and (2) the claims "arise[] out of or relate[] to those activities."[4] *Burri Law PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022). For purposes of the first element, a defendant purposefully directs its activities to the forum state where it "(1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state." *Id.* at 1213. Because Shopify based its motions to dismiss on the case's "written materials rather than an evidentiary hearing," Briskin "need only make a prima facie showing of jurisdictional facts" to withstand dismissal, with the "allegations in the [SAC] … taken as true" unless specifically controverted by affidavit.[5] *Mavrix Photo*, 647 F.3d at 1223.

---

[4] If a plaintiff establishes these elements, a defendant may nonetheless defeat jurisdiction by presenting a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Mavrix Photo*, 647 F.3d at 1228 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Shopify has never suggested, let alone attempted to make a compelling case, that the exercise of jurisdiction would be unreasonable.

[5] Shopify attached to its motions to dismiss two declarations that it had prepared for use in an earlier litigation, but neither declaration purports to controvert the SAC's jurisdictional allegations. ER 81–90.

Briskin has made the requisite showing. His legal claims arise directly from Shopify's collection, use, and dissemination of his data. And Shopify purposefully directed its activities into the forum state when it reached into California to extract personal data from a consumer transaction occurring there between Briskin (a California resident) and IABMFG (a company with its principal place of business in California) for its own subsequent commercial use. Had Shopify physically placed a surveillance device at a cash register in a California storefront and used it to intercept payment details from customers there, it would certainly have committed (1) an intentional act (2) aimed at California that was (3) clearly likely to cause harm in California. There is no reason why the online nature of Shopify's equivalent conduct calls for a different analysis. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076–79 (9th Cir. 2011) (holding that out-of-state defendant purposefully directed its activities into the forum state where it downloaded materials from an in-state competitor's website to make unlawful commercial use of them).

The district court reached the opposite conclusion by misconstruing the nature of Shopify's alleged activities. The court failed to focus on the

forum-state conduct from which Briskin's claims arise—that is, Shopify's active interjection into a California transaction to extract commercially valuable information and to share and use that data for its own commercial gain. Instead, the district court considered only a single predicate step that Shopify took to facilitate that conduct—that is, its "sale of a product to IABMFG." ER 12. But the "product" that Shopify sold to the California-focused IABMFG was a consumer-facing *service* that Shopify embedded into IABMFG's website and that caused end consumers who believed they were interacting with IABMFG to funnel their personal information straight to Shopify. *See, e.g.*, ER 103 (SAC alleging that IABMFG's payment form "is generated by Shopify" and that data entered into the form is "sent directly to Shopify's servers"). The direct, unmediated interactions between Shopify and California shoppers through an interactive, web-based payment platform that Shopify itself operates are what form the basis for Briskin's claims. *See Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (stating that "where [an] Internet site actually belongs to and is operated by the defendant, the [interactive] nature of the website has jurisdictional significance because the website allows the defendant to maintain some ongoing contact with

the forum state"). To the extent the district court viewed Shopify as merely "an agent … providing hosting services" for merchants' websites, ER 12, it impermissibly misconstrued the SAC in a light *unfavorable* to Briskin. *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002) (noting that materials considered in resolving a motion to dismiss for lack of personal jurisdiction must be construed in a light most favorable to the plaintiff).

Contrary to the district court's characterization, Shopify's data-extraction activity is not mere "passive conduct." ER 12. The automated nature of the extraction process does not alter the jurisdictional significance of Shopify's conscious choice to set up a mechanism that intercepts vast quantities of data from California shoppers during their online transactions. Further, Shopify does not just sit by while this data accumulates. It actively draws on the data that it extracts—and that it *knows* from associated geolocation information to have emanated from California—to create profiles on individual California shoppers for its own commercial benefit. It then disseminates those profiles and the underlying data to its merchants and third-party partners, such as Stripe, who in turn use the data for their own purposes as well.

