**Case No. 22-15815**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

BRANDON BRISKIN,
on behalf of himself and those similarly situated,
*Plaintiff-Appellant,*

v.

SHOPIFY INC.; SHOPIFY (USA) INC.;
SHOPIFY PAYMENTS (USA) INC.,
*Defendants-Appellees.*

*Appeal from the United States District Court for the Northern District of California (Oakland),
Case No. 4:21-cv-06269-PJH · Honorable Phyllis J. Hamilton, Senior District Judge*

## BRIEF FOR APPELLEES

MOEZ KABA
HUESTON HENNIGAN, LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
mkaba@hueston.com

SOURABH MISHRA
HUESTON HENNIGAN, LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640
smishra@hueston.com

ADAM MINCHEW
HUESTON HENNIGAN, LLP
1 Little West 12th Street
New York, NY 10011
Telephone: (646) 930-4046
aminchew@hueston.com

*Attorneys for Defendants-Appellees,
Shopify Inc.; Shopify (USA) Inc.; and Shopify Payments (USA) Inc.*

 

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Shopify Inc. states that it has no parent corporation nor does any publicly held corporation own 10% or more of its stock.

Defendant-Appellee Shopify (USA) Inc. states that it is wholly owned by Shopify Holdings (USA) Inc., which in turn is wholly owned by Defendant-Appellee Shopify Inc.

Defendant-Appellee Shopify Payments (USA) Inc. states that it is wholly owned by Shopify Holdings (USA) Inc., which in turn is wholly owned by Defendant-Appellee Shopify Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION .................................................................................1

ISSUES PRESENTED ..........................................................................6

STATEMENT OF THE CASE ...............................................................7

    I.     SHOPIFY INC., SHOPIFY USA, AND SHOPIFY PAYMENTS ........7

    II.    SHOPIFY INC. OFFERS AN E-COMMERCE PLATFORM
            TO MERCHANTS ...................................................................9

    III.   PLAINTIFF'S 2019 PURCHASE FROM IABMFG,
            NOT SHOPIFY ...................................................................11

    IV.   PROCEDURAL HISTORY ...................................................13

SUMMARY OF ARGUMENT................................................................17

STANDARD OF REVIEW ...................................................................18

ARGUMENT ......................................................................................19

    I.     THE DISTRICT COURT CORRECTLY HELD THAT IT
          LACKED PERSONAL JURISDICTION OVER SHOPIFY
          INC., SHOPIFY USA, AND SHOPIFY PAYMENTS .....................20

        A.    The District Court Correctly Found No Purposeful
                Direction.................................................................21

                1.    Foreseeable Effects in California Are Insufficient .........25

                2.    Extensive Business Presence Is Insufficient Where the
                     Defendants' Conduct Lacks a Forum-Specific Focus ....28

                3.    The Lack of California-Specific Conduct Renders
                     *Mavrix* Inapposite .........................................29

        B.    Briskin's Claims Do Not Arise Out of the Shopify
                Defendants' Contacts with California ......................37

II.    THE DISTRICT COURT DID NOT ABUSE ITS
       DISCRETION IN REJECTING BRISKIN'S REQUEST
       FOR JURISDICTIONAL DISCOVERY ..............................................41

III.   THE DISTRICT COURT DID NOT ABUSE ITS
       DISCRETION BY SEPARATELY DISMISSING THE
       COMPLAINT UNDER RULE 8 .......................................................47

CONCLUSION ...................................................................................53

CERTIFICATE OF COMPLIANCE.........................................................55

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ......................................................... 27

*AMA Multimedia v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ............................................... *passim*

*Austin v. Budget Rental Car, Inc.*,
    2020 WL 8614183 (N.D. Cal. Sept. 17, 2020) .............................. 52

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) .................................... 20, 21, 26

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ..................................................... 26

*Bautista v. Los Angeles Cnty.*,
    216 F.3d 837 (9th Cir. 2000) ....................................................... 48

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................. 47, 48

*Blessing v. Chandrasekhar*,
    988 F.3d 889 (6th Cir. 2021) ....................................................... 31

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) .............................................. *passim*

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. County*,
    137 S. Ct. 1773 (2017) ................................................................. 33

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................. 25, 27

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) ............................................ 5, 17, 45

*Calder v. Jones*,
    465 U.S. 783 (1984) ..................................................................... 21

*Cheever v. Huawei Device USA, Inc.*,
    2019 WL 8883942 (N.D. Cal. Dec. 4, 2019) ............................... 41

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ..................................................... 24

*Cook v. Brewer*,
   637 F.3d 1002 (9th Cir. 2011) ......................................................................19

*Corcoran v. Yorty*,
   347 F.2d 222 (9th Cir. 1965) .......................................................................49

*Downtown Soup Kitchen v. Municipality of Anchorage*,
   576 F. Supp. 3d 636 (D. Alaska 2021) .........................................................43

*Eighteen Seventy, LP v. Jayson*,
   32 F. 4th 956 (10th Cir. 2022) .....................................................................31

*Estate of Morris v. Bank of New York Mellon*,
   856 F. App'x 669 (9th Cir. 2021) .....................................................5, 18, 48

*Estate of Saunders v. Comm'r*,
   745 F.3d 953 (9th Cir. 2014) ................................................................17, 41

*Fidrych v. Marriott Int'l, Inc.*,
   952 F.3d 124 (4th Cir. 2020) .......................................................................34

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) .................................................................................39

*Gen-Probe, Inc. v. Amoco Corp., Inc.*,
   926 F. Supp. 948 (S.D. Cal. 1996) ..............................................................52

*Graham v. Noom*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................34, 35

*Harris v. Harris*,
   2012 WL 1435680 (E.D. Cal. Apr. 25, 2012) .......................................52, 53

*Hart v. Salois*,
   605 F. App'x 694 (9th Cir. 2015) ...........................................................49, 50

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ...............................................................................23, 24

*Hurn v. Retirement Fund Tr. of Plumbing, Heating & Piping Indus. Of So. Cal.*,
   648 F.2d 1252 (9th Cir. 1981) .....................................................................43

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. 2011) ...........................................................48

*In re Sheehan*,
   48 F.4th 513 (7th Cir. 2022) ........................................................................31

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) .....................................................................................26

*Janus v. Freedman*,
840 F. App'x 928 (9th Cir. 2020)....................................................34

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .................................36

*Johnson v. TheHuffingtonPost.com, Inc.*,
21 F. 4th 314 (5th Cir. 2021)..........................................................31

*Kyocera Int'l, Inc. v. Semcon IP, Inc.*,
2018 WL 5112056 (S.D. Cal. Oct. 19, 2018) ................................44

*Laub v. U.S. Dept. of Interior*,
342 F.3d 1080 (9th Cir. 2003)........................................................45

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022)...........................................................39

*Maldonado v. Morales*,
556 F.3d 1037 (9th Cir. 2009)........................................................41

*Massie v. General Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) .........................36, 37

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011)...............................................*passim*

*McGoveran v. Amazon Web Servs., Inc.*,
488 F. Supp. 3d 714 (S.D. Ill. 2020)................................34, 35, 36

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996).........................................................18

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017)........................................................37

*Moseley v. Saul*,
780 F. App'x 514 (9th Cir. 2019)........................................4, 17, 45

*Motus, LLC v. CarData Consultants, Inc.*,
23 F.4th 115 (1st Cir. 2022) ..........................................................46

*Nevijel v. N. Coast Life Ins. Co.*,
651 F.2d 671 (9th Cir. 1981)..........................................................18

*Oliver v. Ralphs Grocery Co.*,
654 F.3d 903 (9th Cir. 2011)..........................................................47

*Pakootas v. Teck Cominco Metals, Ltd.*,
905 F.3d 565 (9th Cir. 2018).........................................................26

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ...................................................................4, 47

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ...................................................................3, 37

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
917 F.3d 1249 (11th Cir. 2019) ......................................................................52

*Rabieh v. United States*,
2019 WL 5788673 (N.D. Cal. Nov. 6, 2019) ................................................44

*Rivera v. Invitation Homes, Inc.*,
2020 WL 8910882 (N.D. Cal. Oct. 29, 2020) ...............................................44

*Roth v. Garcia Marquez*,
942 F.2d 617 (9th Cir. 1991) ..........................................................................27

*Rush v. Savchuk*,
444 U.S. 320 (1980) .........................................................................................22

*Sanders v. Sodexo, Inc.*,
2015 WL 4477697 (D. Nev. July 20, 2015) ..................................................41

*Sandoval v. Barneburg*,
470 F. App'x 550 (9th Cir. 2012) ...................................................................48

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ...................................................................20, 27

*Sky Optic, Inc. v. AreaTrend, LLC*,
843 F. App'x 66 (9th Cir. 2021) .....................................................................28

*Sopcak v. N. Mountain Helicopter Serv.*,
52 F.3d 817 (9th Cir. 1995) ......................................................................17, 46

*Terracom v. Valley Nat'l Bank*,
49 F.3d 555 (9th Cir.1995) ..............................................................................45

*United States v. $70,670.00 in U.S. Currency*,
929 F.3d 1293 (11th Cir. 2019) ......................................................................41

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........................................................................50

*Voodoo SAS v. SayGames LLC*,
2020 WL 3791657 (N.D. Cal. July 7, 2020) .................................................44

*Walden v. Fiore*,
571 U.S. 277 (2014) ..................................................................................*passim*

*Whittaker Corp. v. Execuair Corp.*,
 953 F.2d 510 (9th Cir. 1992)..................................................................44, 45

*Yamashita v. LG Chem, Ltd.*,
 No. 21-17512, --- F.4th ---, 2023 WL 2374776 (9th Cir. Mar. 6, 2023)..40, 46

*Yeager v. Airbus Grp. SE*,
 2022 WL 1175236 (9th Cir. Apr. 20, 2022)............................................31, 33

## RULES

Fed. R. Civ. P. 8..............................................................................*passim*

Fed. R. Civ. P. 9..........................................................................................50

Fed. R. Civ. P. 12(b) ..............................................................................14, 19

## OTHER AUTHORITIES

Bryan Garner, *The Redbook: A Manual on Legal Style* 168 (3d ed. 2013) ............41

Wright & Miller, Statement of Particular Matters — Multiple Claims
 and Parties, 5 Fed. Prac. & Proc. Civ. § 1248 (4th ed.)................................48

## INTRODUCTION

Plaintiff Brandon Briskin ("Plaintiff" or "Briskin") used his iPhone to purchase athleisure wear from the interactive website of non-party online merchant IABMFG. Like hundreds of thousands of other companies, IABMFG is alleged to have contracted with Shopify Inc. and Shopify Payments (USA) Inc. to help facilitate efficient and secure online shopping and payment processing. Briskin claims that Shopify Inc., Shopify Payments (USA) Inc., and Shopify (USA) Inc. (together, the "Shopify Defendants")[1] all improperly accessed and collected his personal data by processing his ordinary credit card payment to IABMFG. Briskin incredibly describes this routine processing as "wiretapping," and on that basis he sued the Shopify Defendants. He filed suit in California, claiming that since he is a California resident who ordered from IABMFG while he was in California, California courts have personal jurisdiction over the foreign Shopify Defendants who processed his payment.

