No. 22-15815

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRANDON BRISKIN,
on behalf of himself and those similarly situated,
*Plaintiff-Appellant,*

v.

SHOPIFY INC., *et al.*,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California, No. 4:21-cv-06269-PJH
Hon. Phyllis J. Hamilton, United States District Judge

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

Seth Safier
Matthew T. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94114
(415) 639-9090

Nicolas A. Sansone
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiff-Appellant*

May 2, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii

INTRODUCTION ..............................................................................1

ARGUMENT ....................................................................................4

   I.   Shopify's personal jurisdiction arguments rest on legal theories this Court has rejected and factual contentions that misconstrue the SAC's allegations. ....................................................................4

   II.  Shopify's speculation as to the district court's rationale cannot justify the court's unreasoned denial of jurisdictional discovery. .........................................................................................22

   III. Shopify does not credibly dispute that the SAC gave each defendant fair notice of the claims against it. ...............................25

CONCLUSION ................................................................................33

CERTIFICATE OF COMPLIANCE ......................................................34

CERTIFICATE OF SERVICE ..............................................................35

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) ........................................... 9, 19

*Austin v. Budget Rental Car, Inc.*,
   2020 WL 8614183 (N.D. Cal. 2020) ...................................... 29

*Bancroft & Masters, Inc. v. Augusta National Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ............................................ 10

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ........................................ 14, 15

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985). .......................................................... 10

*Cook v. Brewer*,
   637 F.3d 1002 (9th Cir. 2011) ............................................ 26

*Doe v. Federal District Court*,
   467 F. App'x 725 (9th Cir. 2012) ........................................ 26

*Estate of Morris v. Bank of New York Mellon*,
   856 F. App'x 669 (9th Cir. 2021) ........................................ 30

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
   141 S. Ct. 1017 (2021) .................................................. 16, 21

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996) .................................. 30, 31

*Gillibeau v. City of Richmond*,
   417 F.2d 426 (9th Cir. 1969) .......................................... 27, 28

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................... 9

*Harris v. Harris,*
    2012 WL 1435680 (E.D. Cal. 2012) .................................................... 29

*Hart v. Salois,*
    605 F. App'x 694 (10th Cir. 2015) ..................................................... 29

*In re iPhone Application Litigation,*
    2011 WL 4403963 (N.D. Cal. 2011) .................................................. 30

*Keeton v. Hustler Magazine, Inc.,*
    465 U.S. 770 (1984) ............................................................................ 17

*Lacey v. Maricopa County,*
    693 F.3d 896 (9th Cir. 2012) ............................................................. 32

*Massie v. General Motors Co.,*
    2021 WL 2142728 (E.D. Cal. 2021) .................................................. 14

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
    647 F.3d 1218 (9th Cir. 2011) ................................................. passim

*McHenry v. Renne,*
    84 F.3d 1172 (9th Cir. 1996) ............................................................. 26

*Morrill v. Scott Financial Corp.,*
    873 F.3d 1136 (9th Cir. 2017) ........................................................... 20

*Nevijel v. North Coast Life Insurance Co.,*
    651 F.2d 671 (9th Cir. 1981) ............................................................. 26

*Ochoa v. J.B. Martin & Sons Farms, Inc.,*
    287 F.3d 1182 (9th Cir. 2002) ....................................................... 5, 14

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) ........................................................... 20

*Roth v. Garcia Marquez,*
    942 F.2d 617 (9th Cir. 1991) ............................................................. 14

*Sandoval v. Barneburg,*
   2010 WL 11531223 (N.D. Cal. 2010) ................................... 29

*Sandoval v. Barneburg,*
   470 F. App'x 550 (9th Cir. 2012) ........................................ 29

*Sonenberg v. Princess Cruise Lines, Ltd.,*
   2015 WL 13915634 (C.D. Cal. 2015) .................................. 23

*Townsend v. Holman Consulting Corp.,*
   929 F.2d 1358 (9th Cir. 1990) ........................................... 33

*United States v. Columbia Broadcasting System, Inc.,*
   666 F.2d 364 (9th Cir. 1982) .............................................. 22

*Walden v. Fiore,*
   571 U.S. 277 (2014) .................................................... 11, 12

*Whittaker Corp. v. Execuair Corp.,*
   953 F.2d 510 (9th Cir. 1992) .............................................. 24

*Yamashita v. LG Chem, Ltd.,*
   62 F.4th 496 (9th Cir. 2023) ......................................... 21, 22

*Yeager v. Airbus Group SE,*
   2022 WL 1175236 (9th Cir. 2022) ......................................... 9

## Rules

Fed. R. Civ. P. 8 ................................................................. 33

Fed. R. Civ. P. 12 ............................................................... 28

# INTRODUCTION

Defendants-Appellees Shopify Inc., Shopify (USA) Inc., and Shopify Payments (USA) Inc. (collectively, Shopify) do not dispute that Plaintiff-Appellant Brandon Briskin's Second Amended Complaint (SAC) plausibly alleges that Shopify uses interactive web platforms to gain direct access to California residents conducting California transactions. Shopify also does not dispute that *it* then uses this access to extract valuable consumer data that it knows to be from California; that *it* compiles this data into individualized profiles of specific Californians; and that *it* disseminates the extracted California data to third parties for its own commercial purposes. Shopify's own intentional actions violate California law and Californians' privacy rights. Yet Shopify maintains that courts in California cannot constitutionally take personal jurisdiction over it to adjudicate the consumer claims that arise out of this deliberate, California-directed course of business conduct. Shopify's position is untenable.

