No. 22-15815

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

BRANDON BRISKIN,
on behalf of himself and those similarly situated,
*Plaintiff-Appellant*,

v.

SHOPIFY INC., *et al.*,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California, No. 4:21-cv-06269-PJH
Hon. Phyllis J. Hamilton, United States District Judge

## SUPPLEMENTAL BRIEF FOR PLAINTIFF-APPELLANT

Seth Safier
Matthew T. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94114
(415) 639-9090

Nicolas A. Sansone
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiff-Appellant*

June 25, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................ii

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................5

   I.   This Court's established framework for assessing specific
       personal jurisdiction applies to claims arising out of a
       defendant's online conduct. ............................................................5

   II.  A defendant that engages in the online exploitation of a
       forum-state market expressly aims its conduct at the forum
       irrespective of the scale of its operations in other states. ............. 19

   III. The common-law principles that governed personal jurisdiction
       at the time of the Fourteenth Amendment's adoption reinforce
       that the exercise of personal jurisdiction here comports with
       traditional notions of fairness. ......................................................28

CONCLUSION .....................................................................................39

CERTIFICATE OF COMPLIANCE ......................................................40

CERTIFICATE OF SERVICE ...............................................................41

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*AMA Multimedia, LLC v. Wanat,*
  970 F.3d 1201 (9th Cir. 2020) ............................................................. 25

*Ayla, LLC v. Alya Skin Pty. Ltd.,*
  11 F.4th 972 (9th Cir. 2021) .............................................................. 23

*BNSF Railway Co. v. Tyrrell,*
  581 U.S. 402 (2017) .......................................................................... 36

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) ......................................................... 12

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ............................................... 9, 13, 24, 26

*Burnham v. Superior Court,*
  495 U.S. 604 (1990) .................................................................. 29, 36

*CollegeSource, Inc. v. AcademyOne, Inc.,*
  653 F.3d 1066 (9th Cir. 2011) ......................................................... 12

*Cybersell, Inc. v. Cybersell, Inc.,*
  130 F.3d 414 (9th Cir. 1997) ........................................................... 28

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) .......................................................................... 36

*Davis v. Cranfield Aerospace Solutions, Ltd.,*
  71 F.4th 1154 (9th Cir. 2023) ............................................................. 8

*Doe v. WebGroup Czech Republic, a.s.,*
  93 F.4th 442 (9th Cir. 2024) ............................................................. 25

*Ford Motor Co. v. Montana Eighth Judicial District Court,*
  592 U.S. 351 (2021) ....................................................... 20, 21, 23, 37

*Hanson v. Denckla,*
    357 U.S. 235 (1958) ............................................................ 16

*Herbal Brands, Inc. v. Photoplaza, Inc.,*
    72 F.4th 1085 (9th Cir. 2023) ...................................... *passim*

*Holland America Line Inc. v. Wärtsilä North America, Inc.,*
    485 F.3d 450 (9th Cir. 2007) ............................................. 17

*Honda Motor Co., Ltd. v. Oberg,*
    512 U.S. 415 (1994) ............................................................ 34

*Impossible Foods Inc. v. Impossible X LLC,*
    80 F.4th 1079 (9th Cir. 2023) ............................................. 8

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ...................................................... *passim*

*Keeton v. Hustler Magazine, Inc.,*
    465 U.S. 770 (1984) ...................................................... *passim*

*Keeton v. Hustler Magazine, Inc.,*
    682 F.2d 33 (1st Cir. 1982) ............................................... 21

*Lafeyette Insurance Co. v. French,*
    59 U.S. (18 How.) 404 (1856) ........................................... 30

*Mallory v. Norfolk Southern Railway Co.,*
    600 U.S. 122 (2023) ...................................................... *passim*

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
    647 F.3d 1218 (9th Cir. 2011) ...................................... *passim*

*McGee v. International Life Insurance Co.,*
    355 U.S. 220 (1957) ............................................................ 13

*Pennoyer v. Neff,*
    95 U.S. (5 Otto) 714 (1878) ............................................... 33

*Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.,*
243 U.S. 93 (1917) ..................................................................... 38

*Philadelphia & Reading Railway Co. v. McKibbin,*
243 U.S. 264 (1917) ................................................................... 31

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004) ........................................................ 7

*Tauza v. Susquehanna Coal Co.,*
115 N.E. 915 (N.Y. 1917) ............................................................ 31

*Walden v. Fiore,*
571 U.S. 277 (2014) ................................................................... 17

*Will Co., Ltd. v. Lee,*
47 F.4th 917 (9th Cir. 2022) ........................................................ 27

*Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme,*
433 F.3d 1199 (9th Cir. 2006) ................................................ 22, 24

**Statutes**

Cal. Corp. Code § 2105 ............................................................... 30

**Other Authorities**

*Business Search*, California Secretary of State ..................................... 30

Mary Twitchell, *The Myth of General Jurisdiction*,
101 Harv. L. Rev. 610 (1988) ........................................................ 30

Peter K. Yu, *A Hater's Guide to Geoblocking*,
25 B.U. J. Sci. & Tech. L. 503 (2019) .............................................. 16

Ralph U. Whitten, *The Constitutional Limitations on State-Court Jurisdiction: A Historical-Interpretative Reexamination of the Full Faith and Credit and Due Process Clauses (Part Two)*,
14 Creighton L. Rev. 735 (1981) .................................................... 32

Stephen E. Sachs, Pennoyer *Was Right*,
   95 Texas L. Rev. 1249 (2017) ............................................... 32

Stephen E. Sachs, *The Unlimited Jurisdiction of the Federal Courts*,
   106 Va. L. Rev. 1703 (2020) ......................................... 33, 34

# INTRODUCTION

This case arises out of a retail purchase that Plaintiff-Appellant Brandon Briskin made through an online payment platform operated by Defendants-Appellees Shopify Inc., Shopify (USA) Inc., and Shopify Payments (USA) Inc. (collectively, Shopify). Mr. Briskin, a California citizen, alleges that Shopify violated California law when it surreptitiously reached into his California-based transaction with a California merchant, transmitted software onto his personal device in California to track and record his activities across the internet, and thereafter extracted his valuable personal data out of California and compiled it into an individualized consumer profile that Shopify used for commercial profit.

