No. 22-15815

IN THE

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

BRANDON BRISKIN, on behalf of himself and those similarly situated,

Plaintiff-Appellant,

v.

SHOPIFY INC., et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of California,
No. 4:21-cv-06269-PJH
Hon. Phyllis J. Hamilton, United States District Judge

**EN BANC BRIEF OF AMICUS CURIAE
ALAN B. MORRISON
IN SUPPORT OF PLAINTIFF-APPELLANT**

Alan B. Morrison
George Washington University Law School
2000 H Street NW
Washington D.C. 20052
202 994 7120
abmorrison@law.gwu.edu

June 26, 2024

**TABLE OF CONTENTS**

INTEREST OF THE AMICUS CURIAE ……………………..………………..1

SUMMARY OF ARGUMENT………………………………………………2

ARGUMENT ………………………………………………………………. 5

   THE DORMANT COMMERCE CLAUSE SHOULD BE APPLIED
   TO DETERMINE WHETHER THE DISTRICT COURT  HAS
   PERSONAL JURISDICTION OVER THE CLAIMS IN THIS CASE…5

CONCLUSION………………………………………………………….. 17

CERTIFICATE OF COMPLIANCE ……………………………………….18

# TABLE OF AUTHORITIES

**Cases**

BNSF Ry. Co v. Tyrell, 581 U.S. 402 (2017)………………………………… 9,11

Boschetto v. Hansing, 539 F.3d. 1011 (9th Cir. 2008)……………………………6

Bristol-Meyer-Squibb Co. v. Superior Court, 582 U.S. 255 (2017)…………..11-13

Daimler AG v. Bauman, 571 U.S. 117 (2014)…………………………………11

Denver & Rio Grande W. Ry. Co. v. Terte, 284 U.S. 284 (1932)…………………8

Douglass v. Nippon Yusen Kabushiki Kaisha, 46 F 4th 226 (5th Cir. 2022),

    *cert denied,* 143 S. Ct. 1021(2023)……………………………………………13

Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351 (2021)…………….10

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011)……….11

International Harvester Co. v. Commonwealth of Kentucky, 234 U.S. 579 (1914).8

International Shoe Co. v. Washington, 326 U.S. 310 (1945)………………..6-9, 14

Mallory v. Norfolk Southern Railway, 600 U.S. 122 (2023)…………2, 6, 8, 13,17

Mathews v. Eldridge, 424 U.S. 319 (1976)………………………………………..9

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)…………….9

National Bellas Hess Inc., v. Department of Revenue, 386 U.S. 753 (1967)….3, 14

Pike v. Bruce Church, Inc., 397 U.S. 137 (1970)………………..……..2-4, 7, 9,10, 17

Quill Corp. v. North Dakota, 504 U.S. 298 (1992). ……………….. 4, 5, 14, 15, 16

South Dakota v. Wayfair, Inc., 585 U.S. 162 (2018)……………….... 2, 4, 9, 14, 15

State Farm Mutual Auto Ins. Co. v. Campbell, 538 U.S. 408 (2003) ……………10

## Constitutional Provisions

Commerce Clause ……………..1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17

Due Process Clause…………..1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17

## Other Authorities

Alan B. Morrison, *Safe at Home: The Supreme Court's Personal Jurisdiction*

   *Gift to Business,* 68 DePaul Law Review 517 (2019) ……………………… 1

42 U.S.C. § 1983……………………………………………………………………..12

Federal Rule of Civil Procedure 4(k)(1)(A)……………………………………12

Federal Rule of Civil Procedure 4(k)(1)(C)……………………………………12

Federal Rule of Civil Procedure 4(k)(2)……………………………..........6, 13

# INTEREST OF THE AMICUS CURIAE[1]

Alan B. Morrison is the Lerner Family Associate Dean for Public Interest and Public Service Law at The George Washington University Law School where he teaches civil procedure and constitutional law. He regularly files or join briefs amicus curiae in the courts of appeals and the Supreme Court on personal jurisdiction and other issues. Other than his academic interest in the legal issue, amicus has no other interest in the outcome of this case.