Shopify argued below that its active involvement in California shoppers' in-state transactions could not support jurisdiction because Shopify's nationwide operations do not single out California for special treatment. ER 76. Given that Shopify extracts data from online purchases wherever they occur, the argument runs, Shopify has not purposefully directed its activities at California specifically. In Shopify's view, its involvement in California transactions is a random, fortuitous contact that stems from *others*' choices. Specifically, Shopify emphasizes that it was "not Shopify … , but IA[BM]FG, that chose to make its online store accessible in California; and not Shopify … , but [Briskin] himself, who chose to reach out from California to that online store and initiate his purchase." ER 76. That reasoning, like the district court's, is flawed. IABMFG, predictably enough, chose to transact with customers in its principal place of business—California. *Shopify*, however, chose to extract personal data from IABMFG's customers—wherever located— through the payment portal it created and maintained. So when a buyer like Briskin unwittingly discloses his personal data to Shopify through the online infrastructure that *Shopify* created specifically to cause him to do so, it is a result of activity that *Shopify* aimed into the state. To

illustrate, consider a hypothetical company that installs a physical surveillance device in a food truck that operates in both California and Nevada. The company's surveillance of California customers is no less intentional even though the company is agnostic at any given moment as to where the food truck is located.

It was also *Shopify*, moreover, that chose to use the personal data it extracted from California to create consumer profiles for its own commercial purposes, and that chose to share its California consumer data with others, even after knowing that the data emanated from California. That conduct, too, was neither random, fortuitous, nor attributable to third parties' actions. By processing and utilizing Californian's data for its own and its partners' benefit, *Shopify* continued to purposefully aim its activities at California even after the initial data extraction.

It is hardly surprising, then, that this Court has already rejected Shopify's argument that nationwide online activities cannot be purposefully directed at California. In *Mavrix Photo*, this Court held that California could constitutionally take jurisdiction over an out-of-state corporation on a copyright claim arising from allegedly infringing

photographs the corporation had posted on its website. 647 F.3d at 1221–22. Even though the infringing content was available to Internet users nationwide, the infringement was nonetheless "expressly aimed at the forum state." *Id.* at 1229. While merely maintaining a website that is accessible to viewers within the forum state would be insufficient for jurisdiction without "something more," this Court explained that factors such as "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident" can contribute to a showing of jurisdiction. *Id.* (citations omitted). And because the defendant in *Mavrix Photo* "'continuously and deliberately exploited' the California market for its website" and "anticipated, desired, and achieved a substantial California viewer base," *id.* at 1230, this Court discerned the "something more" necessary for jurisdiction. As the Court put it, Californians' consumption of the defendant's website "was a predictable consequence of [defendant's] business model[]" rather than "'random,' 'fortuitous,' or 'attenuated'" contact with the forum state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Much as in *Mavrix Photo*, Shopify's extensive business presence in California confirms that its extraction of consumer data in California was not a random or fortuitous consequence of third-party behavior, but rather a foreseen—and intended—function of its own decision to foster relationships with California merchants. Shopify Inc. held contracts with over 80,000 California merchants and counted Los Angeles among its "densest" areas in terms of "customer base." ER 96. It accordingly maintained a physical store in California specifically to create and sustain relationships with California merchants, and it facilitated shipments of its merchants' goods from its own California fulfillment center. ER 95–96. Shopify Inc. went so far as to actively solicit California consumers on behalf of one of its California merchants by setting up and running a pop-up store for the merchant in California. ER 33–36. Shopify USA and Shopify Payments also served thousands of California businesses while Shopify USA maintained a California office and a substantial California workforce, and Shopify Payments partnered closely with a California payment processor. ER 97–98.

The district court observed that Briskin's "Internet-based claims" may not "arise" directly from these contacts, but that misses the point.

ER 12. As explained above, Briskin's claims arise from Shopify's reaching into his California-based transaction to funnel his personal data into Shopify's own servers, and from Shopify's further processing of that California-derived data into a consumer profile thereafter. Contrary to the district court's view, *see* ER 12, the extensive business ties that Shopify consciously developed with California merchants to enable these allegedly unlawful activities certainly *relate* to Briskin's claims. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021) (holding that an out-of-state defendant's efforts to "systematically serve[]" an in-state market related to plaintiffs' claims arising from products the defendant had originally sold in other states). Put simply, Shopify's in-state business efforts go to show that Shopify "anticipated, desired, and achieved a substantial California" presence. *Mavrix Photo*, 647 F.3d at 1230. It was no mere fortuity that Shopify wound up extracting data from vast numbers of California shoppers. To the contrary, such extraction was a cornerstone of Shopify's business plan.