This appeal presents a straightforward question: are an out-of-state credit card processing vendor and its corporate affiliates subject to specific personal jurisdiction

---

[1] Defendants adopt this construction for purposes of this appeal because they must as Plaintiff directs his allegations to "Shopify" collectively and generically. (*see, e.g.*, Opening Brief at 36) and claims that each Defendant is responsible for all the alleged acts (*id.* at 33-34). Plaintiff's indiscriminate reference to "Shopify" is both legally improper (*see infra* at 48-51) and factually implausible. For example, Plaintiff has failed to explain, either below or on appeal, how it is possible for all three Defendants to have undertaken all the acts alleged in the SAC. (*See infra* at 51-53.)

in California because a California consumer happened to initiate an online purchase from a third-party's website that utilized the vendor's services? As the District Court correctly held, the answer is no.

Specific jurisdiction focuses on the defendant's contacts with the forum state. To satisfy constitutional due process, the *defendant's* challenged conduct must "connect" it to the forum "in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). What matters for purposes of the "minimum contacts" analysis is the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.

Briskin's appeal fails for the simple reason that he has not plausibly alleged a single relevant act taken by any, let alone each, of the Shopify Defendants that was purposefully directed at California. IABMFG decided to offer products for sale to California consumers. Briskin, while in California, decided to purchase products from IABMFG. Briskin did not allege and cannot establish that the Shopify Defendants had any control over IABMFG's or Briskin's California contacts. IABMFG and Briskin's actions thus cannot create jurisdiction over the Shopify Defendants. *Id.* at 284 ("[The Supreme Court] ha[s] consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

Even had he satisfied the purposeful direction requirement, personal jurisdiction is improper because Briskin did not identify how his claim arises from or relates to the Shopify Defendants' California-specific activity. Shopify Inc. simply provided a services platform for IABMFG to use anywhere, not specific to California. In fact, Briskin admits that "Shopify"—his generalized amalgamation for the Shopify Defendants that fails to differentiate between the three separate entities—was agnostic to where IABMFG utilized those services. (Opening Brief at 24 ("Shopify, however, chose to extract personal data from IABMFG's customers—*wherever located*—through the payment portal it created and maintained." (emphasis added)).)

Indeed, Briskin's asserted injury here does not even require a California connection. *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (no jurisdiction over a defendant in California where plaintiff's alleged injury "would follow him wherever he might choose to live or travel"). Briskin claims that he was injured because the Shopify Defendants surreptitiously processed and collected his information by facilitating his order from IABMFG and, since he is a California resident, they collected information from a California consumer. But Briskin would suffer this *same* alleged harm, asserting the same liability theories, whether he purchased a product from IABMFG while in New York, Texas, Florida, or any other state. That Briskin experienced whatever harm he claims in California is due to *his*

- 3 -

*decisions and actions*, not any specific actions taken by the Shopify Defendants toward California. But the latter is necessary to establish specific jurisdiction. *See Walden*, 571 U.S. at 290 (no personal jurisdiction for a defendant based on the location of the plaintiffs' injury where the plaintiffs "would have experienced the same [injury] . . . wherever else they might have traveled and found themselves").

Aware that under well-established law, California courts do not have jurisdiction over the Shopify Defendants, Briskin asks this Court to remand to allow for jurisdictional discovery. Despite now faulting the District Court, Briskin summarily raised jurisdictional discovery only in a single footnote in the proceedings below. He never served any such discovery; he merely referenced a litany of expansive documents and information he wanted to help "flesh[] out" his allegations. (*See* Opening Brief at 31.) Such a passing reference constitutes waiver both below and on appeal. *Moseley v. Saul*, 780 F. App'x 514, 516 n.1 (9th Cir. 2019) (argument "raised . . . in the district court only in a footnote" was not properly before this Court). And, in any event, denying jurisdictional discovery here is not an abuse of discretion. Although he had multiple opportunities to do so, Briskin never identified how the broad and speculative discovery he requested could somehow trigger personal jurisdiction over any of the Shopify Defendants. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations

- 4 -

in the face of specific denials made by the defendants, the Court need not permit even limited discovery." (cleaned up)).  Nor did he explain to the District Court (in his single footnote) under what theory the discovery he sought could establish personal jurisdiction.  *See Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 540-41 (9th Cir. 1986) (refusing to find abuse of discretion where plaintiffs' request for jurisdictional discovery "did not indicate the theory upon which [the jurisdictional] allegations were based").

Finally, the District Court did not abuse its discretion in concluding that the Second Amended Complaint violated Rule 8.  Though he named three specific Shopify entities as defendants, Briskin's allegations conflate the three by failing to allege specific facts against each of them.  Dismissal is appropriate where, as here, plaintiff's pleading fails to adequately apprise each of the Defendants of their respective offending conduct.  *See Estate of Morris v. Bank of New York Mellon*, 856 F. App'x 669, 671-72 (9th Cir. 2021) (affirming dismissal where "appellants failed sufficiently to allege which defendants committed which acts").

For these reasons and those expressed below, the Shopify Defendants respectfully request that the Court affirm dismissal.

## ISSUES PRESENTED

1.      Whether the District Court erred in holding that Briskin's factual allegations in the SAC failed to make a prima facie showing of personal jurisdiction over Shopify Inc., Shopify (USA) Inc., and Shopify Payments (USA) Inc.

2.      Whether the District Court abused its discretion in declining to consider and grant Briskin's request—relegated to a single footnote that lacked explanation as to the facts that might change the jurisdictional analysis—to take jurisdictional discovery.

3.      Whether the District Court abused its discretion in holding that Briskin's SAC violated Rule 8 for failing to describe which allegations pertain to which of the Shopify Defendants.

## STATEMENT OF THE CASE

Briskin alleges that "Shopify"—which he collectively defines as Shopify Inc., Shopify USA Inc. ("Shopify USA"), and Shopify Payments (USA) Inc. ("Shopify Payments")—surreptitiously wiretapped his mobile device when he made a purchase in 2019 from the online merchant IABMFG.[2] IABMFG operates www.iambecoming.com, an e-commerce website offering women's athletic apparel and accessories. Briskin claims that "Shopify" unlawfully extracted his credit card and other personal information that he provided to IABMFG to process his order. This supposedly unauthorized data extraction, Briskin contends, violated the California Constitution, California statute, and California common law. Briskin asserts his claims on behalf of a putative class of persons who, "between August 13, 2017 and the present, submitted payment information via Shopify's software while located in California." (ER-116 [SAC ¶ 68].)

## I. SHOPIFY INC., SHOPIFY USA, AND SHOPIFY PAYMENTS

Shopify Inc. is a Canadian company with its principal place of business in Ottawa, Canada. (ER-95 [SAC ¶ 9].) Shopify Inc. is not registered to do business in California, does not have a registered agent for service of process in California, does not have a regular office in California, does not have employees in California,

---

[2] IABMFG is an independent company and not an affiliate of any of the Shopify Defendants.

and does not market, target, or tailor its products specifically to California companies. (ER-83-84 [McIntomny Decl. ¶¶ 2, 5].) Shopify Inc.'s website— www.shopify.com—provides general information about Shopify Inc.'s product offerings and is generally available to the public; it is not specifically directed to California. (ER-84 [McIntomny Decl. ¶ 7].) Online transactions between consumers and merchants, such as IABMFG, who use Shopify Inc.'s e-commerce platform are handled using the merchant's online storefront; merchant's customers are not directed to Shopify Inc.'s website. (*Id.*)

Shopify Payments (USA) Inc. ("Shopify Payments") is a Delaware corporation with its principal place of business in Delaware. (ER-97 [SAC ¶ 15].) Approximately three-quarters of Shopify Payments' employees are located outside of California. (1-SER-97 [Bressack Decl. ¶ 7].) Shopify Payments' Terms of Service, which are incorporated by reference in the SAC (*see* ER-97 [SAC ¶ 15]), "apply to all merchants in the United States using [its] services regardless of their location within the United States." (1-SER-98 [Bressack Decl. ¶ 10].) No version of Shopify Payments' Terms of Service "were tailored to or customized for merchants in the State of California in any way as distinct from any other U.S. state," and Shopify Payments "did not, and does not, modify the Terms of Service for merchants based on their location or the location of their customers." (*Id.*)

Shopify (USA) Inc. ("Shopify USA") is a Delaware corporation with its principal place of business in New York.  (ER-88-89 [Harris-John Decl. ¶¶ 3,5].)[3] "The vast majority of Shopify (USA) Inc.'s business activities are conducted outside of, and have no relationship to, California."  (ER-89 [Harris-John Decl. ¶ 8].)

## II.    SHOPIFY INC. OFFERS AN E-COMMERCE PLATFORM TO MERCHANTS

Shopify Inc. offers a business-to-business e-commerce platform to online merchants.  Through the platform, merchants have access to Shopify Inc.'s "software and infrastructure," which they can use to "design, set up and manage their [online] stores."  (*See* ER-83 [McIntomny Decl. ¶ 2]; *accord* ER-99 [SAC ¶ 24] ("Shopify is an e-commerce platform that enables merchants to sell products online.").)