Shopify claims that it is insulated from specific personal jurisdiction in California because it performs its data-extraction and consumer-profiling activities nationwide. This argument defies common

sense. If Shopify's theory were correct, a defendant who directed unlawful conduct at all fifty states would be free from specific jurisdiction in each of them. Shopify's argument also defies this Court's decision in *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), which held that even the passive display of content on a nationally accessible website can form a basis for specific jurisdiction if the website appeals to and profits from an audience in the forum state. Shopify identifies trivial distinctions between *Mavrix Photo* and this case, but it disregards that the most prominent distinction makes the case for jurisdiction even stronger here than in that case: Rather than passively displaying content that can be viewed in California (as in *Mavrix Photo*), Shopify operates an interactive web platform through which it actively solicits and receives sensitive data directly from California consumers.

Shopify also attempts to avoid jurisdiction by claiming that it acquires California consumer data only as an incidental result of processing credit card transactions that *others* unilaterally decide to conduct in California. This characterization impermissibly misconstrues the SAC's allegations in a light unfavorable to Briskin. Properly read, the SAC alleges that Shopify sells web-based services to third-party

merchants and that Shopify, in providing these services, deliberately reaches into California transactions to solicit, extract, compile, and profit from California data. Indeed, Briskin's claims derive from *Shopify's* commercial choices about how to monetize the California data that it sought and received. Meanwhile, evidence of Shopify's vast California client base and active efforts to build up its in-state presence underscores that its access to California transactions is no mere fortuity.

Shopify is also wrong that Briskin's claims neither arise out of nor relate to Shopify's in-forum activities. Briskin's claims arise from Shopify's direct involvement in his California transaction, Shopify's extraction of his personal data out of California, and Shopify's intentional use of the data that it knows has come from California. Shopify's relatedness arguments simply rehash its other jurisdictional theories.

Even if the present record were insufficient to establish jurisdiction, Shopify cannot justify the district court's unexplained refusal to grant Briskin leave to conduct jurisdictional discovery. Briskin explained his jurisdictional theories at length below, and he identified specific information that would enable him to flesh those theories out with even greater factual detail. Shopify's speculative hypotheses as to why the

district court may have denied Briskin's discovery motion find no support in a record that is silent on the district court's rationale.

Finally, Shopify does not dispute that this Court should remand if it reverses on personal jurisdiction. But this Court should nonetheless also reverse the district court's holding that the SAC violated Federal Rule of Civil Procedure 8(a) by failing to give the Shopify defendants fair notice of the claims against them. As even the cases that Shopify itself cites make clear, a complaint violates Rule 8(a)'s notice requirement only when it is so impenetrable that the defendant cannot mount a coherent response. Shopify identifies no way that the SAC impeded its ability to understand Briskin's claims and respond on the merits.

## ARGUMENT

### I. Shopify's personal jurisdiction arguments rest on legal theories this Court has rejected and factual contentions that misconstrue the SAC's allegations.

Shopify maintains that personal jurisdiction is improper because the SAC fails to plausibly allege (1) that Shopify purposely directed its activities into California and (2) that Briskin's claims arise out of or

relate to Shopify's California-directed conduct.[1] Shopify Br. 20–21.

Shopify is wrong on both points. Briskin's claims arise directly from a California-based transaction into which Shopify deliberately inserted itself for commercial gain. Shopify's efforts to avoid this point defy both this Court's precedents and the SAC's allegations, which must be taken as true and construed in the light most favorable to Briskin. *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002).

**A.** On purposeful direction, Shopify does not dispute that the SAC plausibly alleges that Shopify intentionally processed California-based sales transactions, extracted personal data from California consumers during those transactions, compiled the data—which it knew had come from California—into individualized profiles, and disseminated the data for its own commercial benefit.[2] Shopify also does not dispute that the SAC plausibly alleges that these intentional actions caused foreseeable

---

[1] Shopify does not argue that the exercise of personal jurisdiction would be unreasonable. *See* Shopify Br. 20–21 (limiting argument to "the first two prongs" of the jurisdictional inquiry).

[2] On this point, Shopify briefly challenges the SAC for failing to identify which individual defendant performed precisely which acts in connection with this joint course of conduct. Shopify Br. 22. But the SAC permissibly alleges that each defendant is responsible for the entire course of conduct ascribed collectively to Shopify. *See infra* Part III.

harm in California. Instead, Shopify focuses its purposeful-direction argument entirely on whether it "expressly aimed" its data-extraction activities into California. Shopify Br. 21 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)). According to Shopify, it could not have done so because it processed sales transactions "regardless of the forum" and so remained "*agnostic*" as to whether it "happened to collect a California consumer's data, as opposed to data from consumers in other states," during any given transaction. *Id.* at 23–24. In other words, because Shopify operates commercially lucrative interactive platforms through which it can extract and monetize consumer data from transactions occurring *anywhere*, Shopify argues that it should be shielded from specific personal jurisdiction *everywhere* those transactions occur.