This Court granted en banc review to decide whether a district court in California has specific personal jurisdiction over Shopify on claims arising out of this alleged conduct. The district court does. Shopify's California-directed conduct arises out of its deliberate choice to exploit the California market by tracking and profiling California internet users. Shopify is in the data business, and it knows precisely where each of the consumers it tracks and monitors is located, and where the data it extracts has originated. Shopify could have chosen not to

exploit the California market if it did not want to be subject to suit in California on claims arising from its data-extraction activities. Having made the choice to engage in a profitable course of California-directed business conduct, however, Shopify can be required to appear in court in the state to answer claims that this course of conduct violates the law.

On May 23, 2024, this Court ordered supplemental briefing on three issues: (1) what standards govern the analysis of personal jurisdiction in cases involving online conduct, (2) whether this Court should "revisit [its] prior holdings that a defendant's aiming of its internet-related conduct at a jurisdiction must exceed its aiming at other jurisdictions" to establish personal jurisdiction, and (3) whether and how the Fourteenth Amendment's original meaning should inform the assessment of personal jurisdiction. Mr. Briskin submits this brief pursuant to the Court's order.

On the first issue, the Court need not develop an internet-specific standard for assessing specific personal jurisdiction. Under well-established precedent, a state may take specific personal jurisdiction over a defendant on claims arising out of or related to activities that the defendant deliberately and systematically extends into the forum state, as long as the exercise of jurisdiction is otherwise reasonable. This

familiar standard advances a state's sovereign interest in requiring a defendant to answer for forum-directed conduct (whether physical or virtual) that causes injury within the state's borders, while at the same time safeguarding the rights of a defendant whose forum-state contacts are unintended, incidental, or insufficient to reasonably support jurisdiction. Applying this standard here yields a clear result: Because Shopify knowingly and repeatedly uses its online platform to reach into California to conduct transactions with—and to extract commercially valuable data from—in-state shoppers, it has purposefully exploited the California market and is subject to personal jurisdiction in the state for claims based on that course of California-directed business conduct.

On the second issue, decisions of the Supreme Court and this Court correctly reject the contention that a defendant purposefully directs its activities into the forum state only if it prioritizes that forum over others. The fundamental inquiry for purposes of specific personal jurisdiction, after all, is whether the defendant has established sufficient "minimum contacts" with the forum such that it is fair to require the defendant to answer in the forum state's courts for its forum-directed activities. Where, as here, a defendant deliberately and systematically forges online

connections with shoppers in the forum to exploit an in-state market, requiring the defendant to answer in the forum state will generally be fair, regardless of whether the defendant also exploits commercial opportunities in other states. To the extent that decisions of this Court can be read to contradict that principle, any such reading should be disapproved.

On the third issue, this Court can resolve the jurisdictional issue in this case by applying relevant precedents from the Supreme Court and this Court. To the extent that the original meaning of the Fourteenth Amendment's Due Process Clause can guide this Court in applying those precedents, it confirms that California's exercise of personal jurisdiction here comports with the Constitution. When the Fourteenth Amendment was adopted, a state could typically take personal jurisdiction over any defendant present within its borders on any claim, whether or not the claim related to the defendant's forum-state activities. For these purposes, a corporation was deemed to be physically present in a state when it had an in-state agent who could be properly served with process, and a corporation could be required to designate such an agent when it engaged in regular in-state business. As the Supreme Court has recently confirmed, the Fourteenth Amendment did nothing to change these

jurisdictional principles. The fact that the Shopify defendants' extensive California operations may well have been sufficient to permit California to lawfully subject them to *general* jurisdiction at the time the Fourteenth Amendment was adopted further confirms the fairness of subjecting Shopify to *specific* jurisdiction in California on Mr. Briskin's forum-focused claims today. Indeed, Shopify (USA) Inc. has registered an agent for service of process in California pursuant to a state statute and was served with this suit through that agent. It thus could constitutionally have been subject to suit in California on Mr. Briskin's claims at the time of the Fourteenth Amendment's ratification. Moreover, as the Supreme Court recently confirmed, service on a duly registered corporate agent remains an independently sufficient basis for jurisdiction today.

## ARGUMENT

**I.    This Court's established framework for assessing specific personal jurisdiction applies to claims arising out of a defendant's online conduct.**

The Supreme Court's seminal opinion in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), sets out foundational principles for assessing whether a state has the power to exercise specific personal jurisdiction over a nonresident, nonconsenting defendant on a given legal

claim. In *International Shoe*, the Court abandoned the "[h]istorical[]" rule that a defendant's "presence within [a court's] territorial jurisdiction … was prerequisite to [the court's] rendition of a judgment personally binding him." *Id.* at 316. Instead, the Court explained, "due process requires only that in order to subject a defendant to a judgment," the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Court elaborated that jurisdiction "has never been doubted when the [in-forum] activities of the [defendant] … have not only been continuous and systematic, but also give rise to the liabilities sued on." *Id.* at 317. After all, "to the extent that a [defendant] exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state" and so must fulfill the "obligations [that] arise out of or are connected with the activities within the state." *Id.* at 319.