This Court, in connection with its grant of en banc review, posed three questions to the parties, the first of which is: "What rule or standard should govern our evaluation of whether there is specific personal jurisdiction over a defendant for a claim arising out of conduct on the internet?" Based on his 2019 article, *Safe at Home: The Supreme Court's Personal Jurisdiction Gift to Business,* 68 DePaul Law Review 517, it is the position of amicus that the dormant Commerce Clause, not the Due Process Clause of the Fourteenth Amendment, should govern personal jurisdiction questions for claims arising out of conduct on the internet. That is also a position that he took in the amicus brief he and others filed in a non-internet case,

---

[1] This brief is filed with the consent of all parties. No person other than the amicus participated in the drafting of this brief or paid for the preparation of it.

*Mallory v. Norfolk Southern Railway,* 600 U.S. 122 (2023).[2] In note 3, p. 127 of the *Mallory* opinion, the majority noted that the dormant Commerce Clause issue, which had been raised but not litigated below, remained open on remand, and in his concurrence, Justice Alito discussed at length the application of the dormant Commerce Clause to the claim in that case. *Id.* at 150-163.

## SUMMARY OF ARGUMENT

Starting with *Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970), and most recently in *South Dakota v. Wayfair, Inc.,* 585 U.S. 162 (2018), decisions of the Supreme Court demonstrate that the most appropriate way to analyze personal jurisdiction disputes for claims based on internet transactions is to utilize the dormant Commerce Clause. Given the enormous variety in the use of internet websites, the effort to apply Due Process concepts, such as "purposeful availment," are bound to fail to provide workable answers, although in this case, as plaintiff argues, there is no Due Process basis to object to personal jurisdiction. Instead, the Court should recognize that, when a state court asserts personal jurisdiction over an out-of-state defendant in a commercial case, the lawsuit is a form of state regulation,

---

[2] https://www.supremecourt.gov/DocketPDF/21/21-1168/229861/20220712113040179_Mallory%20Amicus%20Brief%20-%20Final.pdf.

and that therefore the power of the state to adjudicate a lawsuit is governed by the following standard from *Pike*:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.  397 U.S. at 142.

The claim in this case is that defendants violated California law by making unauthorized use of data of members of the plaintiff class involving only transactions occurring in California.  There can be no doubt as to California's "legitimate local public interest" in enforcing its laws, with which defendants are required to comply.  The only "burden imposed" on them is that they must respond to this lawsuit in California in contrast to defending in other locations in the United States where they are either incorporated or have their principal place of business.  The burden is also not "clearly excessive in relation to the putative local benefits" of allowing California plaintiffs to sue in the place where they were injured.

The Supreme Court has implicitly recognized that the dormant Commerce Clause is preferable to the Due Process Clause in determining the legality of another form of state regulation—the power of a state to require out-of-state sellers (mainly but not entirely on the internet) to collect use tax on products sent into the state.  When the Court first encountered the issue in *National Bellas Hess Inc., v. Department of Revenue,* 386 U.S. 753 (1967), it concluded that both Clauses

precluded the taxing state from imposing the burden of collecting on out-of-state sellers. Twenty-five years later, it revisited the issue in *Quill Corp. v. North Dakota,* 504 U.S. 298 (1992). This time it concluded that the Due Process Clause was not an appropriate vehicle for assessing whether the state's efforts were legitimate, *id.* at 309, but continued to rely on the dormant Commerce Clause to prevent North Dakota from requiring the seller to collect the use tax. Then in 2018, in *South Dakota v. Wayfair, Inc.,* 585 U.S. 162, the Court overruled *Quill,* finding no dormant Commerce Clause barrier to states imposing a collection obligation, including a specific recognition that, if states become too aggressive, *Pike* is the proper tool to reign them in. *Id.* at 187. Even the dissenters agreed that *Quill* was wrongly decided, but concluded that stare decisis should have precluded the Court from overturning it. *Id.* at 191-92.

Two other points underscore the desirability of using the dormant Commerce Clause, not the Due Process Clause, to resolve personal jurisdiction questions involving internet (and most other commercial) cases, aside from the obvious difficulties that this and other Courts have had in reaching consensus on how to decide the cases. The *Pike* standard is flexible, which assures that state court jurisdiction is available when appropriate (only California transactions in this case), but not if a state became rapacious (seeking a nationwide class based on the California laws at issue here).