Indeed, this case presents an even stronger justification for jurisdiction than *Mavrix Photo* did. Not only does "the geographic scope of the defendant[s'] commercial ambitions" support jurisdiction here, as

it did there, but "the interactivity of the defendant[s'] website" weighs particularly heavily in favor of jurisdiction in this case. *Id.* at 1229. In *Mavrix Photo*, this Court held that jurisdiction was appropriate where the defendant had simply posted allegedly infringing content online and passively enabled Internet users in California to view it. *Id.* at 1230–31. Here, Shopify creates and maintains interactive payment portals through which it asks California shoppers for personal data, and through which California shoppers submit it. And once a purchase is complete, Shopify then sends a confirmation email into a California shopper's inbox. This direct, two-way communication link between Shopify and the forum state further establishes that Shopify does "something more" than maintain a passive web presence that a Californian might happen to encounter. *Id.* at 1229.

Common sense confirms the conclusion *Mavrix Photo* requires. Accepting Shopify's argument would have the perverse effect of insulating Shopify from specific jurisdiction over its data-extraction activities *anywhere* because it engages in those activities *everywhere*. But the fact that Shopify engages in a "nationwide" course of conduct means "[t]here is no unfairness in calling it to answer" for that conduct wherever

its activities are "substantial." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984); *see Ford Motor Co.*, 141 S. Ct. at 1027 (holding that where a company "deliberately extend[s]" its business into a forum state, the state can "hold the compan[y] accountable" for related in-forum harms). Accordingly, *Mavrix Photo* sensibly rejected a "theory of jurisdiction" that "would allow corporations whose websites exploit a national market to defeat jurisdiction in states where those websites generate substantial profits from local consumers." 647 F.3d at 1231.

Because the SAC's jurisdictional allegations establish that the district court would not violate due process by taking personal jurisdiction over Shopify for its extraction and processing of California consumers' personal data during their California transactions, this Court should reverse and remand for further proceedings.

### B. At a minimum, the district court abused its discretion when it denied jurisdictional discovery without giving a reason.

Even if this Court were uncertain whether the SAC's factual allegations are sufficient to supply a constitutional basis for personal jurisdiction, it should nonetheless reverse. Briskin moved below for limited jurisdictional discovery, asking for two two-hour depositions with

each Shopify defendant and the opportunity to serve an attached set of interrogatories and document requests related to Shopify's California activities. The district court did not acknowledge this motion, let alone give a reason for denying it. The court's unexplained decision not to allow this discovery before dismissing was an abuse of discretion. *See Hurn v. Retirement Fund Tr. of Plumbing, Heating & Piping Indus. of So. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981) (holding that the district court's denial of a motion "without stated reasons, where the reasons are not readily apparent, constitutes an abuse of discretion").

This Court has emphasized that "discovery should be granted when … the jurisdictional facts are contested or more facts are needed." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Here, the district court held that personal jurisdiction was inappropriate because it viewed Shopify as engaged in merely "passive conduct" in California "as an agent of IABMFG." ER 12. If the SAC's contrary allegations required further fleshing out to preclude dismissal on that ground, discovery would have allowed Briskin to establish more precisely the active nature of Shopify's efforts to acquire and use California consumer data, as well as the contours of Shopify's contractual relationship with

IABMFG. *See* ER 70 (proposed discovery requests for reports Shopify made on California consumers and for agreements between Shopify and California merchants). The requested discovery would also have cast further light on the jurisdictionally relevant question whether Shopify "'continuously and deliberately exploited' the California market," *Mavrix Photo*, 647 F.3d at 1230, in furtherance of its data-extraction efforts, *see* ER 70–71 (proposed discovery requests for information on Shopify's in-state marketing efforts, including its attempts to cultivate its California client base through visits and physical storefronts, and on the extent of Shopify's in-state business).

Because it is far from "clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," the district court should have granted Briskin's limited discovery motion before dismissing, or at a minimum explained its refusal to do so. *Laub*, 342 F.3d at 1093 (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). This Court should therefore reverse the district court's jurisdictional dismissal regardless of whether it views the SAC's allegations as sufficient in themselves to foreclose dismissal on personal jurisdiction at this stage of the proceedings.