Unlike some other online services that primarily generate revenue from online advertising or data harvesting, Shopify Inc. enters into agreements with its merchant customers pursuant to which merchants pay Shopify Inc. for access to Shopify Inc.'s products and services.  IABMFG is one such merchant.  (ER-95 [SAC ¶ 10].)  The merchants in turn use their online stores to sell their products to consumers, such as Mr. Briskin, who may choose to browse the merchant's website and decide to make a purchase from anywhere in the world.  (ER-113 [SAC ¶ 57]; ER-83 [McIntomny

---

[3] Plaintiff alleges that Shopify USA's principal place of business is in Ottawa, Canada.  (ER-97 [SAC ¶ 14]; *see also* Opening Brief at 5.)

Decl. ¶ 2].)  Briskin alleges that, as of 2018, over one million online merchants used Shopify Inc.'s e-commerce platform.  (ER-99 [SAC ¶ 24].)  Of those, approximately 80,000 merchants—fewer than 8%—were based in California.  (ER-96 [SAC ¶ 12].)

According to Briskin, once a merchant has contracted with Shopify Inc., it "can elect to embed certain Shopify assets, such as payment forms, into their pre-existing websites." (ER-99 [SAC ¶ 24].)  Shopify Payments, a subsidiary of Shopify Inc., offers merchants who use Shopify Inc.'s e-commerce platform the ability "to accept and process online credit and debit payments" through their website.  (ER-97 [SAC ¶ 15].)  Merchants who wish and are eligible and approved to do so "enter into a separate contract with Shopify Payments."[4]  (*Id.*; 1-SER-97 [Bressack Decl. ¶ 5].)  Shopify Payments in turn contracts with Stripe, Inc., an unaffiliated third-party based in California, which enables Shopify Payments to make payment processing services available to merchant customers.  (ER-97-98 [SAC ¶¶ 15-16].)  Hence, "[w]hen a customer fills out a payment form" to make a purchase from an online merchant that uses Shopify Inc.'s e-commerce platform and Shopify Payment's payment processing services, "Shopify collects information regarding the transaction and consumer," which it "then shares . . . with Stripe . . . to process the payment."  (ER-

---

[4]  Shopify Payments noted in a declaration filed with the district court that the "'contract' described and quoted in Paragraph 15 of the SAC appears to refer to a version of the Shopify Payments (USA) Inc. Terms of Service."  (1-SER-98 [Bressack Decl. ¶ 8].)

109 [SAC ¶¶ 46-47]; *see also* ER-97 [SAC ¶ 15]; ER-99-100 [SAC ¶ 24].) The SAC does not specify whether Shopify Payments, Shopify Inc., Shopify USA, "Shopify" collectively, unaffiliated non-party Stripe, or any one of 100 or more other payment processors actually processed Briskin's payment to IABMFG. (ER-114 [SAC ¶ 60].)

While the SAC is silent as to what specific products or services Shopify USA—as opposed to the collectively pled "Shopify"—provides, the SAC does allege that Shopify USA "provides its [undefined] services to thousands of California businesses" and "collects and processes California consumers' personal information from Shopify's platform." (ER-97 [SAC ¶ 14].) However, Shopify USA "does not enter into relationships or contracts with merchants or their customers" and is "not responsible for handling customer data." (ER-89 [Harris-John Decl. ¶ 6].) Shopify USA merely "provides services and support to various aspects of Shopify Inc.'s business, such as messaging and mobile applications." (*Id.*)

## III. PLAINTIFF'S 2019 PURCHASE FROM IABMFG, NOT SHOPIFY

In June 2019, Briskin used his iPhone to purchase fitness apparel for his wife from IABMFG's e-commerce website (www.iambecoming.com). (ER-113 [SAC ¶ 57].) To do so, Briskin provided his name, payment information, shipping address, and other necessary details. (ER-113-114 [SAC ¶ 59].) Briskin alleges that when he completed his purchase, he subjectively believed his details would be sent to

- 11 -

IABMFG; he claims he did not provide consent for "Shopify" to obtain or use his personal information.[5]  (*Id.*)  Briskin contends that his information was obtained and used by "Shopify" to process the order and the payment.  (ER-114 [SAC ¶ 50].)

According to Briskin, and contrary to judicially noticeable facts (*see supra* note 5), "Shopify deliberately cho[oses] to hide its involvement from consumers" (ER-112 [SAC ¶ 51]).  Briskin makes this claim despite conceding that "Shopify provides a default template for merchant websites that includes, in a footer, a 'powered by Shopify' link leading to Shopify's homepage." (ER-112 [SAC ¶ 53].)

Briskin also alleges that "Shopify and/or Stripe"[6] make information about consumers—including name, email address, billing address, phone number, amount spent, IP address, and geolocation data—"available to its merchants who are involved in transactions with the consumer in question." (ER-106 [SAC ¶ 41]; *see*

---

[5] The SAC contains a screenshot purporting to show the IABMFG "checkout page" without any disclosure of Shopify.  (ER-100-101 [SAC ¶ 28].)  However, at the bottom of the checkout screen—which is omitted from the screenshot—IABMFG provides a link to its Privacy Policy (1-SER-109 [Heath Decl. Ex. C]), which discloses to potential customers that "[o]ur store is hosted on Shopify Inc.," an "e-commerce platform that allows us to sell our products and services to you" (1-SER-111 [Heath Decl. Ex. D]).  The IABMFG Privacy Policy further explains that "[i]f you [the consumer] choose a direct payment gateway to complete your purchase, then Shopify stores your credit card data . . . only as long as is necessary to complete your purchase transaction."  (*Id.*).  As such, Briskin's entire theory of liability based on non-disclosure of "Shopify's" role in credit card processing is belied by the very explicit disclosures in IABMFG's Privacy Policy.

[6] Stripe, Inc. is an independent company and not an affiliate of any of the Shopify Defendants.  (ER-100 [SAC ¶ 24]; *see also* ER-109 [SAC ¶ 46].)

*also* ER-116 [SAC ¶ 65] (claiming that Briskin's "private information" was "made available to potentially millions of merchants with whom he may engage in a subsequent financial transaction").)

But as Shopify Payments stated in a declaration filed with the District Court and not included in Briskin's excerpt of record, "Shopify Payments (USA) Inc. does not share customer transaction data from one merchant with other merchants." (1-SER-99 [Bressack Decl. ¶ 12].) Shopify Inc. similarly declared that when it processes a merchant's customer's personal data in the course of providing services to a merchant, it does so only for the purpose of providing the services to the merchant in accordance with the merchant's documented instructions. (ER-84 [McIntomny Decl. ¶ 8].) And Shopify USA is simply "not responsible for handling customer data." (ER-89 [Harris-John Decl. ¶ 6].)

## IV. PROCEDURAL HISTORY

Briskin filed a putative class action complaint against Shopify Inc. and Shopify USA on August 13, 2021. (ER-148 [Dkt. No. 1].) On October 29, 2021, Briskin filed an amended complaint. (ER-149 [Dkt. No. 17].) On December 8, 2021, Defendants Shopify Inc. and Shopify USA moved to dismiss the amended complaint on the grounds that the court lacked personal jurisdiction, that the complaint's group pleading violated Rule 8 for failing to put Defendants on notice of the allegations against them, and that the complaint failed to state a claim upon

which relief could be granted. (ER-150 [Dkt. Nos. 29-30].) On December 22, 2021, the parties stipulated and agreed to a stay of merits discovery until after resolution of the pending motions to dismiss, but they expressly "agree[d] that this stipulation shall not apply to jurisdictional discovery." (2-SER-381 [Stipulation Regarding Stay of Merits Discovery ¶ 6].)

On December 30, 2021, Briskin moved to file a second amended complaint (ER-151 [Dkt. No. 36]), and on January 7, 2022, Briskin opposed Defendants' motions to dismiss (*id.* [Dkt. Nos. 37-38]). On January 24, 2022, over Defendants' objections, the District Court granted Briskin's motion to file a second amended complaint. (*Id.* [Dkt. Nos. 39, 43].) Briskin filed the operative Second Amended Complaint ("SAC") later that day. (*Id.* [Dkt. No. 44].)

On February 17, 2022, Defendants separately moved to dismiss the SAC, making substantially the same arguments as those made in their December 2021 motions: lack of personal jurisdiction under Rule 12(b)(2); failure to distinguish among, and provide fair notice to, the separate defendants under Rule 8; and failure to state a claim under Rule 12(b)(6). (ER-72 [Shopify Inc. Motion to Dismiss]; *see also* ER-152 [Dkt. Nos. 51-53].)

Briskin opposed each Defendant's motion on March 16. (ER-14 [Opposition to Shopify Inc. Motion to Dismiss]; *see also* ER-153 [Dkt. Nos. 58-60].) As to personal jurisdiction, Briskin conceded that the District Court lacked general

jurisdiction over each Defendant and argued only that each was subject to specific jurisdiction. (*See, e.g.*, 1-SER-5 [Tr. of Oral Argument].)    Despite pre-suit correspondence in which Shopify Inc. explained its role and the roles of its affiliates (*see* ER-151 [Dkt. Nos. 39-2, 39-4]) and having seven months since filing his original complaint, the benefit of two motions to dismiss for lack of personal jurisdiction, and affirmatively reserving the right to serve jurisdictional discovery in the parties' stipulation to stay merits discovery, Briskin failed to serve jurisdictional discovery on any Defendant.    And Briskin's opposition briefs did not mention jurisdictional discovery, with the exception of a cursory footnote giving the District Court the option to permit discovery in certain circumstances: "Should the Court determine a more satisfactory showing of facts is necessary, Briskin requests leave to take jurisdictional discovery."    (ER-21 [Opposition to Shopify Inc. MTD at 11 n.5]; *see also* 1-SER-36 [Opposition to Shopify Payments MTD at 10 n.6]; 1-SER-56 [Opposition to Shopify USA MTD at 8 n.5].)    Briskin made no argument regarding jurisdictional discovery and cited no facts or law to support the footnote's conditional request.    Though the conditional request was accompanied by expansive proposed discovery requests, those requests were never served on any of the Shopify Defendants and Briskin never explained *how* that discovery could cure the fatal deficiencies in its jurisdictional theory.    (*See infra* note 14.)    As to Rule 8, Briskin argued that there was no deficiency because "each entity" is accused of "all of" the

acts alleged against the collective "Shopify." (1-SER-57 [Opposition to Shopify USA MTD at 9].) Defendants replied on April 6. (ER-153 [Dkt. Nos. 61-63].)