Shopify's argument is illogical. Shopify's deliberate act of processing third-party transactions that foreseeably occur in California—and through which Shopify extracts California consumer data that it subsequently uses for its own benefit—is aimed at California regardless of whether *other* transactions foreseeably occur elsewhere. Embracing Shopify's logic would have remarkable consequences. If a local company

located just on the California side of the California-Nevada border engaged in unlawful conduct by means of web services that it offered exclusively to businesses located within a ten-mile radius, victims of the company's Nevadan operations could presumably file suit in Nevada. But under Shopify's theory, if that same company knowingly aimed its illegal activities into *every* state, instead of just two, those same Nevadan victims (as well as victims based further afield) would have nowhere to bring suit but the company's home base, where they could invoke general jurisdiction. That result cannot be correct. A course of wrongdoing that reaches into multiple states should open the wrongdoer to jurisdiction in *more* fora, not fewer.

Accordingly, this Court in *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), has already rejected the theory that a defendant can defeat specific personal jurisdiction by pointing to the nationwide sweep of its challenged online conduct. *See id.* at 1231 (holding that "a website with national viewership and scope" could be "expressly aimed" at any state where it "appeal[ed] to, and profit[ed] from, an audience"). Shopify attempts to distinguish *Mavrix Photo* on the facts, arguing that certain circumstances supporting jurisdiction there

are absent here. *See* Shopify Br. 29–34. These superficial distinctions are unpersuasive in their own right, *see infra* at 17–19, but more importantly, they miss the forest for the trees. The most meaningful difference between *Mavrix Photo* and this case—the nature of the online activity at issue—makes the defendants' "express aiming" even clearer here. *Mavrix Photo* addressed a copyright claim based on a defendant's passive display of allegedly infringing content on a website that forum-state users (as well as users in every other state) could choose to access. 647 F.3d at 1222–23. This case, in contrast, involves Shopify's operation of an interactive online platform through which Shopify actively (although surreptitiously) entices forum-state users (as well as users in other states) to transmit sensitive data out of the forum state and directly to Shopify. ER 92–95; *see Mavrix Photo*, 647 F.3d at 1229 (listing a website's level of "interactivity" as a jurisdictionally relevant factor).

Shopify's unmediated, bidirectional contacts with forum-state consumers easily distinguish this case from the cases that Shopify cites, *see* Shopify Br. 30–31, in which an out-of-state defendant's publication of generally accessible material online was insufficient to support personal jurisdiction everywhere that content could be viewed. *See, e.g., Yeager v.*

*Airbus Grp. SE*, 2022 WL 1175236, at *2 (9th Cir. 2022) (holding that a press release published on a passive, nationally accessible website was not expressly aimed at California); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209–12 (9th Cir. 2020) (holding that the display of user-uploaded content on a foreign website was not expressly aimed at the United States). Shopify cites no precedential decision addressing claims, like Briskin's, that arise out of a defendant's *active* extraction of data from an in-forum transaction. And as recognized in a district court opinion that Shopify discusses at length, courts have held that personal jurisdiction is proper where a third-party wiretapper intercepts forum-based communications. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 838 & n.44 (N.D. Cal. 2021) (citing *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *4 (N.D. Cal. 2019) (in turn citing cases)), *discussed in* Shopify Br. 34–35.[3] Shopify attempts to distinguish its conduct from the act of employing a traditional surveillance device by emphasizing that it has not "place[d]

---

[3] *Graham* itself had no need to decide whether to agree with those other courts because the plaintiffs in *Graham*—unlike Briskin—had not alleged that the defendant "intercepted and used [consumer] data itself," so the plaintiffs had not adequately pleaded a claim of unlawful wiretapping. 533 F. Supp. 3d at 832; *see id.* at 838. Shopify's brief tars Briskin's wiretapping claim as "incredibl[e]," Shopify Br. 1, but does not argue that the claim is legally unsound.

a physical item in California." Shopify Br. 24 n.8; *see id.* at 21 (faulting the SAC for failing to specify "an actual, physical act in California"). But the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Shopify, of course, professes that it did not care or know ahead of time where any one of the transactions that it had deliberately contracted to process might end up taking place. *See* Shopify Br. 24. But Shopify does not explain why indifference should shield a defendant from jurisdiction for intended acts that in fact reach into the forum state. Instead, Shopify quotes selectively from this Court's opinion in *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082 (9th Cir. 2000), to contend that a plaintiff "must identify 'wrongful conduct individually targeting a known forum resident'" to satisfy specific jurisdiction's "express aiming" requirement. Shopify Br. 26 (quoting 223 F.3d at 1087). What *Bancroft* actually says, though, is that "'express aiming' *encompasses* wrongful conduct individually targeting a known forum resident." 223 F.3d at 1087 (emphasis added). In other words, such conduct can be sufficient to establish express aiming, but it is not

necessary. *See Mavrix Photo*, 647 F.3d at 1229 (identifying the issue of whether the plaintiff was "known to be a forum resident" as one "factor[]" capable of supporting jurisdiction). Indeed, *Mavrix Photo* itself involved no targeting of any specific known forum resident.[4]