This Court has distilled these principles into a three-prong test under which specific personal jurisdiction is appropriate if:

> (1) The non-resident defendant … *purposefully direct[s] his activities* or consummate[s] some transaction with the forum

or resident thereof; *or* perform[s] some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim … [is] one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction … comport[s] with fair play and substantial justice, i.e. it … [is] reasonable.

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff "bears the burden of satisfying the first two prongs of the test," but it is the defendant's burden to "'present a compelling case' that the exercise of jurisdiction would not be reasonable" under the third prong. *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

While "the emergence of the internet presents new fact patterns, it does not require a wholesale departure from [the Court's] approach to personal jurisdiction before the internet age." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1093 (9th Cir. 2023). Assessment of the second prong of the framework—whether a given claim arises out of a particular set of forum-state contacts—is not influenced by the virtual or physical nature of those contacts. And to the extent that the online nature of a defendant's forum-state contacts should inform analysis of the third

prong—reasonableness—the defendant in a given case can draw on that case's circumstances to make any appropriate case-specific arguments.[1]

The dispute in this case focuses on the first prong, "purposeful availment" or "purposeful direction."[2] Although the parties agree that this prong applies in the online context, Shopify asserts that operators of online platforms or providers of online services who profit by making their offerings available without territorial restriction have not purposely directed their activities into any one state because they "*d[o] not care*" where a given transaction takes place. Response Br. 24. The proposition that nationally accessible online platforms are purposely directed

---

[1] Because Shopify has never attempted to carry its burden of showing that it would be unreasonable for California to take jurisdiction over it on the claims raised here, this case would be a poor vehicle for this Court to announce guiding principles on reasonableness.

[2] Purposeful availment and purposeful direction are somewhat distinct ideas, but there is no "rigid dividing line" between them. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). The first prong is often simply referred to as "purposeful availment," and it may be satisfied by purposeful availment, purposeful direction, or a combination. *Id.* Ultimately, "the purposeful direction and availment tests simply frame [the] inquiry into the defendant's 'purposefulness' vis-à-vis the forum state, ensuring that defendants are not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1089 (9th Cir. 2023) (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)).

*nowhere* because they are purposely directed *everywhere*, however, risks shielding online tortfeasors from accountability in jurisdictions where their intentional operations cause foreseeable harm. Application of established principles avoids this nonsensical result, while protecting those defendants whose online forum-state connections are truly unintended.

**A.** The presence or absence of purposeful availment generally turns on whether the defendant "has availed [itself] of the privilege of conducting business" in the forum state by "'deliberately' … engag[ing] in significant activities" there. *Burger King*, 471 U.S. at 475–76 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)). Thus, in *Keeton*, the Supreme Court held that New Hampshire could take jurisdiction over a nonresident defendant—a publication with a nationwide circulation—on a nonresident plaintiff's libel claims because the defendant's "regular monthly sales of thousands of magazines" into the forum could not "by any stretch of the imagination be characterized as random, isolated, or fortuitous." 465 U.S. at 774. The Court did not suggest that the defendant directed its sales to New Hampshire more than to other states, and the Court did not suggest that the tangible nature of the defendant's product influenced the result. Rather, the Court based its holding on the fact that

the defendant "chose to enter the New Hampshire market," *id.* at 779, and had "continuously and deliberately exploited" that market, *id.* at 781.

In *Herbal Brands*, this Court applied these same principles in the context of a defendant's online operations. There, an Arizona retailer called Herbal Brands filed suit in Arizona against New York companies that allegedly offered Herbal Brands' products for unauthorized sale through an online storefront. 72 F.4th at 1088. Although Herbal Brands was "unable to allege the exact number of sales made to Arizona customers," it alleged that the defendants made at least some "unknown number of [online] sales to Arizona residents" during the defendants' "regular course of business" and that the defendants "had taken no affirmative steps to prevent customers in Arizona from purchasing [the unauthorized] products." *Id.* at 1089. This Court held that, under these circumstances, the defendants had "'expressly aimed' [their] conduct at th[e] forum," thus establishing purposeful availment. *Id.* at 1093.

Critically, the Court's analysis in *Herbal Brands* turned on the longstanding jurisdictional standards described above. Starting with *International Shoe*'s recognition that "[t]he personal jurisdiction inquiry rests on the concept of 'fair play and substantial justice,'" 72 F.4th at

1093 (quoting *Int'l Shoe*, 326 U.S. at 316), the Court observed that "[i]f a defendant chooses to conduct 'a part of its general business' in a particular forum, it is fair to subject that defendant to personal jurisdiction in that forum," *id.* (quoting *Keeton*, 465 U.S. at 780). Applying this principle, the Court held that the defendants' "sales of physical products into [the] forum via an interactive website" were expressly aimed at the forum state because the sales "occur[red] as part of the defendant[s'] regular course of business instead of being 'random, isolated, or fortuitous,'" and because the defendants "exercise[d] some level of control" over the introduction of their products into the forum state. *Id.* at 1094 (quoting *Keeton*, 465 U.S. at 774); *see id.* at 1094–95 (noting that the defendants "reached the relevant forum by choosing to operate on a universally accessible website that accept[ed] orders from residents of all fifty states").

The opinion in *Herbal Brands* eschews any requirement that the defendants must have "targeted" their operations specifically at the forum, *id.* at 1094, or done a certain percentage of their total business in the forum state, *id.* at 1095. Rather, this Court recognized that the touchstone inquiry for purposeful-availment purposes is whether a defendant's in-state activity represents "a truly isolated" fortuity or is

part of "a genuine attempt to serve the market." *Id.*; *see Keeton*, 465 U.S. at 774 (comparing "random, isolated, or fortuitous" forum-state contacts, which cannot establish purposeful availment, to "regular" forum-directed activity, which can); *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008) (observing that an individual's "one-time" use of a third-party web platform to sell a product to a forum-based buyer was insufficient to subject the seller to personal jurisdiction in the forum under the case's particular circumstances, but that jurisdiction may have been proper if the platform had been "a means for establishing regular business").