Second, because the dormant Commerce Clause is a backup to the power of Congress under the Commerce Clause, if Congress disagrees with judicial decisions—either because they are too restrictive or too permissive of state power—it can step in and make appropriate corrections. But Congress has no authority to alter Due Process decisions, and thus ill-advised rulings must stand. *See Quill* 504 U.S. at 305.

## ARGUMENT

### THE DORMANT COMMERCE CLAUSE SHOULD BE APPLIED TO DETERMINE WHETHER THE DISTRICT COURT HAS PERSONAL JURISDICTION OVER THE CLAIMS IN THIS CASE.

Because this case will be heard on en banc, some may urge the Court to issue broad rules that will govern many, if not all, internet personal jurisdiction cases. Amicus urges the Court not to do so for several reasons. This diversity case involves allegations that the defendants used the internet to capture data from persons in California, which makes it similar to cases in which the defendant has sent a defective product via an internet transaction. They both differ from cases in which the harm is allegedly caused by a passive website that, for example, defames the plaintiff or infringes on the plaintiff's trademark. Even in those cases, the outcome may arguably differ depending on whether the suit is brought in the forum where the plaintiff resides or in another jurisdiction where the harm may be more significant.

Other variations include cases in which the claim arises under federal law so that issuing a broad injunction would not involve imposing the state law of the forum on other jurisdictions. Even more significant differences involve federal law cases against non-US parties where the plaintiff is relying on Federal Rule 4(k)(2) to obtain personal jurisdiction. In both of these situations, one issue would be whether there are different constitutional limits on the federal courts when adjudicating claims arising under federal law than in diversity cases such as this.

Under California law, its courts (and hence the federal district courts in California) have personal jurisdiction over all claims to the extent that the United States Constitution permits. *Boschetto v. Hansing,* 539 F.3. 1011, 1015 (9th Cir. 2008). This case has been argued under the Due Process Clause, and plaintiff has demonstrated that the Due Process Clause is not a barrier to jurisdiction. In *Mallory v. Norfolk Southern Railway,* 600 U.S. 122, 127 n. 3 (2023), the Supreme Court provided that personal jurisdiction challenges can also be made under the dormant Commerce Clause. This brief will focus on why that Clause should be the preferred provision for determining personal jurisdiction for claims in which the issue is, as it is here, whether a state court would have personal jurisdiction over the asserted claim.

A straightforward way to see the connection between personal jurisdiction and the dormant Commerce Clause is to revisit *International Shoe Co. v. Washington,*

326 U.S. 310 (1945). There were two issues in that case, with the more significant, from the company's perspective, being whether the state could constitutionally require the company to pay a tax to fund worker's unemployment benefits on behalf of the eleven to thirteen employees that worked for it in the state (and presumably in the other states where the company had similar arrangements). There was a federal statute that the Court held authorized the state to collect the tax, *id. at 315,* but if there were not, the Court would have had to decide whether the dormant Commerce Clause was a barrier to imposing that tax. Because the tax applied only to workers in the State of Washington, it is unlikely to have been found to be unconstitutional under whatever the standard there was prior to *Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970).

That still left the personal jurisdiction issue which the Court decided under the Due Process Clause. But suppose that the issue was presented under the dormant Commerce Clause, with *Pike* as the framework? Once the tax was upheld, no rationale court could conclude that the added burden of defending a claim about, for example, the amount of the tax due, was clearly excessive, when the alternative would require the State of Washington to sue International Shoe in Missouri where it was headquartered. But that is not how the Court answered the personal jurisdiction question there, which has resulted in the courts thereafter relying on the

Due Process Clause to decide where a business can be sued outside its home state, and in what circumstances.