## II. The SAC complies with Rule 8(a) by giving each defendant notice of the claims against it and of the course of business conduct from which those claims arise.

The district court also held that the SAC did not satisfy Rule 8(a)'s pleading standards, although it acknowledged that this ruling was insufficient to support dismissal without leave to amend. If this Court reverses on personal jurisdiction, as it should, it must remand regardless of its ruling on the Rule 8(a) issue. ER 9–10, 13. Because the district court's Rule 8(a) ruling was erroneous, however, this Court should reverse on that issue too.

Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to ensure that a defendant "receives 'fair notice' of the claims against it," *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The SAC easily satisfies this requirement.

The SAC makes the substance of Briskin's claims against each defendant readily clear. It alleges that *each* of the Shopify defendants is responsible for employing online payment platforms and tracking cookies to surreptitiously collect personal data, utilizing the data to build profiles

of individual consumers, and disseminating the profiles and underlying data to their own customers and to third parties. And it alleges that all three defendants violated several specifically enumerated laws through this joint course of conduct. These detailed allegations plainly alert the defendants to the particulars of their alleged misconduct and the claims against them, satisfying Rule 8(a)'s "lenient" pleading standard. *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 n.4 (9th Cir. 2019).

The district court's contrary conclusion rested on its mistaken view that a complaint necessarily violates Rule 8(a) where it "alleges all claims against all defendants." ER 10. It cited no precedent from this Court in support of that view, and with good reason. Had Briskin filed three separate complaints, one against each defendant, each identical to the SAC except that each replaced every collective reference to "Shopify" with the name of the specific defendant against which it had been filed, no defendant could plausibly claim uncertainty as to which actions Briskin ascribed to it: everything the SAC ascribed to "Shopify." There is no reason why Briskin's choice to file a single complaint that uses the defined shorthand term "Shopify" to refer jointly to all three defendants muddies the waters. *See Quality Auto Painting Ctr. of Roselle, Inc. v.*

*State Farm Indem. Co.*, 917 F.3d 1249, 1275 (11th Cir. 2019) (en banc) (holding that "allegations … aimed generally at 'the Defendants'" did not violate Rule 8(a) where the complaint defined "Defendants" to include "each and every Defendant named in the caption" because "the named Defendants … had fair notice that 'each and every' one of them [was] alleged to have" committed the relevant misconduct).

There may, of course, be idiosyncratic cases where joint reference to multiple defendants renders a complaint so opaque as to violate even Rule 8(a)'s "liberal pleading standard." *Austin*, 925 F.3d at 1137 n.4. For example, in *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996), this Court affirmed Rule 8(a) dismissal of a "[p]rolix, confusing" complaint, *id.* at 1179, accusing twenty named defendants and additional John Does of legal violations arising from multiple discrete arrests, assaults, and retaliatory actions, where the complaint left it unclear whether it was charging all of the defendants with responsibility for all of these actions and, if so, on what basis, *see id.* at 1174. As this Court explained, even after "a great deal of time for perusal, one [could not] determine … who [was] being sued, for what relief, and on what theory, with enough detail to guide discovery." *Id.* at 1178; *see Gillibeau v. City of Richmond*, 417

F.2d 426, 431 (9th Cir. 1969) (holding Rule 8(a) dismissal appropriate only in "aggravated case[s]" where a complaint "is so 'verbose, confused and redundant that its true substance, if any, is well disguised'" (quoting *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965) (per curiam))). But as long as a complaint is "intelligible and clearly delineate[s] the claims and the Defendants against whom the claims are made," it satisfies Rule 8(a). *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008).

The SAC here comes nowhere near the morass this Court confronted in *McHenry*. Rather, the SAC charges each of three closely related corporate defendants with six clearly enumerated legal violations. Each claim arises out of each defendant's alleged joint participation in a single course of business conduct that the SAC sets out with specificity. Even if Briskin cannot know without the aid of discovery precisely how defendants organized their joint participation, his uncertainty hardly makes this the sort of "aggravated case," *Gillibeau*, 417 F.2d at 431, in which "[o]nly by months or years of discovery and motions can each defendant find out what [it] is being sued for," *McHenry*, 84 F.3d at 1178. Indeed, each defendant filed its own motion

to dismiss each claim on the merits in the district court, ER 152 (DE 51–53), confirming that no defendant suffered any confusion about what claims Briskin had raised against it and on what basis, *see Hearns*, 530 F.3d at 1132 (reversing Rule 8(a) dismissal where defendants would "have no difficulty in responding to [plaintiff's] claims with an answer and/or with a … motion to dismiss" on the merits).