On April 28, 2022, the Court held oral argument on Defendants' motions to dismiss. (1-SER-2-22.) At this hearing, Briskin made no reference or argument relating to his conditional "request" for jurisdictional discovery.

On May 5, 2022, the District Court granted Defendants' motions to dismiss. (ER-13 [MTD Op. at 9].) As to personal jurisdiction, the District Court correctly concluded that "Shopify" was merely IABMFG's "vendor" and "agent." (ER-12 [MTD Op. at 8].) And a "vendor's sale of a product to IABMFG—even if IABMFG has substantial business [in California] and the vendor knew it—does not establish specific personal jurisdiction over the vendor" because "[s]uch passive conduct does not represent an intentional act directed at California residents." (*Id.*)

As to Rule 8, the Court noted that "plaintiff admittedly alleges all claims against all three defendants without distinguishing the conduct of any single entity." (ER-9 [MTD Op. at 5].) Because the SAC failed to "allege plaintiff's particular claims against any specific defendant," it "fail[ed] to put any of the three defendants fairly on notice of the claims against them." (ER-9-10 [MTD Op. at 5-6].) Given these fatal pleading defects, the District Court dismissed the SAC with prejudice. (ER-13 [MTD Op. at 9].)

## SUMMARY OF ARGUMENT

1.      The District Court correctly held that it lacks personal jurisdiction over any Defendant.  It is uncontested that the District Court lacks general jurisdiction over the Shopify Defendants.  Briskin cannot establish specific personal jurisdiction because he has not plausibly alleged that the Shopify Defendants expressly aimed conduct toward the forum.  Briskin's choice to purchase a product from an online merchant—IABMFG—that in turn chose to use Shopify Inc. as its e-commerce platform is not enough to subject Shopify Inc. (or any other Shopify Defendant) to jurisdiction in California.  *Walden*, 571 U.S. at 290.

2.      The District Court was well within its discretion to ignore Briskin's conditional "request" for jurisdictional discovery that was relegated to a single footnote and lacked any argument or explanation as to how additional discovery might cure the jurisdictional deficiencies.  *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014).  Because this argument was not sufficiently raised below, it is not properly before this Court.  *Moseley*, 780 F. Appx. at 516 n.1. Moreover, Briskin cannot establish the "actual and substantial prejudice" necessary to reverse the District Court's decision given that he declined several opportunities to move for discovery.  *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 819 (9th Cir. 1995); *see also Butcher's Union*, 788 F.2d at 540 ("The trial court still has broad discretion to permit or deny discovery, however, and its decision will not be

- 17 -

reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." (cleaned up)).

3.     The District Court did not abuse its discretion in holding that Briskin improperly conflated each of its substantive allegations against the three legally distinct Defendants.  As a result, the SAC violated Rule 8 by failing to adequately put the Defendants on notice of the allegations against them.  *See Estate of Morris*, 856 F. App'x at 671-72.

## STANDARD OF REVIEW

This Court "review[s] a dismissal for lack of personal jurisdiction *de novo*." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)

"A district court's decision to permit or deny jurisdictional discovery is reviewed for abuse of discretion."  *Id.* at 1020.  "The district court's refusal to provide such discovery will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant."  *Id.* (cleaned up).

This Court reviews for abuse of discretion dismissal of a complaint for failure to comply with Rule 8.  *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981) ("no abuse of

discretion" in dismissing case for failure to comply with Rule 8).[7]

## ARGUMENT

This Court should affirm the District Court's dismissal of the SAC with prejudice. As the District Court correctly recognized, the court lacks specific personal jurisdiction over the Shopify Defendants. The Shopify Defendants are out-of-state third-party vendors that are alleged to have provided services to an online merchant. They did not purposefully direct their activities toward California nor do the claims arise out of the Shopify Defendants' forum-related activities. Both elements are required to establish personal jurisdiction, but Briskin can prove neither. The District Court also appropriately declined to consider Briskin's blink-and-you-miss-it request seeking jurisdictional discovery untethered to any explanation as to how such discovery would affect the jurisdictional analysis. In addition to the jurisdictional deficiencies, the District Court did not abuse its discretion in determining that the SAC violated Rule 8 by failing to allege what role each Defendant played in bringing about Briskin's alleged harm.

---

[7] Briskin cites *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011), to claim that this Court reviews Rule 8 dismissals de novo. (Opening Brief at 18.) But *Cook* addressed the standard for reviewing dismissals under Rule 12(b)(6), not Rule 8. 637 F.3d at 1004 ("We review de novo a district court's order granting a motion to dismiss under Rule 12(b)(6).").

## I. THE DISTRICT COURT CORRECTLY HELD THAT IT LACKED PERSONAL JURISDICTION OVER SHOPIFY INC., SHOPIFY USA, AND SHOPIFY PAYMENTS

Briskin "bears the burden of establishing that jurisdiction is proper." *Boschetto*, 539 F.3d at 1015. "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Id.* at 1016. Briskin admits that he "has not argued that any of the Shopify entities is subject to general, all-purpose jurisdiction in California." (Opening Brief at 19.)

To assess specific jurisdiction, this Court conducts a three-part inquiry to determine whether a nonresident defendant has "minimum contacts" with the forum:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,1068 (9th Cir. 2017) (cleaned up).

If Briskin fails to meet his burden on *either* of the first two prongs, "personal jurisdiction is not established in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In that case, the Court does not need to address the third prong. *Id.* (burden "shifts to the defendant" only "[i]f the plaintiff

succeeds in satisfying both of the first two prongs").

Briskin cannot establish either of the first two prongs of the specific jurisdiction analysis.

###    A.    The District Court Correctly Found No Purposeful Direction

The Ninth Circuit utilizes the "purposeful direction" test for personal jurisdiction when evaluating tort claims like those Briskin asserts here. *Axiom Foods, Inc.*, 874 F.3d at 1069.   Courts examine purposeful direction using an "effects" test based on *Calder v. Jones*, 465 U.S. 783 (1984) where, as here, allegedly tortious conduct takes place outside the forum and has effects inside the forum. *Id.*

Under the effects test, "the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (cleaned up).

The District Court correctly applied this law to find that Briskin did not identify a single intentional act that any, let alone each, of the Shopify Defendants took that was expressly aimed to perform an actual, physical act in California. (ER-12 [MTD Op. at 8].)

Briskin alleges that the Shopify Defendants contract with merchants as a singular, amalgamated entity and provides them with "software code to enable [them] to integrate Shopify's payment forms into their applications." (ER-92 [SAC

- 21 -

¶ 1].)  When a consumer buys a product from a merchant, Briskin claims that the software code enables the Shopify Defendants (acting as one) to obtain and store the consumers' payment data.  (ER-92-93 [SAC ¶¶ 2-3].)  Briskin, a California resident, purchased fitness apparel from merchant IABMFG and, thereby, allegedly provided his payment information to the Shopify Defendants.  (ER-95, 113-14 [SAC ¶¶ 8, 57-60.)  He reasons, therefore, that the Shopify Defendants "purposefully directed [their] activities into the forum state when [they] reached into California to extract personal data" from Briskin's transaction with IABMFG.  (Opening Brief at 21.)  Put differently, Briskin contends that "Shopify's" alleged processing of Briskin's credit card when he made an online purchase while in California amounts to wiretapping.  (*See* ER-117 [SAC ¶ 72] ("Plaintiff and those similar situated used Shopify payment forms and had their electronic communications intercepted and disclosed to Shopify through the use of Shopify's wiretaps.").)

Briskin's allegations are incorrect (*see supra* at 11-13) and, for purposes of the specific jurisdiction analysis, do not even identify what each of the Shopify Defendants did to be subject to jurisdiction in California as required by law.  This failure to identify specific acts for each Defendant is alone fatal to his attempt to subject all three Shopify to California jurisdiction.  *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (personal jurisdiction requirements "must be met as to *each* defendant" (emphasis added)).

- 22 -

Far from establishing personal jurisdiction, Briskin's theory confirms the absence of a viable jurisdictional theory. The Supreme Court requires courts to conduct a "'minimum contacts' analysis [by] look[ing] to the *defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.*" *Walden*, 571 U.S. at 285 (emphasis added). Jurisdiction thus must be based on "contacts that the 'defendant *himself*' creates with the forum state." *Id.* (emphasis in original).

Briskin alleges that the Shopify Defendants collected data from a California consumer because he, a California consumer, purchased a product from IABMFG. But he admits that it was IABMFG who chose to utilize the Shopify services. (ER-99 [SAC ¶ 24] (admitting that merchants "can elect to embed certain Shopify assets, such as payment forms, into their pre-existing websites.").) And it was Briskin who chose to buy a product from IABMFG. (ER-113 [SAC ¶ 57-58 (detailing Briskin's decision to purchase fitness apparel for his wife).) The Shopify Defendants thus happened to collect a California consumer's data, as opposed to data from consumers in other states, due entirely to the decisions and actions of Briskin and IABMFG. Briskin's and IABMFG's unilateral decisions cannot create jurisdiction over any, much less all, of the Shopify Defendants.[8] *Helicopteros Nacionales de Colombia,*

---

[8] Briskin likens the alleged conduct to "physically plac[ing] a surveillance device at a cash register in California storefront and us[ing] it to intercept payment details

*S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

In fact, Briskin admits that when the Shopify Defendants contracted with IABMFG to provide it services, they were *agnostic* about where IABMG decided to conduct business. (Opening Brief at 24 ("Shopify, however, chose to extract personal data from IABMFG's customers—*wherever located*—through the payment portal it created and maintained." (emphasis added)).) In other words, the Shopify Defendants *did not care where IABMFG's customers were*; they were providing services regardless of the forum in which they would be used.[9] This proves that the

_____

from customers there." (Opening Brief at 21.) This hypothetical proves too much. It was IABMFG who elected to utilize the Shopify services on their website and solicit California consumers. At no point did the Shopify Defendant ask or require that its services be used in California, let alone take an action to place a physical item in California. Briskin's reliance on *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011), is therefore misplaced. In *CollegeSource*, the defendant intentionally misappropriated materials from a business it knew was based in California and who had refused to sell the materials to the defendant. *Id.* at 1077-1079 (finding that plaintiff expressly targeted the forum by misappropriating materials from "direct competitor[]" after "[plaintiff] had earlier rebuffed [defendant]'s attempts to purchase this very material").