**B.** Shopify attempts to minimize the conduct that *it* expressly aimed into California by focusing on *others'* California activities. Quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014), Shopify emphasizes that jurisdiction must be based on "the *defendant's contacts* with the forum State itself," not on the defendant's contacts with third parties who fortuitously happen to have a connection to the forum state. Shopify Br. 23 (emphasis added by Shopify). And it claims that its California contacts do not arise from activities that *it* has expressly aimed into the state, but from the "unilateral decisions" of third parties who opt to conduct business there. *Id.*; *see id.* at 32 n.13 (suggesting that Shopify "[s]imply sell[s] a product to someone who then … chooses to use it in California").

---

[4] Shopify mistakenly states that the plaintiff in *Mavrix Photo* was based in the forum state, California. *See* Shopify Br. 29. The plaintiff was in fact a Florida company with its principal place of business in Florida. *See Mavrix Photo*, 647 F.3d at 1221.

To begin with, *Walden* is inapposite. There, the Supreme Court held that Nevada could not take personal jurisdiction over a Georgia-based defendant on a claim that he had unlawfully seized funds from Nevada-based plaintiffs while they were in Georgia. 571 U.S. at 279–80. The Court emphasized that "no part of [the defendant's] course of conduct occurred in Nevada" and that the defendant "never … contacted anyone" in Nevada. *Id.* at 288–89. Here, in contrast, Shopify's interactive web platform actively solicited Briskin to submit his personal data *while he was in California*, and Shopify knowingly extracted that data *out of California* and processed it for its own commercial benefit. It is thus *Shopify's* decision to "'reach[] out beyond' [its] State and into another" that supports jurisdiction. *Id.* at 285 (quoting *Burger King*, 471 U.S. at 479). Unlike the plaintiffs in *Walden*, Briskin does not rely on *his own* relationship to California or on the "mere foreseeability" that an out-of-state tort could have incidental in-forum effects. Shopify Br. 25.

Shopify's misplaced reliance on *Walden* derives from Shopify's misconstruction of the SAC's allegations. Echoing the district court's characterization of Shopify's data-extraction efforts as mere "passive conduct," *id.* at 37 (quoting ER 12), Shopify suggests that its involvement

in California transactions was limited to "selling a … product" to third-party merchants who then independently conducted consumer transactions without Shopify's involvement, *id.* at 36 (quoting *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. 2021)). But Shopify did not just "happen[] to collect a California consumer's data … due entirely to the decisions" of others. *Id.* at 23. The SAC alleges that the *service* that Shopify sold to its merchants connected Shopify directly to end consumers at the point of sale. Specifically, Briskin has alleged that *Shopify* "handles the collection and validation of [a] consumer's payment information," that *Shopify* "display[s] payment forms to consumers" by "send[ing] executable javascript code to [their] computers or mobile devices," that *Shopify* then causes user data to be sent "directly to [its own] servers," and that *Shopify* "sends the user an order confirmation email" at the close of the transaction. ER 99–100, 103–04. Once *Shopify* has extracted consumer data through this interactive process, the SAC alleges that *Shopify* thereafter "compil[es] risk profiles for each consumer and/or transaction" and "shares the information that it[] collects on consumers with third-parties." ER 109. These allegations about *Shopify's* direct responsibility for processing and disseminating consumer data

must be taken as true and construed in the light most favorable to Briskin, *see Ochoa*, 287 F.3d at 1187, and they distinguish this case from ones in which "software providers" have "merely provided a tool for a website owner to record and analyze *its own* data." *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *8 (E.D. Cal. 2021) (emphasis added), *cited in* Shopify Br. 36–37.

Faced with the central role that its direct involvement in the bilateral flow of information into and out of California plays in Briskin's claims, Shopify focuses narrowly on the allegation that it sent "confirmation emails" to consumers and cites *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), for the proposition that the emails alone are insufficient to support jurisdiction. Shopify Br. 26–27. But *Boschetto*, which involved claims "sound[ing] primarily in *contract*," 539 F.3d at 1016, *supports* jurisdiction on Briskin's tort claims. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (noting that "[i]t is important to distinguish contract from tort actions" for purposes of personal jurisdiction). Decided against the background principle that "a contract" with a forum-state resident "alone does not automatically establish minimum contacts in the plaintiff's home forum," *Boschetto* asked

whether a defendant's use of a third-party online auction platform as "the conduit" for such a contract "affect[ed] the jurisdictional outcome." 539 F.3d at 1017–18. This Court held that it did not, at least in the context of a "one-time transaction" where there was no evidence that the defendant was "using the platform as a broader vehicle for commercial activity." *Id.* at 1019. Relevant here, though, the Court was careful to note that the interactive nature of the online platform *would* have held "jurisdictional significance" had the platform "belong[ed] to and [been] operated by the defendant" because the platform would have "allow[ed] the defendant to maintain some ongoing contact with the forum state (as well as every other state that [could] access the site)." *Id.* at 1018.