**B.** The same principles that drove the decision in *Herbal Brands*— where a defendant's online contacts with the forum state resulted in the shipment of a physical product into the forum state—apply where, as here, the challenged portion of the "general business" that a defendant extends into the forum state is purely virtual. *Herbal Brands*, 72 F.4th at 1093 (quoting *Keeton*, 465 U.S. at 780). The Court's holding in *Herbal Brands* plainly did not rest on the fact of physical shipments into the forum. *Cf. CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1070 (9th Cir. 2011) (holding that California had specific personal jurisdiction

over a nonresident defendant on claims that the defendant "misappropriated material" from the website of a California plaintiff and posted that material online for commercial purposes). Indeed, the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction," *Burger King*, 471 U.S. at 476, and has instead embraced a jurisdictional approach that accounts for the "increasing nationalization of commerce" and "the amount of business conducted … across state lines," *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). For example, in *Burger King*, the Supreme Court held that Florida could take jurisdiction over a Michigan-based franchisee who had "never even visited" Florida—and to whom essentially "no physical ties to Florida [could] be attributed"—because he had "entered into a carefully structured 20-year relationship" with the Florida-based parent corporation, and that relationship "envisioned continuing and wide-reaching contacts" between franchisee and parent. 471 U.S. at 479–80.

Accordingly, where a defendant extends a regular course of purely online operations into the forum state with the intent of exploiting an in-state market, a straightforward application of longstanding jurisdictional principles establishes purposeful availment. To be sure, "[n]ot all

material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Mavrix Photo*, 647 F.3d at 1231. For example, "post[ing] an allegedly actionable comment or photo to a website accessible in all fifty states," without more, does not necessarily reflect an attempt to "exploit a national market." *Id.* But where a defendant has directed a portion of its "regular course of business" into the forum and has exercised "some level of control" over whether to do so, "it is fair to subject that defendant to personal jurisdiction in that forum." *Herbal Brands*, 72 F.4th at 1093–94. Under those circumstances, after all, the forum state maintains a vital "interest in redressing injuries that occur within the State" as a result of the online activities that the defendant aims at the in-state market. *Keeton*, 465 U.S. at 777.

**C.** Application of these traditional principles establishes that there is purposeful availment in this case. Despite Shopify's contention that it "*d*[*oes*] *not care*" where any given transaction takes place, Response Br. 24, it surely cares about maintaining and profiting from the course of business that it knowingly and intentionally extends into California.

Shopify operates online platforms through which it processes transactions with "thousands, if not millions," of shoppers that it knows to be located in California. ER 98. Through its platforms, Shopify links California shoppers electronically to its own servers, extracts the shoppers' commercially valuable personal and financial data, and transmits tracking software into California and onto the shoppers' devices there to collect still more data on an ongoing basis. *See* ER 103–05. Shopify then monetizes the data that it draws out of California by compiling it into profiles of individual Californians that it then disseminates or uses for commercial gain. ER 107–09. Shopify has full "control" over its decision to agree to process transactions in California "as part of [its] regular course of business," *Herbal Brands*, 72 F.4th at 1094, and over its decision to use those transactions as an opportunity to extract, compile, and sell California consumers' data. Shopify has made these decisions so as to derive a direct commercial benefit from the bilateral electronic links that it regularly forges with California shoppers, and thereby to "continuously and deliberately exploit[] the [California] market." *Keeton*, 465 U.S. at 781. Because California law creates "obligations [that] arise out of or are connected with" Shopify's profitable online relationships

with California shoppers, "requir[ing] [Shopify] to respond to a suit brought to enforce" those obligations in California can "hardly be said to be undue." *Int'l Shoe*, 326 U.S. at 319.

Recognizing personal jurisdiction in these circumstances also properly focuses on Shopify's own choices; it does not permit "[t]he unilateral activity" of third parties to "satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A defendant like Shopify could choose to structure its operations such that it extracts, compiles, and monetizes data from transactions occurring in New York but not in California. *See* Peter K. Yu, *A Hater's Guide to Geoblocking*, 25 B.U. J. Sci. & Tech. L. 503, 504 (2019) (explaining that technology called "geoblocking" enables website operators to "restrict[] access to online content based on the user's geographical location"); *see also* ER 106 (alleging that the data Shopify extracts includes geolocation data). If a defendant were to make that choice, it would not be subject to personal jurisdiction in California just because it happened to collect the data of a California resident who engaged in an online transaction while

visiting New York.[3] *Cf. Walden v. Fiore*, 571 U.S. 277, 289 (2014) (holding that a Georgia police officer who allegedly seized property unlawfully from Nevada residents while they were present in Georgia was not subject to specific personal jurisdiction in Nevada simply because he knew of the plaintiffs' Nevada connections). Here, though, Shopify's contacts with California shoppers are the direct, intended result of its choice to carry on its profitable data-extraction activities within the state.

**D.** To the extent that this Court has "larger concerns" about any potential "effects on e-commerce" that could follow from using the established framework to analyze personal jurisdiction in the online context, it is important to bear in mind that, even where purposeful availment is met, the existing framework requires that "the exercise of jurisdiction always 'must be reasonable.'" *Herbal Brands*, 72 F.4th at 1095–96

---

[3] Similarly, if Shopify sold a software product that enabled third-party merchants to track consumers (without any further involvement by Shopify), Shopify would not be subject to specific personal jurisdiction on the claims of a consumer in California merely because a merchant bought Shopify's software and foreseeably chose to use it there. *See Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (holding that "[t]he placement of a product into the stream of commerce" does not satisfy purposeful availment, even if the defendant is "aware[] that the stream of commerce may or will sweep the product into the forum state").