The use of the Due Process Clause for deciding personal is ironic in that a number of Supreme Court decisions had used the Commerce Clause to reject (or uphold) efforts of state courts to expand the personal jurisdiction reach of their courts. *Denver & Rio Grande W. Ry. Co. v. Terte,* 284 U.S. 284, 285, 287 (1932) (citing cases); *International Harvester Co. v. Commonwealth of Kentucky,* 234 U.S. 579 (1914) (rejecting both defenses). Yet the Court in *International Shoe* decided that issue without discussing those decisions and their rationales. *Mallory* has recognized the continuing relevance of the dormant Commerce Clause for personal jurisdiction issues, and the question before this Court is whether, with respect to internet-based claims, to continue down the Due Process path, which has led to the necessity of convening this Court en banc, or to embark on the far simpler dormant Commerce Clause approach, whose very purpose is aligned with what courts are seeking in their personal jurisdiction cases—to prevent state court overreaching and the forum shopping by plaintiffs that accompanies it.[3]

---

[3] Plaintiff cannot reasonably be accused of forum shopping as the class is suing in the state where their injury occurred under the laws of that jurisdiction. By contrast, it is defendants who seek a favorable forum, far from the place of wrongdoing and the homes of most of the plaintiff class.

In most Due Process cases, the objecting party seeks additional procedures, Thus, in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950), the cure was additional notice to some beneficiaries, while in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the remedy that was sought (but denied) was an evidentiary hearing where the plaintiff would be able to cross-examine the adverse witnesses. However, Due Process in the personal jurisdiction context is substantive, which means that there is nothing that the state can do (*i.e.,* provide more or different process) to cure the deficiency. This is clear from the Court's Due Process specific jurisdiction cases where the focus is almost exclusively on the conduct of the defendant in the forum state with respect to the claims at issue. *BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 414 (2017). By contrast, as *Wayfair* demonstrates, states can improve their likelihood of being able to sustain their laws against a dormant Commerce Clause challenge by making them less burdensome (in that case on smaller online sellers) and hence more likely to satisfy the *Pike* balancing test.

The regulatory approach to understanding personal jurisdiction issues can be seen by examining a hypothetical case in which the California Attorney General, instead of private parties, brought a claim against these defendants to enjoin them from continuing to violate the state statutes relied on by plaintiff here. Much like the way that amicus discussed *International Shoe,* a court would first ask whether the State could enforce its laws as to transactions within the state, and if so, would

the State have to sue elsewhere because there was no personal jurisdiction over these defendants? However, if the State were to seek remedies for data that was obtained from non-California transactions, that would be a very different case, mainly because there would not be the same "local benefit" when the relief was for the benefit of out-of-staters. *Cf. State Farm Mutual Auto Ins. Co. v. Campbell,* 538 U.S. 408, 422 (2003) (punitive damages cannot be based on conduct in another state where it was lawful).

This case involves misuse of data obtained from the plaintiff class online, but suppose instead that defendants acted as electronic pickpockets and removed 25 cents from the account of each plaintiff in connection with every California transaction. It that case, *Pike's* "clearly excessive" burden test would provide a simpler and surer answer to the question of whether defendants could be sued in California, than would an effort to determine whether defendants "purposefully availed" themselves of California when their scheme extended throughout the United States. The plethora of internet cases with inconsistent approaches, resulting in this en banc proceeding, suggests that the usual Due Process route is in distress.

The shift from Due Process to dormant Commerce Clause would not change the result in any of the Supreme Court's recent commercial personal jurisdiction cases. In *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), the plaintiffs resided in the forum state, and defendant regularly did a large amount of

business there; hence there would be no *Pike* problem.  The suit in *BNSF Ry. Co. v. Tyrell,* 581 U.S. 402 (2017), was filed in Montana, but neither the accident happened there, nor did the plaintiff reside there, making it very likely that there was little or no in-state benefit from the case being tried there. The plaintiffs in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), were not even U.S. citizens, and the incidents occurred in Argentina; if the dormant Commerce Clause (or its foreign equivalent) were the applicable law, the plaintiffs would surely have lost, and indeed no such case would probably have been brought.  The same is true for *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), where the forum had nothing to do with an accident that occurred in France, or with the allegedly defective tires that were all made abroad; the sole connection to the North Carolina forum was that the deceased accident victims had resided there.

*Bristol-Meyer-Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), would also remain unchanged.  The dispute there was whether the California courts could obtain personal jurisdiction over claims regarding an allegedly defective drug brought by 592 plaintiffs from other thirty-three other states.  There is no doubt that the state had regulatory authority under the dormant Commerce Clause over the drugs sold to California residents, and hence its courts had personal jurisdiction over those claims. The Court found for BMS on Due Process grounds, and under *Pike*, the Court might well have concluded that the burden on BMS from defending those additional non-

California cases was considerable (including issues of convenience relating to out-of-state witnesses), and the in-state benefits were minimal, because none of the 592 plaintiffs had a California connection, thus producing the same result by a different route.