The nonprecedential district court decisions cited below do not support the district court's contrary conclusion. As the district court observed, some such decisions have stated that "[a] complaint which lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement" of Rule 8(a). ER 9 (quoting *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015)). That principle, however, does not preclude what the SAC did here: using a shorthand term to refer to three specific defendants each charged with clearly delineated causes of action. *See Adobe Sys.*, 125 F. Supp. 3d at 965 (holding complaint did not violate Rule 8(a) despite making "claims against 'Defendants' generally" because it defined the term "Defendants" and charged "all the Defendants" with the same unlawful conduct). And district courts within this circuit have recognized that this approach is

particularly appropriate where, as here, "a group of defendants is small, closely related, or engaged in the same wrongful conduct." *Roberts v. Cnty. of Riverside*, No. EDCV 19-1877, 2020 WL 3965027, at *3 (C.D. Cal. June 5, 2020); *see DeSoto Cab Co. v. Uber Techs., Inc.*, No. 16-cv-06385, 2018 WL 10247483, at *16 (N.D. Cal. Sept. 24, 2018) (holding complaint satisfied Rule 8(a) despite referring "collectively" to four related corporate defendants because it "allege[d] that the four entities acted in concert with and on behalf of each other" and asserted "all of its causes of action against each of the four … entities").

To the extent that some district court decisions *have* construed Rule 8(a) to erect a more formidable barrier, this Court should make clear that they are wrong. In requiring the SAC to specify all particulars of each defendant's individual contribution to the joint course of business conduct alleged here, the district court adopted a standard similar to the one that this Court applies to fraud claims governed by Federal Rule of Civil Procedure 9(b). *See United States v. Corinthian Colls.*, 655 F.3d 984, 997–98 (9th Cir. 2011) (observing that Rule 9(b) requires a complaint to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud" (quoting *Swartz v. KPMG LLP*, 476

F.3d 756, 764–65 (9th Cir. 2007) (per curiam))). *But see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 173 (2d Cir. 2015) (holding that "[p]laintiffs are not obliged to disaggregate [corporate] affiliates" even under Rule 9(b) where the affiliates "operated together" and engaged in joint conduct). Rule 9(b), though, expressly requires a complaint to plead the relevant circumstances "with particularity." Fed. R. Civ. P. 9(b). Adopting that requirement in the Rule 8(a) context would erase the critical textual distinction between Rule 9(b)'s "heightened pleading standard," *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018), and "the lesser notice pleading standard of Rule 8," *id.* at 681.

Embracing the district court's heightened Rule 8(a) bar would also create inequitable results. Sophisticated corporate defendants engaged in unlawful schemes could shield themselves from liability by splitting responsibility among multiple discrete but closely coordinated business entities behind the scenes and requiring plaintiffs to guess each entity's precise role prior to discovery on pain of dismissal. This outcome would transform Rule 8(a)'s fair-notice guarantee into a get-out-of-jail-free card for defendants who know full well why they are being sued.

Accordingly, upon holding that Briskin has adequately alleged a basis for asserting personal jurisdiction over Shopify (or, at minimum, that the district court abused its discretion in denying him limited jurisdictional discovery), this Court should also hold that the district court erred in holding that the SAC failed to satisfy Rule 8(a).

## CONCLUSION

This Court should reverse the district court's judgment.

Respectfully submitted,

Seth Safier
Matthew T. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94114
(415) 639-9090

Nicolas A. Sansone
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiff-Appellant*

December 12, 2022

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, it contains 7,798 words.

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Nicolas A. Sansone
Nicolas A. Sansone
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Opening Brief for Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit on December 12, 2022, using the Appellate Electronic Filing system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Nicolas A. Sansone
Nicolas A. Sansone
*Attorney for Plaintiff-Appellant*