[9] Briskin alleges that "Shopify" "creates all of the code necessary to implement [a merchant's] product catalog and to accept payment" (ER-99 [SAC ¶ 24]) and this "software code" allegedly "intercept[s] and reroute[s]" to "Shopify's computer servers" the "private information" that consumers enter into "the forms" (ER-104

- 24 -

Shopify Defendants took no action expressly aimed at California. *Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.").

To salvage his claims, Briskin presents three arguments for why the Shopify Defendants purposefully directed their activities toward California. All fail.

### 1.   Foreseeable Effects in California Are Insufficient

Briskin asks this Court to adopt an already-rejected theory of personal jurisdiction. He argues that because the Shopify Defendants contracted with IABMFG, a California company, they should have known that they would collect data from California consumers.[10] (Opening Brief at 21-22.)

But mere foreseeability, even if established, is insufficient to plead specific jurisdiction. This Court has understood "express aiming" to require "'something

---

[SAC ¶ 35]). But he does not plead any facts that the Shopify Defendants' creation of that code was an act specifically targeting California.

[10] Simply entering into a contract with a California company does not establish minimum contacts with California. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985) ("[A] contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." (cleaned up)); *Boschetto*, 539 F.3d at 1017 ("[W]e are guided by the Supreme Court's admonition that the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction.").

more' than 'a foreign act with foreseeable effects in the forum state.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (internal citations omitted); *Axiom*, 874 F.3d at 1069-70 ("In *Walden*, the Supreme Court rejected our conclusion that the defendants' knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts."). That "something more" is that the plaintiff must identify "wrongful conduct individually targeting a known forum resident." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000); *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (Kennedy, J., plurality opinion) ("This Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment.").

Briskin also claims that "Shopify" "sends a confirmation email" to consumers on behalf of the merchant, which creates a "direct, two-way communication link between Shopify and the forum." (Opening Brief at 29.) But, again, Briskin admits that "Shopify" sends confirmation emails to consumers *wherever they are located*, not because of their presence in a particular forum. This Court has already rejected finding specific personal jurisdiction based on confirmatory emails where, as here, it is the *consumer* who decided to make the purchase and there is no allegation that the defendant's decision to send the confirmation email has anything to do with

California.  *Boschetto*, 539 F.3d at 1014, 1017 (holding that the seller of an automobile on eBay did not purposefully avail himself of California, despite communicating with the California buyer "via email to arrange for delivery of the vehicle from Wisconsin to California"); *id.* at 1023 n.4 (Rymer, J., concurring) ("Even if Hansing knew Boschetto was in California when he sent the post-auction email, the email was not sufficient to subject him to personal jurisdiction there.  It established only a limited contact, and Hansing sent it because Boschetto won the auction, not because he was in California." (citing *Burger King*, 471 U.S. at 474)); *accord Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (personal jurisdiction requires more than "simply operating an interactive website accessible in the forum state and sending emails to people who may happen to live there"); *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) ("[U]se of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." (cleaned up)).

As discussed above, Briskin did not allege, and cannot identify, a single act by each Shopify Defendant—much less all Shopify Defendants—that specifically targeted him in California.  This defeats a finding of jurisdiction. *Schwarzenegger*, 374 F.3d at 807 ("It may be true that [defendant's] intentional act eventually caused

harm to [plaintiff] in California, and [defendant] may have known that [plaintiff] lived in California. But this does not confer jurisdiction.").

> ### 2. Extensive Business Presence Is Insufficient Where the Defendants' Conduct Lacks a Forum-Specific Focus

Briskin next claims that the Shopify Defendants' alleged "extensive business presence" in California shows that they were exploiting the California market for their benefit. (Opening Brief at 27-28.)

But, where a defendant's business "lacks a forum-specific focus," this Court declines to find purposeful direction. *AMA Multimedia*, 970 F.3d at 1210-11 (no purposeful direction because "the United States was not 'the focal point' of the website"); *Sky Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 68-69 (9th Cir. 2021) (no California-specific focus where "the only connection between [defendant's] website and infringing activities in California is that 0.0018% of [defendant's] sales are [plaintiff] products to California").

Here, Briskin alleges that 80,000 merchants who use Shopify are in California and so the Shopify Defendants conduct substantial business here. (ER-96 [SAC ¶ 12].) But he also claims that as of 2018 "more than 1,000,000 businesses in approximately 175 countries" used the "Shopify" platform. (ER-99 [SAC ¶ 24].) Accepting these allegations as true, "Shopify" created software available to merchants *worldwide*, and, as of 2018, *only* 8% of those merchants were located in California. This is plainly insufficient to establish purposeful direction toward

- 28 -

California.  *AMA Multimedia*, 970 F.3d at 1211 (no purposeful direction even where "nearly 20% of [defendant's] traffic comes from U.S. users" because market was "global"); *id.* at 1212 (no purposeful direction without evidence that defendant's choice of vendor "was motivated by a desire to appeal to the [forum] or generate more users [in the forum], as opposed to more users globally").

### 3.  The Lack of California-Specific Conduct Renders *Mavrix* Inapposite

Briskin also points to *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011), to claim that there is personal jurisdiction over the Shopify Defendants because they processed his data over an interactive website.  (Opening Brief at 25-26, 28-29.)

In *Mavrix*, a California photography company sued an Ohio gossip website for posting plaintiff's photography on defendant's website in violation of its copyrights.  *Mavrix*, 647 F.3d at 1221-23.  The *Mavrix* court held that the defendant had expressly aimed its conduct at California because of its California-focused subject matter: it "operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries."  *Id.* at 1230.

But, as this Court subsequently explained in *AMA Multimedia*, the decision in *Mavrix* is limited in three significant ways that make it inapposite here.  970 F.3d at 1210-12.

- 29 -

*First*, in *Mavrix*, the defendant's "'website had a specific focus on the California-centered celebrity and entertainment industries'" and so the defendant there "'anticipated, desired, and achieved a substantial California viewer base.'" *Id.* at 1210 (quoting *Mavrix*, 647 F.3d at 1230). By contrast, the Court found that the defendant in *AMA Multimedia* "lacks a forum-specific focus." *Id.* The same is true here. As discussed above, Briskin has not pled any facts showing how the Shopify Defendants' services or platform that IABMFG utilized are specific to or focused on California.

*Second*, the *Mavrix* Court relied on the defendant's own *choice* to exploit the California market in finding personal jurisdiction. 647 F.3d at 1229 ("[W]e find most salient the fact that [defendant] used [plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain."). The defendant itself posted allegedly copyrighted pictures on a website that "'continuously and deliberately exploited' the California market. . . ." *Id.* at 1230. The defendant thus took specific actions that it knew would create effects in California. *Id.* (noting that the defendant "anticipated, desired, and achieved a substantial California viewer base"—"an integral component of [defendant's] business model and its profitability"). In contrast, in *AMA Multimedia*, this Court found no purposeful direction where third parties, not the defendant, were responsible for the forum-specific conduct. 970 F.3d at 1210-11 ("[Defendant's]

content is primarily uploaded by its users, and the popularity or volume of U.S.-generated adult content does not show that [plaintiff] expressly aimed the site at the U.S. market.").  And this Court continues to affirm dismissal where there is no allegation of an intentional act by the defendant *specifically* directed at California. *See Yeager v. Airbus Grp. SE*, 2022 WL 1175236, at *2-3 (9th Cir. Apr. 20, 2022) (unpublished) (affirming dismissal because "actions were not expressly aimed at the forum state of California").[11]

---

[11] Consistent with this Court's holding in *AMA*, other federal circuit courts also require that the plaintiff show a defendant's specific, affirmative action aimed at the forum to find specific jurisdiction. *See, e.g.*, *In re Sheehan*, 48 F. 4th 513, 525 (7th Cir. 2022) (no specific jurisdiction where plaintiff pointed to *his* connection to the forum, not defendant's: "only connection between the defendant's suit-related conduct and the United States is Sheehan's residence in Illinois and his unilateral act of filing for Chapter 11 bankruptcy in Illinois"); *Eighteen Seventy, LP v. Jayson*, 32 F. 4th 956, 971-72 (10th Cir. 2022) ("[W]e have centered the express aiming analysis on whether the defendant's allegedly tortious conduct was focused on or directed at the forum state—not, as the Entities would seemingly have it, on whether the defendant's wrongful conduct was focused on or directed at the interests of plaintiffs who reside in or otherwise have significant connections to the forum state."); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F. 4th 314, 218 (5th Cir. 2021) (affirming dismissal because "[f]or Texas to have jurisdiction, . . . the article had to target [Texas] specifically and knowingly" and "the article never mentioned Texas, never discussed [] activities there, and was not aimed at Texans any more than at residents of other states"); *Blessing v. Chandrasekhar*, 988 F.3d 889, 906 (6th Cir. 2021) (no specific personal jurisdiction where defendants "took no affirmative steps to direct any communications to the plaintiffs or to anyone else in Kentucky" and did not "post[] the tweets hoping to reach Kentucky specifically as opposed to their Twitter followers generally").

The facts here are more like *AMA Multimedia* than *Mavrix*. The alleged data collection here only touches California because a third party, IABMFG, and a California resident, Briskin, each chose to engage in a transaction that allegedly utilized the Shopify Defendants' services. (*See* ER-113-114 [SAC ¶¶ 57-60] (alleging that plaintiff accessed IABMFG's website www.iambecoming.com, which sent information to "Shopify's computer network").)[12] Indeed, Briskin asserts that the Shopify Defendants wanted to extract data "wherever located."[13] Briskin's allegations thus do not support a finding of express aiming. *Cf. Mavrix*, 647 F.3d at 1231 ("Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed.").