This case presents the circumstances that *Boschetto* suggests would support jurisdiction: a suit against the operator of an interactive online platform with an ongoing California business presence on claims arising out of the platform's operation in California.[5] Shopify minimizes the

---

[5] Shopify makes the irrelevant observation that consumers making purchases through Shopify's platforms do not interact with "Shopify Inc.'s Website." Shopify Br. 32 n.12. While Shopify's interactive platforms are embedded in the websites of third-party merchants, Shopify does not challenge the SAC's allegations that it is Shopify, not the merchants, that operates the platform that processes consumer transactions and extracts consumer data.

evidence that it does considerable business in California by explaining that California merchants make up what it sees as a relatively modest share of its customer base—8 percent of its *worldwide* merchant users. Shopify Br. 28–29. That argument, however, overlooks that it is Shopify's direct extraction of personal data during a California sales transaction and *Shopify's* choice to process and share that data for its own commercial benefit that chiefly support jurisdiction. Shopify's sustained business ties with California only confirm that Shopify's act of reaching into Briskin's forum-state transaction was not the sort of "random, isolated, or fortuitous" happenstance that is insufficient to establish jurisdiction. *Mavrix Photo*, 647 F.3d at 1229 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *cf. Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021) (holding that a company can be subject to specific personal jurisdiction on a product-liability claim when the company "serves a market for [the] product in the forum State").

*Mavrix Photo* clinches the point that the facts alleged here establish "express aiming." Again, *Mavrix Photo* held that California could take jurisdiction over an out-of-state defendant based on the defendant's

passive display of an out-of-state plaintiff's copyrighted material on a nationally accessible website capable of being viewed in California. 647 F.3d at 1221–22. As explained above, *supra* at 8, the basis for jurisdiction is even stronger here than in *Mavrix Photo* because the case arises out of a defendant's direct interaction with a forum-state plaintiff during an in-forum transaction. But even setting that point aside, Shopify's rationales for distinguishing *Mavrix Photo* are unpersuasive.

First, Shopify observes that the website at issue in *Mavrix Photo* featured content of interest in California. Shopify Br. at 30. But the website's "subject matter" was relevant only because it supported the inference that the website owner "anticipated, desired, and achieved a substantial California viewer base." *Mavrix Photo*, 647 F.3d at 1230; *see Keeton*, 465 U.S. at 781 (upholding personal jurisdiction over a national publication that "continuously and deliberately exploited the [forum-state] market," without indicating that the publication's subject matter was of unique interest in the forum state). The evidence here supports exactly the same inference. *See* Opening Br. 27–28 (detailing Shopify's extensive efforts to build a substantial California client base).

Second, Shopify emphasizes that, in *Mavrix Photo*, it was "the defendant's own *choice* to exploit the California market." Shopify Br. 30. The same is true here. Not only did Shopify contract with tens of thousands of California merchants and make active efforts to recruit new ones, *see* ER 95–96, but it utilized user data that identifiably derived from California for its own commercial gain, *see* Opening Br. 8–9 (detailing Shopify's consumer-profiling efforts). Contrary to Shopify's protestations, none of this "forum-specific conduct" is conceivably attributable to "third parties." Shopify Br. 30.

Third, noting that third-party advertisements hosted on the defendant's website in *Mavrix Photo* targeted California residents, Shopify attempts to contrast this case by pointing to the lack of "allegations that the Shopify platform or payment processing services were specific to California." Shopify Br. 33–34. But the significance of the targeted advertisements in *Mavrix Photo* is not that they demonstrated that the defendant's website was "specific to California." *See Mavrix Photo*, 647 F.3d at 1222 (noting that, "[l]ike any large media entity," the defendant "court[ed] a national audience, not restricted to California"). Rather, the advertisements were significant because they "indicated that

[the defendant] knew about the California user base which it then exploited 'for commercial gain.'" *AMA Multimedia*, 970 F.3d at 1211 (quoting *Mavrix Photo*, 647 F.3d at 1230). Just as the defendant's relationship to California-focused advertisers evidenced its express aim of profiting from a California audience in *Mavrix Photo*, Shopify's successful efforts to court California merchants—and even to attract customers on those merchants' behalf, *see* ER 33–36—show that it expressly aimed to direct its profitable data-extraction activities into a California market. *Cf. AMA Multimedia*, 970 F.3d at 1211 (stating that the plaintiff had not shown express aiming where there was no evidence that the defendant made specific efforts to "attract [in-forum] traffic").

**C.** Shopify argues that personal jurisdiction is inappropriate for the "independent reason" that Briskin's claims supposedly do not arise out of or relate to Shopify's California-directed activities. Shopify Br. 37. This argument repackages Shopify's "express aiming" arguments, and it fails for essentially the same reasons.