(quoting *Schwarzenegger*, 374 F.3d at 802). A court thus will not lack the tools needed to weigh "the limited nature of [the defendant's] purposeful interjection into [the forum state's] affairs or the excessive burden associated with defending [itself] in the forum." *Id.* at 1097. As *Herbal Brands* recognized, however, such case-specific considerations are "better addressed under the reasonableness prong" than by taking an unduly restrictive approach to the concept of purposeful availment under the first prong. *Id.*

This case illustrates why. The defendants here contract with more than 80,000 California merchants to provide payment processing services and are alleged to profit directly and knowingly off the systematic extraction of data from thousands, if not millions, of online shoppers in California in violation of California law. ER 95–98. Under Supreme Court and Ninth Circuit precedent, Shopify's exploitation of the in-state market suffices to establish the first prong—purposeful availment—of the personal jurisdiction analysis. Meanwhile, on the third prong—reasonableness—Shopify's extensive in-state operations, which also include fulfillment centers and physical stores and offices in California, readily distinguish it from a hypothetical "Maine resident [who] ran a

small business selling New England-themed keychains and made a [single online] sale to an [in-forum] resident," *Herbal Brands*, 72 F.4th at 1097, and over whom personal jurisdiction would be a closer call.

In short, applying this Court's long-established test to the facts of this case yields the conclusion that California's exercise of specific personal jurisdiction over Shopify on Mr. Briskin's claims comports with the principles of fairness and federalism that have historically guided the analysis of personal jurisdiction.

## II. A defendant that engages in the online exploitation of a forum-state market expressly aims its conduct at the forum irrespective of the scale of its operations in other states.

As explained in Part I, the proper focus when assessing purposeful availment is the nature and scope of the defendant's forum-state contacts. Where those contacts are "continuous[] and deliberate[]," this prong is satisfied, and "[t]here is no unfairness" in subjecting the defendant to suit in the forum state on claims related to its forum contacts. *Keeton*, 465 U.S. at 781. A defendant may, of course, have continuous, deliberate contacts with multiple states. Under such circumstances, though, both precedent and common sense establish that

the defendant has purposefully directed its relevant conduct at each of those states.

**A.** This Court's request for supplemental briefing asks whether "a defendant's aiming of its internet-related conduct at a jurisdiction must exceed its aiming at other jurisdictions" for personal jurisdiction to be proper. May 23 Order (Dkt. No. 61). There is no basis for such a requirement.

In cases arising outside the internet context, the Supreme Court has regularly held that a state may take personal jurisdiction over a defendant without having first assessed whether the defendant's forum contacts exceed the defendant's contacts with other states. In *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), for example, the Court unanimously held that Montana and Minnesota could take jurisdiction over a "global auto company," *id.* at 355, that "actively [sought] to serve the market for automobiles and related products" in the forum states, *id.* at 361. The Court did not ask whether Montana and Minnesota were the defendant's principal markets, and it did not suggest that the automaker targeted those states more than other states. Rather, applying the principles described in Part I, the Court held that

purposeful availment was satisfied because the defendant "serve[d] a market for [its] product in the forum State[s]." *Id.* at 363.

Likewise, in *Keeton*, the Court held that New Hampshire had personal jurisdiction in a libel case brought against a nonresident defendant that produced "a national publication aimed at a nationwide audience." 465 U.S. at 781. Although "only a small portion" of the defendant's sales took place in New Hampshire, *id.* at 775, the Supreme Court unanimously held that the defendant was subject to personal jurisdiction on the plaintiff's claim due to its "regular circulation of magazines in the forum State," *id.* at 773; *accord id.* at 781 (Brennan, J., concurring in the judgment); *see also Keeton v. Hustler Magazine, Inc.*, 682 F.2d 33, 33 (1st Cir. 1982) (observing that the in-state circulation of the defendant's publication "amount[ed] to less than one percent of [the publication's] total circulation in the United States"). Moreover, the Court reached this result even though the plaintiff's New Hampshire lawsuit sought damages based on the alleged libel's publication in all fifty states, and even though the plaintiff "suffered [only] a small proportion of her total claimed injury within the [forum] State." *Keeton*, 465 U.S. at 773. What was relevant for personal jurisdiction was not the *comparative* scope of

the defendant's in-state activities, but the fact that those in-state activities were "continuous[] and deliberate[]." *Id.* at 781; *see Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc) ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.").

This Court's decision in *Herbal Brands* teaches the same lesson. In that case, Arizona could take personal jurisdiction over retailers that sold their goods online into all fifty states, including the forum state. This Court explained that, "[i]f a defendant chooses to conduct 'a part of its general business' in a particular forum, it is fair to subject that defendant to personal jurisdiction in that forum." *Herbal Brands*, 72 F.4th at 1093 (quoting *Keeton*, 465 U.S. at 780). It did not matter how many sales the defendants had made in the forum or what "percentage of [the] defendant[s'] total sales" took place there. *Id.* at 1095. What mattered was that the sales that did occur in the forum state "occur[red] as part of the defendant[s'] regular course of business" and were subject to "some level of control" by the defendants. *Id.* at 1094. Because these conditions were satisfied, it was "fair to subject th[e] defendant[s] to personal

jurisdiction" on claims arising out of their exploitation of the forum-state market, irrespective of the fact that the defendants had chosen to exploit the markets in other states as well. *Id.* at 1093; *see Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981 (9th Cir. 2021) (observing that "there is no 'small percentage of sales' exception to … purposeful direction principles" and that a defendant's "sales to the forum are no less substantial" for purposes of specific personal jurisdiction "simply because the [defendant] sold more products elsewhere").