*Bristol-Meyer-Squibb* raised another point that would become more significant if the dormant Commerce Clause replaced Due Process in the personal jurisdiction analysis; it specifically left open the question of how these cases apply when the case is in federal court. 582 U.S. at 269.[4] That question does not arise simply because, as here, the case is in a federal court. These claims are based on state substantive law, and under Federal Rule 4(k)(1)(A) personal jurisdiction depends on the constitutional reach of the state in which the federal forum is located. The same is true for many federal laws, such as 42 U.S.C. § 1983, for which there is no special personal jurisdiction statute when the case is brought in federal court.

However, Rule 4(k)(1)(C) recognizes that there are some federal statutes that authorize service beyond what the state courts allow, and Rule 4(k)(2) provides for additional personal jurisdiction authority over federal law claims where no state court would have jurisdiction. Because the dormant Commerce Clause is a limit only on state not federal law, cases interpreting it cannot provide an answer to the

---

[4] The Court also left open the impact of its decision on class actions not limited to in-state plaintiffs, 582 U.S. at 267. There is also no need to address class actions in this case because the class includes only those injured in California.

question left open in *Bristol-Meyer-Squibb*: Whether the Fifth Amendment Due Process Clause imposes limits on what Congress may assign to the federal courts, and if so, are they different from the limits under the Fourteenth Amendment Due Process Clause (or the dormant Commerce Clause).[5] The Supreme Court has recently denied review in a Rule 4(k)(2) case, despite a closely divided en banc court of appeals,[6] and other federal question cases are making their way through the courts of appeals. Indeed, some of the copyright and trademark cases in this Court may be able to take advantage of Rule 4(k)(2) when the defendant claims that there is no state where they can be properly sued, even under a dormant Commerce Clause analysis.

Footnote three in *Mallory* confirms that defendants may raise a dormant Commerce Clause objection to personal jurisdiction in commercial cases like this. 600 U.S. at 127. However, given the difficulty the courts have found in applying traditional Due Process to internet cases, this Court would be well within its discretion to abandon that avenue here in favor of the dormant Commerce Clause.

_____

[6] *Douglass v. Nippon Yusen Kabushiki Kaisha,* 46 F 4th 226 (5th Cir. 2022) (en banc), *cert denied,* 143 S. Ct. 1021(2023). Amicus filed a brief in support of petitioners in that case. https://www.supremecourt.gov/DocketPDF/22/22-562/252440/20230118131442853_Douglass%20S%20Ct.%20Amicus%20Final.pdf.

In doing so, it would be following the Supreme Court's path in a series of cases in which the Court first used both doctrines to reject the efforts of states to require out-of-state sellers to collect use taxes on goods shipped into the taxing states. *National Bellas Hess Inc., v. Department of Revenue,* 386 U.S. 753 (1967). When next faced with the issue in *Quill Corp. v. North Dakota,* 504 U.S. 298, 308 (1992), the Court abandoned Due Process as a reason why the states could not require the sellers to collect the tax, but continued to sustain the dormant Commerce Clause objection. And then in *South Dakota v. Wayfair, Inc.,* 585 U.S. 162, 173 (2018), relying on the standard in *Pike,* it upheld the authority of the states to regulate out-of-state sellers to the extent of requiring them to collect and remit use taxes owed by that state's residents to whom their products were sent.[7]

Once again, as in *International Shoe,* it would be unthinkable that the answer to the personal jurisdiction question in *Wayfair* cases would be to require the state to sue to collect the taxes owed where the seller was located. It is not clear whether the Court in *Quill* ended the Due Process analysis because it was unhelpful or mistaken or unnecessary, but it at least implies that the Court is not locked into one approach to analyzing whether a state has attempted to exercise its regulatory authority beyond the proper limits of state power.

---

[7] In *Wayfair* and *Quill,* physical goods were sent into the state seeking to collect the taxes, but as those who purchase Kindle books online from Amazon know, the seller still collects a use tax owed to the purchaser's home jurisdiction.