---

[12] Shopify Inc.'s website is purely informational, "is not specifically directed to California," and "[c]ustomers who purchase products from merchants that use Shopify Inc.'s e-commerce services do not interact with Shopify Inc.'s Website." (ER-84 [McIntomny Decl. ¶ 7].) Instead, "online transaction[s] [are] handled using the merchant's online storefront, and the merchant's customers are not directed to the Website." (*Id.*) And Shopify Inc. "does not market, target, or tailor its products or services specifically to California companies"—through its website or otherwise. (*Id.* ¶ 5.)

[13] Briskin analogizes this case to a "company that installs a physical surveillance device in a food truck that operates in both California and Nevada." (Opening Brief at 25.) According to Briskin, that "company's surveillance of California is no less intentional even though the company is agnostic at any given moment as to where the food stuck is located." (*Id.*) This hypothetical misses the mark. Simply selling a product to someone who then himself chooses to use it in California is not an "intentional act" purposefully directed at California. And, in any event, the merchants that Shopify Inc. serves—including IABMFG—do not operate in only two states, they sell to consumers all over the world.

Briskin contends that "Shopify's extensive business presence in California confirms that its extraction of consumer data in California was not a random or fortuitous consequence of third-party behavior." (Opening Brief at 27). But even if the Shopify Defendants have a presence in California, he admits that such presence is because of California's large merchant and consumer markets, which falls far short of constituting express aiming. *Compare* ER-96 [SAC ¶ 12], *with Yeager*, 2022 WL 1175236, at *2 ("the fact that California has large aerospace and aviation industries does not establish that a website with global viewership and scope was expressly aimed at the state"), *and Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. County*, 137 S. Ct. 1773, 1781 (2017) ("For specific jurisdiction, a defendant's general connections with the forum are not enough. As we have said, a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." (cleaned up)).

*Third*, the court in *Mavrix* relied on the fact that "advertisements on [defendant's] site targeted California residents, meaning website hits from Californians translated to more advertising revenue from the site's California advertisers." *AMA Multimedia*, 970 F.3d at 1211. But in *AMA Multimedia*, this Court found that geo-located advertisements on their own cannot constitute express aiming because the defendant could then "be said to expressly aim at *any* forum in which a user views the website." *Id.* at 1211 (no express aiming where "a viewer in

- 33 -

the United States will see advertisements tailored to the United States while a viewer in Germany will see advertisements tailored to Germany").

Here, there are no allegations that the Shopify platform or payment processing services were specific to California. *Fidrych v. Marriott Int'l, Inc*., 952 F.3d 124, 139 (4th Cir. 2020) (no purposeful direction because "the website does not target South Carolina residents for commercial transactions any more than it targets any other state" and "the website makes itself available to any one who seeks it out, regardless of where they live"); *see also Janus v. Freedman*, 840 F. App'x 928, 930-32 (9th Cir. 2020) ("[Plaintiff] relies on only a handful of communications that [defendant] made to (at most) a few Californians, and there is no evidence or even an allegation that these communications had reputation-based effects of the sort that would be sufficient to warrant haling [defendant] into a California court").

Rather than *Mavrix*, as Briskin urges, this case is akin to the district court opinions in *Graham v. Noom*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), and *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714 (S.D. Ill. 2020). Both cases, unlike *Mavrix*, involved the question of whether a court can exercise personal jurisdiction over a defendant who provides software-based services to merchants and collects data from its clients' interactions with consumers, as Briskin alleges here. Both courts answered *no*.

- 34 -

In *Graham*, plaintiffs sued Noom, "a web application that helps its users lose weight," and FullStory, Noom's vendor that offers software-based services to "record what visitors are doing on the Noom website, such as their keystrokes, mouse clicks, and page scrolling," which "Noom contends . . . improves its website design and the user's experience." 533 F. Supp. 3d at 827-28. Similar to Briskin, the plaintiffs in *Noom* brought a putative class action alleging that "FullStory is illegally wiretapping [customers'] communications with Noom . . . in violation of their right to privacy under California's Invasion of Privacy Act (CIPA) and the California Constitution." *Compare id.* at 828, *with* ER-127-128 [SAC ¶ 104] ("Shopify's actions . . . violated criminal laws on wiretapping . . . .").) FullStory, a Delaware corporation headquartered in Georgia, moved to dismiss for lack of personal jurisdiction. *Graham*, 533 F. Supp. 3d at 828. The court granted the motion to dismiss, holding: "The allegations in the complaint establish only that FullStory is Noom's vendor for a software service that Noom uses to analyze its data. A vendor's selling a product to Noom—even if Noom has substantial business here and the vendor knew it—does not establish specific personal jurisdiction over the vendor." *Id.* at 837-38.

The district court in *McGoveran* was presented with similar facts and came to the same conclusion. 488 F. Supp. 3d 714. There, plaintiffs were customers of the financial institution John Hancock, which used an Amazon Web Services (AWS)

product called Amazon Connect in its customer call center. *Id.* at 716-17. Amazon Connect in turn used a third-party called Pindrop to analyze customer voices as part of its customer verification and security offering. *Id.* at 717. Plaintiffs sued AWS and Pindrop for allegedly violating Illinois's Biometric Information Privacy Act. *Id.* In concluding that it lacked specific personal jurisdiction over AWS, the court held:

> The litigation arises because John Hancock, a third party based in Massachusetts, contracted with AWS and Pindrop to analyze the voices of its customers. The fact that Plaintiffs called John Hancock from Illinois using their own Illinois phone numbers is insufficient to confer specific personal jurisdiction over the foreign Defendants. Furthermore, according to the Complaint, AWS and Pindrop apply their voice biometric technology to every caller to John Hancock's call centers—not just those calls initiated by Illinois residents. The Court cannot say, then, that Defendants purposefully availed themselves of the privilege of conducting business in Illinois or directed their activities at residents of Illinois.

*Id.* (cleaned up).

As in *Graham*, *McGoveran*, and numerous other district court cases declining to find personal jurisdiction in similar circumstances, the Shopify Defendants did not expressly aim any activities at California, IABMFG did. *See Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) ("The allegations in the complaint establish only that FullStory is Blue Nile's vendor, and a vendor's selling a software-services product to Blue Nile—even if Blue Nile had substantial business here and the vendor knew it—does not establish specific personal jurisdiction over the vendor."); *Massie v. General Motors Co.*, 2021 WL 2142728, at *7 (E.D. Cal.

- 36 -

May 26, 2021) (declining to find personal jurisdiction over defendant who "is in the business of licensing software for commercial use to companies" and "the decision of whether or how to implement [] software on any particular website is that of the customer, not [defendant]").

The District Court therefore correctly held that Briskin's "allegations establish only that Shopify is IABMFG's vendor for an online sales platform." (ER-12 [MTD Op. at 8]; *id.* ("Shopify serves as an agent of IABMFG, providing hosting services for the latter's website . . . .").) "Such passive conduct does not represent an intentional act directed at California residents." (*Id.*)

## B. Briskin's Claims Do Not Arise Out of the Shopify Defendants' Contacts with California

Even if Briskin could establish purposeful direction, his personal jurisdiction argument fails for the independent reason that he cannot establish that his claims "arise out of or relate to" the Shopify Defendants' California activities.

Courts find that a claim does not arise out of or relate to the defendant's forum contacts where a plaintiff would have suffered the same injury no matter where he was located. *Picot*, 780 F.3d at 1215 (no jurisdiction over a defendant in California where plaintiff's alleged injury was "entirely personal to him and would follow him wherever he might choose to live or travel"); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144-46 (9th Cir. 2017) (no jurisdiction where "the forum state was only

- 37 -

implicated by the happenstance of [p]laintiffs' residence" and plaintiffs would have experienced same tortious conduct wherever they resided).

These cases speak precisely to the issue in this matter. Briskin claims that he was harmed because the Shopify Defendants collected his data when, while located in California, he chose to buy fitness apparel from IABMFG. (ER-113 [SAC ¶ 57].) But Briskin would have experienced the same alleged harm from the collection of his data if he bought from IABMFG while in New York, Florida, Texas, Alaska, or Hawaii. That the Shopify Defendants collected *California* data was a result of *Briskin* choosing to live in California, not any action taken by the Shopify Defendants relating to California. Briskin's unilateral decision cannot create personal jurisdiction over the Shopify Defendants. *Walden*, 571 U.S. at 290 (no minimum contacts where "[r]espondents would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled").

In arguing that his claims relate to the Shopify Defendants' California contacts, Briskin points to their alleged substantial business in California, including a physical store in Los Angeles and solicitation of consumers on behalf of one California merchant by running a pop-up store. (Opening Brief at 27.) He argues that "the extensive business ties that Shopify consciously developed with California merchants to enable these allegedly unlawful activities certainly relate to Briskin's claims." (*Id.* at 28 (emphasis omitted).)

But as the Supreme Court has made clear, "[t]he phrase 'relate to'" in this context requires more precision than that kind of high-level handwaving. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). It still "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.*; *see LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861-62 (9th Cir. 2022) (cleaned up). Plaintiff must plead specific facts showing how the "instant litigation relates to [the California contact]." *LNS*, 22 F.4th at 864 (cleaned up).

Briskin has not made any showing that his claims arise out of or relate in any way to these alleged fleeting contacts with California. For example, he offers no facts showing a connection between the alleged physical Los Angeles "Shopify" store and his purchase of fitness apparel from IABMFG. *See id.* at 864 ("There is no allegation in this case that [defendant]'s single Arizona service center ever serviced Plaintiffs' aircraft, nor is there any indication that this service center even services the same type of Columbia aircraft at issue in this case."). Nor can he: Briskin purchased fitness apparel using his iPhone, not at any physical store. (ER-113 [SAC ¶ 57].) In fact, there is no allegation whatsoever that the Los Angeles store sells *any products* relating to IABMFG. *See LNS*, 22 F.4th at 864 (no specific jurisdiction in Arizona over aircraft product liability claim where plaintiffs did not

allege their aircraft was ever serviced at, and thus claim did not relate to, defendant's "single Arizona service center").