Reprising its *Walden* argument, Shopify first contends that Briskin's suit is not based on "any action taken by the Shopify Defendants relating to California" but instead on his own "unilateral decision" to

engage in a California-based transaction through a Shopify platform. *Id.* at 38. As explained *supra* at 12–14, however, this argument misrepresents the claimed basis for jurisdiction, which has always been *Shopify's* conduct in reaching into the forum state to extract data during a consumer transaction occurring there and in processing and disseminating that identifiably California-derived data for profit. Shopify's direct intervention in a forum-based transaction distinguishes this case from the cases Shopify cites. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1147 (9th Cir. 2017) (holding that personal jurisdiction was inappropriate where defendants' forum-state contacts were "merely incidental" to activities occurring in a different state); *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (holding that California could not take jurisdiction over a tort a defendant who never "enter[ed] California, contact[ed] any person in California, or otherwise reach[ed] out to California").

Next, Shopify again disputes the relevance of the evidence that it has made successful efforts to attract business from California merchants. *See* Shopify Br. 38–40. But Shopify's attempts to cultivate a California market for its online services reinforce that Shopify's

extraction of California consumer data was not a fortuitous byproduct of third-party choices, but rather an intended and desired consequence of its own business model. *Cf. Ford Motor Co.*, 141 S. Ct. at 1028 (holding specific jurisdiction to be appropriate where the defendant "had systematically served a market in [the forum states] for the very [products] that the plaintiffs allege[d] … injured them in those States"). So, even though Briskin's claims arise out of Shopify's direct involvement in his forum-based transaction, *see supra* at 12–14, Shopify's additional contacts with California are still relevant to the jurisdictional analysis.

Finally, citing *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023), Shopify contends that its California marketing efforts are unrelated to Briskin's claims. Shopify Br. 40. *Yamashita*, however, held that a product-liability claim against companies that produced and distributed an allegedly defective battery was not related to the companies' in-forum sale of *other* product types. 62 F.4th at 506–07 (noting that the types of batteries the defendants sold within the forum were "as different" from the allegedly defective battery "as sedans and 18-wheelers"). Here, in contrast, the online services that Shopify provides to more than 80,000 California merchants, *see* ER 96, are precisely the

services that enabled Shopify to extract data from Briskin's California transaction. *See Yamashita*, 62 F.4th at 506 ("[A] plaintiff's injury relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff.").

## II. Shopify's speculation as to the district court's rationale cannot justify the court's unreasoned denial of jurisdictional discovery.

The district court offered no rationale for implicitly denying Briskin's request for leave to take jurisdictional discovery in the event the court held that the SAC's allegations were insufficient to establish jurisdiction. And when a district court denies a motion without explanation, there is generally "an insufficient basis for determining whether the court properly exercised its discretion." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 365 (9th Cir. 1982). Shopify nonetheless invites this Court to engage in post-hoc speculation about what the district court's rationale for denying discovery might have been. This Court should decline to do so.

Shopify first imagines that the district court might have viewed the discovery request as inadequately presented because it appeared in a footnote in Briskin's opposition to Shopify's motions to dismiss. *See*

Shopify Br. 41–44. Yet Briskin also informed the district court of *exactly* what specific discovery requests he intended to serve on Shopify "[s]hould the Court determine a more satisfactory showing of facts [was] necessary." ER 21; *see* ER 59–71. Shopify does not explain what more it believes Briskin needed to do to preserve the discovery issue. His briefing and argument below set out his jurisdictional theories at length, and he could not predict whether or how the district court would find the SAC's allegations insufficient. Extended discussion of how the specified discovery could address the court's hypothetical future concerns would not have been practical. *Sonenberg v. Princess Cruise Lines, Ltd.*, 2015 WL 13915634, at *15 n.95 (C.D. Cal. 2015) (noting that "context" is important in deciding whether a footnote preserves an argument). At any rate, the district court did not hold that the discovery issue was insufficiently presented, and it is impossible to assess reasoning that the court never supplied. While Shopify maintains that this Court should deem Briskin's discovery request waived for purposes of appellate review irrespective of whether the district court exercised its discretion to deny the request as inadequately presented, Shopify Br. 44–45, Briskin gave the district court "a clear opportunity" to rule on discovery, and Shopify

cannot credibly contend that the issue is "raised for the first time on appeal," *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992).

Shopify also suggests that maybe the district court determined that the specific discovery Briskin sought would be irrelevant to correcting any jurisdictional inadequacies. Shopify Br. 45–47. Here too, Shopify advances a rationale the district court never gave. And here too, it is far from clear that the district court relied on Shopify's hypothesized rationale. The interrogatories and document requests Briskin would have served had he been permitted to do so would have allowed him to discover, among other things, how many people with "billing addresses AND/OR geolocations in California" had submitted payments through Shopify portals during the last several years, how much revenue Shopify derived from those payments, and what promotional efforts Shopify targeted at California. ER 63, 70–71. Access to such information could easily have enabled Briskin to gain a more comprehensive picture of how Shopify "appeal[ed] to, and profit[ed] from," the California market. *Mavrix Photo*, 647 F.3d at 1231.