These decisions follow sensibly from the "two sets of values" that animate the specific personal jurisdiction inquiry: "treating defendants fairly and protecting 'interstate federalism.'" *Ford*, 592 U.S. at 360 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). When a defendant "exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state" and so must comply with the "obligations [that] arise out of or are connected with [its] activities within the state." *Int'l Shoe*, 326 U.S. at 319. Thus here, if Shopify seeks to profit from its online operations in California, "[t]here is no unfairness in calling it to answer" in California for those operations, regardless of how many other markets it attempts

to exploit. *Keeton*, 465 U.S. at 781. At the same time, California's "significant interest in redressing injuries that actually occur within the State" as a result of Shopify's online operations there is not diminished by the fact that other states may hold similar interests. *Id.* at 776. Indeed, where defendants "'purposefully derive benefit' from their interstate activities, it may well be *unfair* to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S at 473–74 (emphasis added; citation omitted).

**B.** To the extent that certain of this Court's prior cases might be read to suggest that purposeful availment cannot be satisfied in the internet context unless a defendant's forum-directed online activities exceed the scope of the online activities that the defendant directs into other states, this Court should disapprove any such suggestion and make clear that no such forum-prioritization requirement exists. *See Yahoo!*, 433 F.3d at 1207 (taking an "opportunity to clarify [Circuit] law and to state that the 'brunt' of the harm" inflicted by the defendant "need not be

suffered in the forum state" for personal jurisdiction to exist there). As explained above, *Keeton*, *Herbal Brands*, and other precedents expressly reject such a requirement, which has no basis in due process principles.

In this regard, the Court's order requesting supplemental briefing asked whether the decisions in *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442 (9th Cir. 2024), and *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), should be revisited. In assessing whether purposeful availment was established where a defendant had published allegedly improper content on a generally accessible website, these cases considered factors such as whether the website had "a forum-specific focus," *AMA Multimedia*, 970 F.3d at 1210, and whether the operator of the website had adopted "measures that *differentially* favored the [forum] market," *Doe*, 93 F.4th at 453. Insofar as these cases require some degree of forum prioritization, they are wrong and should be overruled. To the extent, however, that these cases stand only for the more limited proposition that forum-specific measures can be "good evidence" of a defendant's efforts to exploit a forum market, they are consistent with traditional due process principles. *Id.* (quoting *Will Co., Ltd. v. Lee*, 47 F.4th 917, 925 (9th Cir. 2022)). Ultimately, "the constitutional touchstone

remains whether the defendant purposefully established 'minimum contacts' in the forum State," not whether those minimum contacts outweigh the defendant's contacts with other states. *Burger King*, 471 U.S. at 474 (quoting *Int'l Shoe*, 326 U.S. at 316).

*Mavrix Photo*, on which both *AMA Multimedia* and *Doe* heavily rely, illustrates the proper analysis. In *Mavrix Photo*, this Court held that California could take specific personal jurisdiction over a nonresident defendant on claims that it violated a nonresident plaintiff's copyrights by posting infringing photographs on its website. 647 F.3d at 1221–23. The website "court[ed] a national audience, not restricted to California," but it had "some specific ties to California," such as hosting "third-party advertisements for jobs, hotels, and vacations in California" and featuring "a link to the website of a third-party vendor that [sold] tickets to nationwide events," including events in California. *Id.* at 1222. In holding that purposeful availment was satisfied, the Court in *Mavrix Photo* did not hold that the defendant had targeted its website at a California audience more than it targeted any other state. Rather, the Court explained that the defendant "ma[de] money by selling advertising space on its website to third-party advertisers" and that because some of

the advertising was "directed to Californians," the defendant clearly "kn[ew]—either actually or constructively—about its California user base, and … it exploit[ed] that base for commercial gain." *Id.* at 1230.

At bottom, the analysis in *Mavrix Photo* hinged on the fact that the defendant "anticipated, desired, and achieved a substantial California viewer base" and that this viewer base formed a meaningful "component of [the defendant's] business model and its profitability." *Id.*; *see also, e.g.*, *Will Co.*, 47 F.4th at 924 (finding purposeful availment based on evidence that a defendant that was alleged to have posted a copyrighted image to its website "profited from viewers in the [forum] market"). And far from holding that the defendant had prioritized the forum state or differentiated it from other states, *Mavrix Photo* held that the defendant—like the defendant in *Keeton*—had "cultivated [a] nationwide audience[] for commercial gain" and so could not "characterize the consumption of its products in *any* state as 'random,' 'fortuitous,' or 'attenuated.'" 647 F.3d at 1230 (emphasis added; quoting *Burger King*, 471 U.S. at 486).

Certainly, then, the forum-specific features of a website may be relevant to the jurisdictional analysis. In some cases, for example, it may be unclear whether "any part of [the defendant's] business (let alone a

continuous part of its business) [is] sought or achieved" in the forum state through its website. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). In those cases (unlike in *Mavrix Photo* and unlike here), the defendant's failure to take any action to attract or exploit internet users in a particular forum may supply evidence that the defendant does not "appeal[] to, and profit[] from, an audience" there. *Mavrix Photo*, 647 F.3d at 1231. As explained in Part I, however, the underlying inquiry remains whether the defendant has deliberately exploited an in-state market. Where the defendant has done so through its online business, its forum-directed market operations need not exceed its operations in other states for purposeful availment to be satisfied.

### III. The common-law principles that governed personal jurisdiction at the time of the Fourteenth Amendment's adoption reinforce that the exercise of personal jurisdiction here comports with traditional notions of fairness.