*Wayfair* is not a case in which the company was required to pay a tax out of its own treasury, but turned on whether it could be forced to collect the taxes owed by its customers and send them to the state in which the customer resided and to which it owed the money.  There is, of course, some cost and burden in performing those tasks, but the real "burden" to the sellers was the loss of the cost advantage that they had over local retailers who had to collect the tax from the buyer, in effect eliminating the advantage that *Quill* had  perpetuated.[8]

To be sure, the actual power at issue in *Wayfair*—to require out-of-state sellers to collect and pay over a use tax—is not the same as the power at issue here—to require an out-of-state defendant to respond to a litigation in the courts of the state. But that apparent distinction falls when both situations are seen as aspects of the same issue of authority: under what circumstances does a state have the power to regulate an out-of-state party, in one case by mandating that non-resident sellers collect and pay over a tax owed to the state, and in the other, by requiring a non-resident to litigate a case in a particular state, rather than another where it may be more convenient or otherwise advantageous?  In both situations the issue is whether the burdens imposed by the state are "clearly excessive" in light of the "legitimate local benefits."  Thus, despite the arguable differences between the two lines of

---

[8] **Wayfair advertised that** " '[o]ne of the best things about buying through Wayfair is that we do not have to charge sales tax.' " 585 U.S. at 182.

cases, the dormant Commerce Clause nicely fits both and should be applied here to internet personal jurisdiction cases.

Amicus recognizes that, even with a dormant Commerce Clause approach, there will be cases involving internet (and other) claims for which the *Pike* analysis will not produce a ready answer. No constitutional test is perfect, but the dormant Commerce Clause has two significant advantageous features: it is flexible and, unlike Due Process, Congress can fix a problem if the courts get it wrong. *Quill* 504 U.S. at 305. In any event, given the uncertain state of the law using Due Process as the standard, it is surely worth this Court exploring the dormant Commerce Clause approach in internet personal jurisdiction cases. And by doing so, the Court will at least be asking the right question: does the state have regulatory, and hence personal jurisdiction, authority over the underlying conduct?

If the Court were to decide this case on the current record, plaintiffs would prevail on the personal jurisdiction issue on both Due Process and dormant Commerce Clause grounds. However, this case was litigated below only under the Due Process Clause, and so, if defendants have not waived the dormant Commerce Clause defense by failing to raise it, they should have the opportunity to adduce

additional evidence and to argue why the existing evidence supports their reading of *Pike* and other relevant cases, as the Supreme Court permitted in *Mallory*. [9]

## CONCLUSION

The Court should hold that the personal jurisdiction was proper under the Due Process Clause and also that the dormant Commerce Clause, in particular under *Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970), should be used in internet cases like this to decide questions of personal jurisdiction. The case should be reversed and remanded for further proceedings.


Respectfully Submitted

/s/ Alan B. Morrison
Alan B. Morrison
George Washington University Law School
2000 H Street NW
Washington D.C. 20052
202 994 7120
abmorrison@law.gwu.edu

June 26, 2024

---

[9] Justice Alito's concurring opinion in *Mallory*, 600 U.S. at 159-161, discussed the relevant dormant Commerce Clause cases, but should not have reached even a tentative conclusion as to the outcome without allowing the parties to submit evidence and brief the issue. In particular, it is undisputed that the defendant has a massive presence in Pennsylvania. *Id.* at 143. Moreover, although the plaintiff's exposure to defendant's asbestos occurred in other states, he appears to have been employed by defendant in the forum state shortly before he filed suit, which may be where his cancer was first diagnosed. *Id.* at 126. Thus, the "local benefits" under *Pike* may turn out to be different than what they appeared on the record before the Supreme Court.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations set forth in this

Court's May 23, 2024, order because, excluding the parts of the brief

exempted by Federal Rule of Appellate Procedure 32(f) and the Rules of

this Court, it contains 4157 words.

This brief also complies with the typeface requirements of Federal

Rule of Appellate Procedure 32(a)(5) and the type-style requirements of

Federal Rule of Appellate Procedure 32(a)(6) because it has been

prepared in a proportionally spaced typeface using Microsoft Word in 14-

point Times New Roman.

/s/ Alan B. Morrison
  Alan B. Morrison
  Attorney for the Amicus Curiae

June  26, 2024