Indeed, the Ninth Circuit recently held that a Korean company headquartered in Korea and its U.S. subsidiary based in Delaware were not subject to specific jurisdiction in Hawaii for a product liability claim arising out of an allegedly defective lithium-ion battery despite extensive contacts with the forum state. *Yamashita v. LG Chem, Ltd.*, No. 21-17512, --- F. 4th ---, 2023 WL 2374776, at *2, *7 (9th Cir. Mar. 6, 2023). Both defendants shipped products, including lithium-ion batteries, through the port of Honolulu. *Id.* at *3. And the Korean parent company had "significant involvement in the sale of residential solar batteries in Hawaii." *Id.* Notwithstanding those forum contacts, this Court held that it lacked specific jurisdiction over either defendant because plaintiff had "not shown that his injuries arose out of any [forum] contacts" or that his claim was sufficiently "related[]" to those contacts. *Id.* at *7.

The same reasoning applies here. Briskin cannot establish that any store or fulfillment center in California had anything to do with Defendants' alleged "extract[ion]" of "personal data from IABMFG's customers." (Opening Brief at 24.) The District Court therefore appropriately concluded that Briskin "flatly fails to clarify how his Internet-based claims arise from or even relate to those activities." (ER-12 [MTD Op. at 8].)

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REJECTING BRISKIN'S REQUEST FOR JURISDICTIONAL DISCOVERY

Briskin argues that even if the District Court correctly dismissed for lack of personal jurisdiction, this Court should nevertheless reverse and remand because, according to Briskin, the District Court did not rule on his request for jurisdictional discovery. (Opening Brief at 30-32.)

Briskin's argument for reversal based on denial of jurisdictional discovery fails three independent reasons.

*First*, because the question of jurisdictional discovery was not "squarely presented" to the District Court, "[t]he district court did not abuse its discretion by ignoring [the] argument." *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1302 (11th Cir. 2019). It is well established that "'[a]rguments raised only in footnotes, or only on reply, are generally deemed waived' and need not be considered." *Cheever v. Huawei Device USA, Inc.*, 2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019) (quoting *Estate of Saunders*, 745 F.3d at 962 n.8). As a result, "[m]any courts will disregard arguments raised exclusively in footnotes." *Sanders v. Sodexo, Inc.*, 2015 WL 4477697, at *5 (D. Nev. July 20, 2015) (quoting Bryan Garner, *The Redbook: A Manual on Legal Style* 168 (3d ed. 2013)); *see also Maldonado v. Morales*, 556 F.3d 1037, 1048 n.4 (9th Cir. 2009) ("Arguments made in passing and inadequately briefed are waived.").

Briskin's "request" for jurisdictional discovery was relegated to a single footnote: "Should the Court determine a more satisfactory showing of facts is necessary, Plaintiff requests leave to take jurisdictional discovery." (ER-21 [Opposition to Shopify Inc. MTD at 11 n.5]; *see also* 1-SER-36 [Opposition to Shopify Payments MTD at 10 n.6]; 1-SER-56 [Opposition to Shopify USA MTD at 8 n.5].) This footnote "request" for jurisdictional discovery was not accompanied by any attempt to demonstrate *how* further discovery would allow him to meet his burden to establish specific personal jurisdiction over the Shopify Defendants. (ER-21 [Opposition to Shopify Inc. MTD at 11 n.5].) Briskin never served any Defendant with any jurisdictional discovery request, nor did he so much as mention jurisdictional discovery at oral argument on the motion to dismiss. (*See generally* 1-SER-2-21.) Instead, Briskin merely referenced an exhibit seeking sweeping discovery from all three Defendants in a single set of proposed discovery requests separately attached to his opposition briefs.[14] (ER-63-64, 70-71 [Backer Decl. Ex. 7].)

---

[14] None of the requests appear to relate to Briskin's claim. Among other things, he requests documents and information relating to any California tax filing from 2017 through 2021; revenue obtained from merchant transactions with customers in California from 2017 through present; documents relating to any communications between Defendants and any government agency in California, without a time limitation; and the location of any bank accounts Defendants may have in California. (ER-63-64, 70-71 [Ex. 7 to Backer Decl.].) How these sweeping requests were narrowly tailored to advancing a jurisdictional theory, let alone how Shopify

Relying on *Hurn v. Retirement Fund Tr. of Plumbing, Heating & Piping Indus. of So. Cal.*, 648 F.2d 1252 (9th Cir. 1981), Briskin contends that the District Court's "unexplained decision" not to allow jurisdictional discovery was error. (Opening Brief at 31.) But the plaintiff in *Hurn* filed with the District Court a stand-alone "motion for leave to amend his complaint," which the court "denied without a statement of reasons." 648 F.2d at 1253. Here, by contrast, Briskin did not serve discovery requests on any Shopify Defendant or file a motion for jurisdictional discovery, despite having seven months and expressly reserving the right to do so. (*See supra* at 14-15.) He instead just made a passing request in a footnote of his brief opposing a motion to dismiss, and then never mentioned it again. (*Id.*)

Under the circumstances, the District Court did not abuse its discretion in declining to consider this request, which plainly was not sufficiently presented to it. Indeed, courts routinely reject requests for jurisdictional discovery relegated to footnotes that do not explain how the facts they seek to discover would change the jurisdictional analysis. *See, e.g.*, *Downtown Soup Kitchen v. Municipality of Anchorage*, 576 F. Supp. 3d 636, 646 (D. Alaska 2021) (declining to address argument, in a footnote, that "it would be improper to dismiss the complaint without

---

Defendants' responses might cure the jurisdictional defects in all three versions of Briskin's complaint, was and remains anyone's guess. Briskin did not bother to explain his theory to the District Court, nor does he justify these requests on appeal.

at least giving [plaintiff] the chance to conduct limited jurisdictional discovery" because the argument was "not adequately developed" for consideration); *Voodoo SAS v. SayGames LLC*, 2020 WL 3791657, at *8 (N.D. Cal. July 7, 2020) ("To the extent this footnote constitutes a request for leave to take jurisdictional discovery, the request is denied" because plaintiff failed to "explain[] how discovery might alter the jurisdictional analysis"); *Rivera v. Invitation Homes, Inc.*, 2020 WL 8910882, at *8 (N.D. Cal. Oct. 29, 2020) ("In a footnote, Plaintiffs seek leave to conduct jurisdictional discovery. . . . Plaintiffs fail to offer any details supporting the assertion that jurisdictional discovery would establish facts supporting jurisdiction over [defendant] under any of Plaintiffs' theories.").[15]

*Second*, and relatedly, the issue is not preserved for appellate review because it was not sufficiently raised below. This Court generally "will not hear an issue raised for the first time on appeal." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992). Although there is no bright-line rule to determine whether a matter has been raised below, "a workable standard . . . is that the argument must

---

[15] *See also Kyocera Int'l, Inc. v. Semcon IP, Inc.*, 2018 WL 5112056, at *4 n.3 (S.D. Cal. Oct. 19, 2018) (denying jurisdictional discovery where, "[i]n a footnote, [plaintiff] half-heartedly requests jurisdictional discovery based on unspecified 'information and belief' . . . ."); *Rabieh v. United States*, 2019 WL 5788673, at *11 (N.D. Cal. Nov. 6, 2019) (denying jurisdictional discovery where "[p]laintiff does not explain in footnote two what discovery he seeks or why it is likely to undermine Defendants' arguments").

be raised sufficiently for the trial court to rule on it." *Id.* (cleaned up). Because the request was not sufficiently presented to the District Court, the argument is waived on appeal. *Moseley*, 780 F. App'x at 516 n.1 (rejecting argument "raised . . . in the district court only in a footnote").

*Third*, the District Court did not abuse its discretion in constructively denying jurisdictional discovery by granting the motion to dismiss. *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("[A] decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." (cleaned up)).

The District Court impliedly determined that jurisdictional discovery would not result in "a more satisfactory showing"—the trigger for Briskin's conditional request—because he had failed to "demonstrate how further discovery would allow [him] to contradict the [defendant's] affidavits." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir.1995); *see also Butcher's Union*, 788 F.2d at 540 (district court did not abuse its discretion by refusing jurisdictional discovery where the plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction").[16] Indeed, Briskin made *no* attempt to explain in his footnote how the

---

[16] *See also Boschetto*, 539 F.3d at 1020 (no abuse of discretion where "request for discovery . . . was based on little more than a hunch that it might yield jurisdictionally

discovery he referenced would allow him to cure any jurisdictional defect in his pleading.[17]  (ER-21 [Opposition to Shopify Inc. MTD at 11 n.5] (citing proposed discovery requests without explaining why the requests would change the jurisdictional analysis).

Even on appeal, Briskin does not explain how additional discovery could cure the obvious jurisdictional defects.  The best he offers is that "discovery would have allowed [him] to establish more precisely the active nature of Shopify's efforts to acquire and use California consumer data, as well as the contours of Shopify's contractual relationship with IABMFG."  (Opening Brief at 31-32.)  That is not enough.  *Yamashita*, --- F. 4th. ---, 2023 WL 2374776, at *7-9 (affirming denial of

---

relevant facts"); *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022) ("Motus's request for jurisdictional discovery comprised a single conclusory sentence, accompanied by a footnote, and contained no indication of what facts might be developed through discovery.  With nothing more before it, the court below concluded that jurisdictional discovery was unwarranted . . . .").