Finally, Shopify appears to suggest—without squarely arguing—that Briskin is not entitled to discovery because of the time that elapsed between the time he filed his original complaint and the time he requested discovery. Shopify Br. 46 n.17. But soon after Shopify filed its first set of motions to dismiss, Briskin followed an appropriate course by responding with an amended complaint. When Shopify then filed a renewed set of motions to dismiss, Briskin promptly opposed the motions and sought the court's leave to proceed with jurisdictional discovery.

## III. Shopify does not credibly dispute that the SAC gave each defendant fair notice of the claims against it.

Shopify argues that this Court should affirm the district court's Rule 8(a) holding, Shopify Br. 47–53, but it does not dispute that remand is required either way if this Court reverses on personal jurisdiction. *See* Opening Br. 33 (explaining that the district court stated that it would have granted leave to amend to address any Rule 8(a) issues but for its jurisdictional ruling). Moreover, Shopify's Rule 8(a) arguments are unpersuasive. Despite acknowledging that the touchstone Rule 8(a) inquiry is whether a complaint gives a defendant fair notice of the claims against it, Shopify Br. 47, Shopify does not—and cannot—explain why the SAC fails to meet that requirement.

To begin, Shopify misconstrues the applicable standard of review. *See id.* at 18–19. It is true that this Court applies an abuse-of-discretion standard to a district court's decision that dismissal is the appropriate *consequence* for a Rule 8(a) violation. *See McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (upholding Rule 8(a) dismissal with prejudice as a valid exercise of discretion after emphasizing the district court's "especially careful approach to determining" whether this result was unduly "harsh"); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (explaining that a district court has discretion to choose between dismissal with prejudice and "other less drastic alternatives"). Here, however, the consequences of a Rule 8(a) violation are not at issue: The district court itself said that it would not have dismissed without leave to amend based on a Rule 8(a) violation alone. ER 13. Rather, the only Rule 8(a) question before this Court is whether the complaint violates Rule 8(a) at all; *that* is a legal issue subject to de novo review. *See Cook v. Brewer*, 637 F.3d 1002, 1004, 1006 (9th Cir. 2011) (reviewing de novo whether the plaintiff had "sufficiently satisfied, to survive a [Rule 12(b)(6)] motion to dismiss, Rule 8(a)'s pleading requirements"); *Doe v. Fed. Dist. Ct.*, 467 F. App'x 725, 727 (9th Cir. 2012) (reviewing de

novo district court's determination that a complaint "was insufficient to provide notice to the defendants").

Regardless, Shopify's Rule 8(a) arguments fail because Shopify cannot identify any way in which the SAC leaves the three Shopify entities uncertain about the nature of the unlawful data-extraction scheme that they are *each* accused of carrying out. Shopify accepts that a complaint is sufficiently detailed to satisfy Rule 8(a) if it provides the defendant "fair notice of what the claim[s] [are] and the grounds upon which [they] rest[]." Shopify Br. 47 (quoting *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011)). Shopify identifies no case holding that this notice requirement "imposes [a] general prohibition" on referring to defendants collectively, *id.* at 49, and it does not explain why the SAC's joint reference to three closely affiliated corporate defendants each accused of responsibility for a single, clearly identified course of conduct makes this case one of the rare "aggravated case[s]" in which a complaint's "true substance, if any, is well disguised." *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969) (second quoting *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965)).

Ignoring *Gillibeau* entirely, Shopify focuses on an earlier case from which *Gillibeau* drew some of its language and that, according to Shopify, speaks only to "*length*, not the failure to disaggregate allegations between defendants." Shopify Br. 49 (citing *Corcoran*, 347 F.2d 222). But *Gillibeau* addresses the circumstances to which Rule 8(a) dismissal is "usually confined," and it recognizes that a mere lack of "particularity" can "hardly be said to fall under the interdict of the [Rule 8(a)] criteria" and is better "tested by a properly prepared motion for a more definite statement." 417 F.2d at 431; *see also* Fed. R. Civ. P. 12(e) (placing onus on the party moving for "a more definite statement of a pleading" to identify what additional "details" are needed to enable the movant to "reasonably prepare a response"). Shopify has neither filed such a motion nor identified any difficulty it had in responding to the SAC on the merits.

Rather than explaining how the SAC failed to offer fair notice of Briskin's claims, Shopify points to a handful of nonprecedential cases holding that *other* complaints failed to satisfy Rule 8(a)'s notice requirement. Shopify Br. 48–50. But the district court and unpublished appellate opinions upon which Shopify relies serve only to underscore that the SAC is not the sort of complaint that falls afoul of Rule 8(a). For