As explained above, the precedents that have applied *International Shoe* to the contemporary realities of cross-border commerce strongly support California's exercise of specific personal jurisdiction over Shopify here. But while *International Shoe* formalized a distinction between specific and general jurisdiction and thus originated modern personal jurisdiction doctrine, it did not "discard[] every traditional method for

securing personal jurisdiction that came before." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 141 (2023) (plurality opinion). If this Court wishes to consider the jurisdictional principles that governed at the time of the Fourteenth Amendment's adoption and that have not been displaced by the modern regime, those principles confirm that California's exercise of personal jurisdiction here comports with traditional notions of fairness.

**A.** At the time the Fourteenth Amendment was adopted, a state court's power to take personal jurisdiction over a given defendant was constrained only by the state's territorial limits. *See id.* at 128–29. Then, as now, service on a defendant located within a state's borders was understood to establish personal jurisdiction, such that a judgment entered by a state court against that defendant on any claim would be binding. *See Burnham v. Superior Ct.*, 495 U.S. 604, 610–16 (1990) (plurality opinion). Indeed, "personal service upon a physically present defendant" has historically been sufficient to establish jurisdiction, irrespective of "whether the defendant was only briefly in the State or whether the cause of action was related to his activities there." *Id.* at 612.

In the case of a nonresident corporate defendant, personal jurisdiction could be established by serving process pursuant to a state statute

on one of the corporation's in-state agents or employees. *Lafayette Ins. Co. v. French*, 59 U.S. (18 How.) 404, 408 (1856); *see also* Mary Twitchell, *The Myth of General Jurisdiction*, 101 Harv. L. Rev. 610, 621 (1988) (noting that many nineteenth- and early twentieth-century courts "held that service on a corporate agent supported jurisdiction over any cause of action regardless of its relationship with the defendant's forum activities"). Accordingly, "both before and after the Fourteenth Amendment's ratification," many states "adopted statutes requiring out-of-state corporations to consent to in-state suits in exchange for the rights to exploit the local market and to receive the full range of benefits enjoyed by in-state corporations." *Mallory*, 600 U.S. at 130 (plurality opinion). Indeed, at least one of the defendants here has an agent registered under a California consent statute to receive service on the company's behalf and, therefore, could lawfully have been subjected to the state's jurisdiction at the time the Fourteenth Amendment was adopted. *See* Cal. Corp. Code § 2105(a)(6); *Business Search*, Cal. Sec'y of State, https://tinyurl.com/4zsxpdhx (search "Shopify (USA)" or "3687874").

Even absent a statutorily authorized agent registered to receive process in the forum state, some courts held that a corporate defendant

could be subject to jurisdiction anywhere that it was sufficiently "engaged in business" to be constructively present. *Tauza v. Susquehanna Coal Co.*, 115 N.E. 915, 918 (N.Y. 1917) (Cardozo, J.). Drawing an analogy to the physical presence of a person, which was sufficient to render the person amenable to service of process that would subject him to the jurisdiction of the state's courts, these courts reasoned that, where a corporation "shall have come into the state," it "may be served; and the validity of the service is independent of the origin of the cause of action." *Id.*; *see also, e.g.*, *Phila. & Reading Ry. Co. v. McKibbin*, 243 U.S. 264, 265 (1917) ("A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there."). California could have required all defendants here to submit to its jurisdiction on this theory. *See* ER 95–98 (describing defendants' physical and commercial ties to California, including in-state stores, offices, and fulfilment centers, a substantial in-state workforce, and contracts with tens of thousands of in-state parties).

**B.** The Fourteenth Amendment's Due Process Clause was not originally understood to have constitutionalized substantive principles of

personal jurisdiction. As Justice Alito has explained, the restrictions that the Constitution places on "a State's power to reach out and regulate conduct that has little if any connection with the State's legitimate interests … is not confined to any one clause or section, but is expressed in the very nature of the federal system that the Constitution created." *Mallory*, 600 U.S. at 154 (Alito, J., concurring in part and concurring in the judgment); *see also, e.g.*, Ralph U. Whitten, *The Constitutional Limitations on State-Court Jurisdiction: A Historical-Interpretative Reexamination of the Full Faith and Credit and Due Process Clauses (Part Two)*, 14 Creighton L. Rev. 735, 836 (1981) (concluding that "traditional rules of territorial jurisdiction were aimed at the preservation of the sovereign prerogatives of the states vis-[à]-vis each other" and "were not designed and did not operate adequately to preserve the defendant's right to an effective hearing" within the original meaning of due process). Indeed, by the eve of the Civil War, only one state court had held that state constitutional guarantees of due process limited the state's power to take jurisdiction over out-of-state defendants. *See* Stephen E. Sachs, Pennoyer *Was Right*, 95 Texas L. Rev. 1249, 1302 (2017).

A connection between due process and personal jurisdiction did not emerge until 1878, *after* the Fourteenth Amendment was ratified. Then, in *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714 (1878), the Supreme Court first held that due process protects a defendant from being subject to suit in a particular forum. *See Mallory*, 600 U.S. at 155 (Alito, J., concurring in part and concurring in the judgment). *Pennoyer* recognized that the Fourteenth Amendment's Due Process Clause conferred on a defendant the right to challenge a court judgment that "determine[d] the personal rights and obligations of parties over whom th[e] court ha[d] no jurisdiction." 95 U.S. at 733. Even so, *Pennoyer* did not "set[] out particular rules for obtaining" jurisdiction. *See* Stephen E. Sachs, *The Unlimited Jurisdiction of the Federal Courts*, 106 Va. L. Rev. 1703, 1724 (2020).

In sum, the Fourteenth Amendment as originally understood "left the substance of [existing] jurisdictional rules alone." *Id.* at 1722. Accordingly, for corporate defendants (like Shopify here) that could lawfully have been required to submit to a state's personal jurisdiction under traditional common-law rules—whether under a consent or constructive-presence theory—the Fourteenth Amendment would not have altered the jurisdictional analysis. While it would have barred a state court from

"depriving [them] of life, liberty, or property" unless it "ha[d] *jurisdiction*," *id.* at 1712, the Fourteenth Amendment did not define any new protections against the availability of jurisdiction in the first place.