[17] Briskin had sufficient time to seek jurisdictional discovery and provide an explanation of why it was necessary.  There were seven months between when Briskin filed his original complaint and opposed Defendants' motions to dismiss the SAC.  And Briskin had three months to seek jurisdictional discovery after reviewing the first motions to dismiss for lack of personal jurisdiction.  Briskin also expressly reserved the right to serve jurisdictional discovery, but he failed to do so.  *See Sopcak*, 52 F.3d at 819 ("district court did not abuse its discretion by ruling on the jurisdictional issue without allowing additional time for discovery" where plaintiff could have, but did not, move for jurisdictional discovery for months).  Yet he failed to explain the necessity of jurisdictional discovery in his responses to the first motion to dismiss, the second motion to dismiss, or at the motion hearing.  (*See supra* at 14-15.)

jurisdictional discovery notwithstanding plaintiff's "hunch that jurisdictional discovery will allow him to meet his burden"); *Pebble Beach*, 453 F.3d at 1160 ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." (cleaned up)). Briskin has failed to establish the "actual and substantial prejudice" required to second-guess the District Court's decision.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY SEPARATELY DISMISSING THE COMPLAINT UNDER RULE 8

The District Court granted the Shopify Defendants' motion to dismiss under Rule 8 for failure to provide adequate notice of the allegations against each Defendant. (ER-9-10 [MTD Order at 5-6].) Briskin seeks reversal. (Opening Brief at 33-40.)

As an initial matter, if this Court affirms the District Court's personal jurisdiction ruling, it need not reach the Rule 8 issue. But if this Court does address Rule 8, it should affirm the District Court's order below.

Federal Rule of Civil Procedure 8 requires that a "complaint . . . provide 'the defendant with fair notice of what the claim is and the grounds upon which it rests.'" *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[18]  Where a complaint names multiple

defendants, the complaint must "permit [each] defendant to reply to each particular

allegation that pertains to" it.  Wright & Miller, § 1248 Statement of Particular

Matters—Multiple Claims and Parties, 5 Fed. Prac. & Proc. Civ. § 1248 (4th ed.).

A complaint that pleads its allegations only as to defendants collectively, without

specifying which allegations apply to which defendant, frustrates that goal.  As

Judge Koh has explained, a "failure to allege what role each Defendant played in the

alleged harm makes it exceedingly difficult, if not impossible, for individual

Defendants to respond to Plaintiffs' allegations." *In re iPhone Application Litig.*,

2011 WL 4403963, at *8 (N.D. Cal. 2011).

For that reason, this Court routinely affirms dismissals where, as here, the

complaint fails to differentiate between multiple, differently situated defendants, or

to specify which acts alleged are attributable to each.  *See, e.g.*, *Estate of Morris*,

856 F. App'x at 671-72 (affirming dismissal "on the ground that appellants failed

sufficiently to allege which defendants committed which acts"); *Sandoval v.*

*Barneburg*, 470 F. App'x 550, at *1 (9th Cir. 2012) (affirming dismissal where

---

[18] Rule 8's fair-notice requirement also protects district courts. As this Court has explained, "unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000).

Plaintiff failed to "identify which actions of the individual defendants violated his rights with regard to each claim").

Briskin does not dispute that the SAC lumps together the three distinct and legally separate Defendants—Shopify Inc., Shopify USA, and Shopify Payments—in essentially all its allegations. Instead, he argues that group pleading is permissible because: (1) the law does not require him to separately identify which acts each defendant is accused of; and (2) even if it did, the SAC satisfies that obligation by accusing every defendant of every act. Neither is correct.

*First*, Briskin argues that Rule 8 imposes no general prohibition against lumping defendants together in a complaint. He asserts that such a rule would run counter to the proposition that Rule 8 dismissal is appropriate "only in 'aggravated cases' where a complaint 'is so verbose, confused, and redundant that its true substance, if any, is well disguised'" (Opening Brief at 36 (quoting *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965) (cleaned up)). But the case he cites for that principle, *Corcoran*, is about *length*, not the failure to disaggregate allegations between defendants. *Corcoran*, 347 F.2d at 223. Length is just one of several ways in which a complaint can violate Rule 8. *Hart v. Salois*, 605 F. App'x 694, 701 (9th Cir. 2015) ("It is not the sheer length of [Plaintiff's] filing, the number of paragraphs, or the number of claims, that triggers the Rule 8 violation."). A complaint may also violate Rule 8, as Briskin's SAC does here, by consisting merely of "multiple

collective allegations against the defendants and . . . fail[ing] to identify each individual defendant's culpable actions." *Id.*

Briskin also asserts that the District Court's decision "erase[s] the critical textual distinction" between Rule 8 and Rule 9(b). (Opening Brief at 39.) Not so. Rule 8 requires that the plaintiff identify which specific allegations each defendant is accused of committing. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The heightened requirements of Rule 9(b), by contrast, require a plaintiff asserting fraud claims to allege with more specificity "the who, what, where, when, and how of the misconduct alleged," rather than merely the "the neutral facts necessary to identify" which acts each defendant is accused of committing. *Id.* at 1106. The District Court did not require any such heightened pleading from Briskin, who failed to meet even the basic requirements of Rule 8 to set forth those necessary identifying facts. (ER-9-10 [MTD Op. at 5-6] ("The complaint does not allege plaintiff's particular claims against any specific defendant, . . . [and] thus fails to put any of the three defendants fairly on notice of the claims against them.").)

To support his arguments with a policy hook, Briskin complains about the cascading effects of the District Court's order: "[s]ophisticated corporate defendants engaged in unlawful schemes [to] shield themselves from liability by splitting responsibility" across them. (Opening Brief at 39.) This is a red herring. Plaintiffs routinely bring cases against individual corporate entities after, as required under

Rule 11, investigating their claims to decide which entities to name as defendants. Having (presumptively) gathered sufficient facts to identify three independent Defendants, Briskin should not be permitted to then avoid explaining what each Defendant did that gives rise to his claims.

Indeed, far from "creat[ing] inequitable results" (Opening Brief at 39), dismissing Briskin's complaint under Rule 8 avoids such results. Were Briskin's position adopted, a plaintiff (especially one seeking to hail a foreign defendant into court) could always name as defendants whatever potentially affiliated entities offer jurisdictional legitimacy, and then lump them all together throughout the complaint without saying how those affiliates are involved in the allegedly unlawful scheme that did him harm. Under this invented standard, it would be impossible for any of the entities to contest its involvement at the pleading stage, swallowing much of Rule 12 (and corporate distinctions) whole. Any plaintiff that employs such a tactic would ensure that if the complaint can survive as to one, it must survive as to all. That is precisely what Rule 8 is designed to prevent.

*Second*, Briskin says the SAC should survive because "every collective reference to 'Shopify'" in the SAC is applicable equally to each of the defendants. (*Id.* at 34.)

But it is impossible for Shopify Inc., Shopify USA, and Shopify Payments to have committed every act attributed to the collective "Shopify." The SAC, for

instance, describes various emails that "Shopify" supposedly sends (ER-104 [SAC ¶ 36] ("After the consumer has completed a purchase transaction, Shopify sends the user an order confirmation email."); and various cookies that "Shopify" purportedly installs on consumers' devices (ER-105 [SAC ¶ 38] ("Shopify installs a tracking cookie on the user's browser.")).  But as the SAC's use of the singular makes clear, each of those allegations involves only a singular email or cookie, which necessarily has a single sender or installer—either Shopify Inc., Shopify USA, or Shopify Payments (or another entity entirely).  The SAC provides no clues as to which (single) entity Briskin means to accuse of the alleged conduct.[19]

Courts regularly dismiss such deficient pleadings in their entirety.  *See, e.g., Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183, at *2 (N.D. Cal. Sept. 17, 2020) ("When defendants are separate corporate entities[] and perform separate roles," pleading as to defendants generally "is insufficient to state a claim for relief."); *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) ("confusion of which claims apply to which defendants would require that the complaint be dismissed"); *Harris v. Harris*, 2012 WL 1435680, at *9 (E.D. Cal. Apr.

---

[19] This is materially different from Briskin's offered case finding that Rule 8 was satisfied by a complaint that really did mean to accuse "each and every Defendant" of each and every "allegation[] . . . aimed generally at 'the Defendants.'"  (Opening Brief at 34-35 (citing *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1275 (11th Cir. 2019)).)

25, 2012) (dismissing for failure to comply with Rule 8 because plaintiff's allegations against "all defendants" failed "to give each defendant proper notice of the claims").

In sum, Briskin's stubborn refusal to specify which Defendant he is accusing of which act obfuscates the merits of his case. To the extent that disaggregating which allegations apply to which entities impairs his ability to maintain this lawsuit—for example by showing that none of the Defendants are subject to personal jurisdiction or that none has plausibly violated the law—that is more reason to demand specificity; not, as Briskin urges, less.

## CONCLUSION

Under long-standing Supreme Court precedent, specific personal jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (cleaned up). Briskin wants to turn this well-established principle on its head, asking this Court to ignore the Shopify Defendants' lack of relevant contacts with California and instead focus on his and IABMFG's status as California residents. Under Briskin's new rule, a passive internet-based vendor is subject to jurisdiction anywhere a plaintiff allegedly suffers harm from an interaction with a website that uses that passive vendor's services. That theory of jurisdiction is unsupported by existing precedent, and this case is an ill-suited vehicle to push the established boundaries of personal jurisdiction jurisprudence.

- 53 -

Recognizing the flaws in his personal jurisdiction arguments, Briskin boldly faults the District Court for failing to grant the jurisdictional discovery he entirely failed to advance below beyond a generically referenced footnote, after expressly reserving the right to do so if he chose. But Briskin neither fairly presented that argument to the District Court (and thus failed to preserve it for appeal) nor justifies on appeal why the District Court should have granted any jurisdictional discovery.

Finally, Briskin presumably had sufficient evidentiary support to name three separate Shopify entities as Defendants, but he pleads he is unable to put each on notice of which allegedly wrongful acts they individually committed. The District Court correctly found that Rule 8 requires more. The Shopify Defendants respectfully request that the Court affirm the District Court's order in full.

Dated: March 13, 2023                     Respectfully submitted,

By /s/ Moez M. Kaba
      Moez M. Kaba

**HUESTON HENNIGAN LLP**
Moez M. Kaba (CA Bar No. 257456)
Sourabh Mishra (CA Bar No. 305185)
Adam F. Minchew (NY Bar No. 5661808)
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340

*Attorneys for Defendants-Appellees*
Shopify Inc., Shopify (USA) Inc., and
Shopify Payments (USA) Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 22-15815

I am the attorney or self-represented party.

**This brief contains** | 12,896 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

● complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Moez M. Kaba | **Date** | March 13, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*
- 55 -