example, in *Sandoval v. Barneburg*, 470 F. App'x 550 (9th Cir. 2012), this Court summarily affirmed dismissal of a pro se complaint charging thirty-one individual defendants jointly for a broad set of "unrelated claims" arising out of "unrelated transactions and occurrences." *Sandoval v. Barneburg*, 2010 WL 11531223, at *1 (N.D. Cal. 2010). In *Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183 (N.D. Cal. 2020), the district court held a pro se complaint insufficient where it made "[c]onclusory" allegations against an undifferentiated set of unrelated corporate entities performing entirely "separate roles (e.g., banks versus credit-card companies)," *id.* at *2. Shopify's other cited cases are in the same vein. *See Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015) (holding that a complaint violated Rule 8(a) for failing to connect its "60 separate claims to [its] hundreds of factual allegations"); *Harris v. Harris*, 2012 WL 1435680, at *8–9 (E.D. Cal. 2012) (holding that a complaint containing "nearly 50 pages of many repetitive, confusing allegations against 'all defendants'" violated Rule 8(a) where it did not direct "specific claims at specific defendants" but "simply named a laundry list of defendants" and "included a laundry list of allegations" that left the court "confused about many aspects of the complaint" even

after "a great amount of time [spent] reviewing and outlining" it); *In re iPhone Application Litig.*, 2011 WL 4403963, at \*4, 8 (N.D. Cal. 2011) (dismissing a complaint under Rule 8(a) where it made generalized allegations that eight unrelated corporate defendants "tracked and accessed [consumers'] personal information" through third-party mobile applications but failed to specify which applications were at issue or how the tracking occurred); *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960–61 & n.20 (S.D. Cal. 1996) (holding that a complaint failed to provide fair notice when it was drafted in a way that created confusion over which legal theory of patent infringement it asserted against each of five defendants); *see also Estate of Morris v. Bank of N.Y. Mellon*, 856 F. App'x 669, 671–72 (9th Cir. 2021) (offering a one-sentence rejection of a housing discrimination claim for providing insufficient detail about specific "acts of discrimination" without discussing Rule 8(a)).

In contrast to the cases Shopify cites, the SAC here raises six distinctly enumerated legal claims against each of three closely related corporate defendants. And it connects each claim to a concise set of factual allegations that offers a detailed description of a single, discretely defined course of business conduct. That each defendant filed a coherent

motion to dismiss each claim on the merits (and that no defendant moved for a more definite statement) reinforces that no defendant suffered confusion over what legal theories of liability Briskin was raising against it or what factual allegations supported his claims. *See Gen-Probe*, 926 F. Supp. at 961 n.20 (citing the "confusion … reflected in the parties' submissions on [a] motion to dismiss" as evidence of a Rule 8(a) violation). Even on appeal, Shopify continues to say nothing about where, exactly, its confusion lies—likely because it is not confused at all.

Also without merit is Shopify's suggestion that Rule 8(a) required the SAC to attribute each individual step in the overall data-extraction scheme to a specific defendant. *See* Shopify Br. 51–52. As Briskin has explained, each of the SAC's allegations against "Shopify" applies to each of the three defendants. Opening Br. 34–35. Shopify's contention that it would be "impossible" for each defendant to have committed every act attributed to Shopify, Shopify Br. 51, is both wrong and irrelevant. It is wrong because it is possible for three separate entities each to play contributing roles in, for example, transmitting an email or a tracking cookie across a computer network. It is irrelevant because a plaintiff may "permissibl[y]" charge multiple defendants with responsibility for a

single act at the pleading stage. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 n.10 (9th Cir. 2012) (en banc). The ability to do so is particularly important where, as here, information about the precise mechanics of how a small set of related corporate entities coordinated their activities to carry out a single scheme lies within those entities' possession.

Shopify frets about plaintiffs "lump[ing]" defendants together in a way that makes it "impossible for any of the [defendants] to contest its involvement at the pleading stage," Shopify Br. 51, but that concern is a red herring. Any one of the Shopify entities could have "contest[ed] its involvement" by filing an answer that denied any of the SAC's factual allegations about its conduct. Each defendant instead elected to file a motion to dismiss arguing that the allegations—if true—did not state a plausible legal claim. That the defendants chose to follow that course demonstrates their full comprehension of the SAC's factual allegations.

Finally, to the extent Shopify voices concern that collective pleading creates disincentives for attorneys to adequately investigate the factual basis for their claims before filing suit, Shopify Br. 50–51, speculation about hypothetical litigation misconduct in other cases has no bearing here. As the Federal Rules implicitly recognize by permitting a plaintiff

to plead in the alternative, *see* Fed. R. Civ. P. 8(d)(2)–(3), the pre-discovery investigation Rule 11 requires will not always provide a clear picture of the facts. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) (en banc) (explaining that what constitutes reasonable investigation "must be based," among other things, on "the difficulty of acquiring sufficient information" and on "which party has access to the relevant facts"). Shopify has not challenged the adequacy of Briskin's investigation here, and it would have no basis for doing so.

## CONCLUSION

This Court should reverse the district court's judgment.

Respectfully submitted,

Seth Safier
Matthew T. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94114
(415) 639-9090

Nicolas A. Sansone
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiff-Appellant*

May 2, 2023

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) and Ninth Circuit Rule 32-1(b) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, it contains 6,618 words.

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Nicolas A. Sansone
Nicolas A. Sansone
*Attorney for Plaintiff-Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Reply Brief for Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit on May 2, 2023, using the Appellate Electronic Filing system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Nicolas A. Sansone
Nicolas A. Sansone
*Attorney for Plaintiff-Appellant*