**C.** As explained above, *supra* at 5–6, the Supreme Court in its 1945 opinion in *International Shoe* established a set of substantive constitutional principles that govern a state's exercise of personal jurisdiction over a nonconsenting corporate defendant that would not traditionally have been deemed physically present in the state. *See Mallory*, 600 U.S. at 138, 146 n.11 (plurality opinion); *accord id.* at 152–53 (Alito, J., concurring in part and concurring in the judgment) (agreeing that *International Shoe* applies only where consent is lacking). Prompted by the increasing prominence of corporations "whose ability to conduct business without physical presence had created new problems not envisioned by rules developed in another era," *International Shoe* "upheld the extension of state-court jurisdiction over persons not physically present" under certain circumstances. *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 431 (1994). Recognizing that "the corporate personality is a fiction," the Court emphasized that the idea of corporate "presence" in the forum state for purposes of personal jurisdiction "merely … symbolize[d] those activities

of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process." *Int'l Shoe*, 326 U.S. at 316–17. Ultimately, the Court concluded that "'[p]resence' in the state" could be constructively established "when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." *Id.* at 317.

Thus, the issue that concerned the Court in *International Shoe* was not whether physical corporate presence under the traditional common-law conception could suffice to establish personal jurisdiction; the Court took it for granted that presence in the traditional sense sufficed. Instead, *International Shoe* addressed the modern reality that traditional notions of "presence" did not fully capture the circumstances under which fairness would permit the exercise of jurisdiction. In other words, *International Shoe* supplemented the existing common-law rule that a state could demand consent to general jurisdiction from a corporate defendant whose in-state activities were sufficient to render it traditionally "present" in the state with a new, additional rule that a corporation could exercise a level of constructive in-state presence that would not

necessarily suffice to justify the state's general jurisdiction but that could support a more limited specific jurisdiction. *See Mallory*, 600 U.S. at 138 (plurality opinion) ("In reality, then, all *International Shoe* did was stake out an *additional* road to jurisdiction over out-of-state corporations."); *Burnham*, 495 U.S. at 619 (plurality opinion) ("Nothing in *International Shoe* or the cases that have followed it[] … offers support for the … proposition … that a defendant's presence in the forum … is itself no longer sufficient to establish jurisdiction.").

To be sure, in the years since *International Shoe*, the Supreme Court has in some instances cut back on the availability of *general* jurisdiction over nonconsenting, but physically present, corporate defendants. *See, e.g.*, *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014). Several Justices of the Supreme Court, however, have expressed unease with the Court's retreat from the historic sufficiency of corporate presence as a basis for general jurisdiction. *See, e.g.*, *Daimler*, 571 U.S. at 158 (Sotomayor, J., concurring in the judgment) (highlighting the "incongruous" point that "an individual defendant whose only contact with a forum State is a one-time visit will be subject to general jurisdiction if served with process during that visit,

but a large corporation that owns property, employs workers, and does billions of dollars' worth of business in the State will not be," unless it is incorporated in the state or has its principal place of business there (citation omitted)); *Ford*, 592 U.S. at 382 (Gorsuch, J., concurring in the judgment) (noting that corporations seem to "receive special jurisdictional protections" under the current regime). In any event, that development with respect to *general* jurisdiction has no relevance to the question whether California has *specific* personal jurisdiction over Shopify here.

As explained in Parts I and II, application of the modern jurisdictional principles set out in the *International Shoe* line of cases establishes that specific jurisdiction over the Shopify defendants in this case is proper. The additional fact that, at the time the Fourteenth Amendment was adopted, Shopify's extensive in-state operations could have permitted California to require Shopify to consent to the state's *general* jurisdiction only reinforces that the exercise of *specific* jurisdiction under *International Shoe* does nothing to offend traditional notions of fairness.

**D.** Finally, as to defendant Shopify (USA), Inc., its consent to suit under California's registration statute, *see supra* at 30, supplies yet another basis for jurisdiction. After briefing before the panel was

complete in this case, the Supreme Court held in *Mallory* that consent remains a valid basis for the exercise of personal jurisdiction. *See* 600 U.S. at 125–26, 146 n.11 (plurality opinion). As the Court has explained, where a company "ha[s] appointed an agent authorized in terms to receive service" in certain cases, there can be "no doubt of … jurisdiction" in such cases. *Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95 (1917); *see Mallory*, 600 U.S. at 146 (clarifying that *Pennsylvania Fire* "remains the law"). The fact that Shopify (USA) Inc. has designated an agent for service of process in California (and was served with this suit through that agent) establishes its consent and therefore underscores that specific jurisdiction under the *International Shoe* framework would be appropriate. But even if the Court disagrees that personal jurisdiction exists here under that framework, it should remand for the district court to consider whether to apply the intervening decision in *Mallory* and whether consent supplies a standalone basis for jurisdiction over Shopify (USA) Inc. here.

**CONCLUSION**

This Court should reverse the district court's judgment.

Respectfully submitted,

Seth Safier
Matthew T. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94114
(415) 639-9090

Nicolas A. Sansone
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiff-Appellant*

June 25, 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations set forth in this Court's May 23, 2024, order because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, it contains 7,875 words.

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Nicolas A. Sansone
Nicolas A. Sansone
*Attorney for Plaintiff-Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Supplemental Brief for Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit on June 25, 2024, using the Appellate Electronic Filing system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Nicolas A. Sansone
Nicolas A. Sansone
*Attorney for Plaintiff-Appellant*