No. 22-15815

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRANDON BRISKIN,
on behalf of himself and those similarly situated,
*Plaintiff - Appellant*

v.

SHOPIFY INC., et al.,
*Defendant - Appellee*

On Appeal from the United States District Court
for the Northern District of California,
No. 4:21-cv-06269-PJH
Hon. Phyllis J. Hamilton,
United States District Judge

## BRIEF OF *AMICI CURIAE* PROFESSORS PATRICK J. BORCHERS AND PETER HAY IN SUPPORT OF PLAINTIFF-APPELLANT BRANDON BRISKIN

Jonathan M. Rotter
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel. (310) 201-9150
Email: jrotter@glancylaw.com

*Attorney for Amici Curiae Professors
Patrick Borchers and Peter Hay*

**Supplemental Statement Of Interested Parties**

Per Ninth Circuit Rule 21-3, and so that judges of this Court can evaluate possible disqualification or recusal, the undersigned counsel of record certifies that the following persons and entities have an interest in this amicus brief:

A. *Amici Curiae*

**Professor Patrick J. Borchers and Professor Peter Hay**

B. *Counsel for Amici Curiae*

Glancy Prongay & Murray LLP: Jonathan M. Rotter

July 2, 2024        */s/ Jonathan M. Rotter*
                                    Jonathan M. Rotter

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...................................................................1

ARGUMENT .........................................................................................3

    I.      SPECIFIC JURISDICTION REQUIRES THE DEFENDANT
          HAVE PURPOSEFUL, RELATED CONTACTS WITH THE
          FORUM STATE ...........................................................3

    II.     THE PLAINTIFF'S CLAIMS BOTH ARISE OUT OF AND
          RELATE  TO SHOPIFY'S FORUM-STATE CONTACTS .........7

          A.      The Plaintiff's Claims Arise out of Shopify's Contacts ...7

          B.      The Plaintiff's Claims Relate to Shopify's Forum-State
                 Contacts .......................................................14

    III.    SHOPIFY'S CONTACTS WITH CALIFORNIA ARE
          PURPOSEFUL ..........................................................17

CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

CASES

*AMA Multimedia, LLC v. Wanat,*
    970 F.3d 1201 (9th Cir. 2020)....................................................... 23, 24

*Asahi Metal Industry Co. v. Superior Court,*
    480 U.S. 102 (1987) ........................................................................5

*Briskin v. Shopify, Inc.,*
    87 F.4th 404 (9th Cir. 2023) ...................................................... *passim*

*Bristol-Myers Squibb Co. v. Superior Court,*
    582 U.S. 255 (2017) ...................................................... *passim*

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................. 4, 8, 9

*Calder v. Jones,*
    465 U.S. 783 (1984) ................................................................. 21, 22

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)................................................................1, 11, 23

*Doe v. Webgroup Czech Republic, A.S.,*
    93 F.4th 442 (9th Cir. 2024) ............................................................24

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,*
    592 U.S. 351 (2021) ...................................................... *passim*

*Freestream Aircraft (Bermuda) Limited v. Aero Law Group,*
    905 F.3d 597 (9th Cir. 2018)..............................................................5

*Hanson v. Denckla,*
    357 U.S. 235 (1958) ........................................................................4

*Herbal Brands, Inc. v. Photoplaza, Inc.,*
    72 F.4th 1085 (9th Cir. 2023) ...........................................................6

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................... 20, 21

*J. McIntyre Machinery Ltd. v. Nicastro*,
    564 U.S. 873 (2011) .........................................................................5

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ............................................................... *passim*

*McGee v. Int'l Life Ins. Co.*,
    355 U.S. 220 (1957) ............................................................... *passim*

*Milliken v. Meyer*,
    311 U.S. 457 (1940)........................................................................21

*Snaprays v. Lighting Def. Group.*,
    100 F.4th 1371 (Fed. Cir. 2024).....................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014) ......................................................................24

*Will Co., Ltd. v. Lee*,
    47 F.4th 917 ...................................................................................6

*World-Wide Volkswagen v. Woodson*,
    444 U.S. 286 (1980) .......................................................................4

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) ..........................................................7

<u>STATUTES</u>

Cal. Code Civ. Pro. § 410.10 .............................................................3

## RULES

Fed. R. App. P. 29(a)(4) ...................................................................1

Fed. R. App. P. 32(a)(5)-(6) ..........................................................26

Fed. R. App. P. 32(a)(7)(B) ...........................................................26

Fed. R. App. P. 32(f) ......................................................................26

Fed. R. Civ. P. 4(k)(1)(A) ...............................................................3

## OTHER AUTHORITIES

Allan Erbsen, *Impersonal Jurisdiction*, 60 Emory L.J. 1, 48 (2010) .....................19

# STATEMENT IN COMPLIANCE WITH FRAP 29(a)(4)

Professors Patrick J. Borchers and Peter Hay offer this brief in support of reversal of the District Court's grant of defendant-appellee Shopify's motion to dismiss for lack of personal jurisdiction. Professor Borchers holds the Lillis Family Professorship in Law at, and is the former Dean of, the Creighton School of Law. Professor Hay is an Emory School of Law Distinguished Professor Emeritus and LQC Lamar Professor Emeritus. Both Professors Borchers and Hay have long studied, taught, and written on the issue of personal jurisdiction and have an interest in ensuring the proper development of the law.

All parties consent to the filing of this brief. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than amici or their counsel contributed money that was intended to fund preparing or submitting the brief.

## SUMMARY OF ARGUMENT

Amici will not burden this Court with an extended recitation of the basics of the minimum contacts test. This is a specific jurisdiction case.[1] Assuming, as we

---

[1] Which, as is well known, distinguishes it from general jurisdiction, in which the defendant has a connection with the forum of sufficient fortitude to allow jurisdiction without regard to the nature of the claims against the defendant. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 152 (2014) (corporate defendant's contacts with the

must, the truth of the allegations of plaintiff-appellant Brandon Briskin (hereinafter

"the Plaintiff"), he is a California resident who while in his home state bought

online fitness apparel from a California retailer for delivery to his home.  *See*

*Briskin v. Shopify, Inc.*, 87 F.4th 404, 409 (9th Cir. 2023), *vacated and reh'g*

*granted en banc*, 101 F.4th 706 (2024).  Unbeknownst to the Plaintiff, the retailer

had purchased defendant-appellee's Shopify's[2] (hereinafter "Shopify") software

package to process credit-card transactions.  *Id.* at 409-10.  Shopify then collected

personal information from the Plaintiff—name, address, credit card information,

purchasing habits, and so on—for Shopify's commercial benefit, including

transmitting this information to another payment processor. *Id.* at 410.  Shopify

pushed "cookies" onto the Plaintiff's device. *Id.*[3]  Shopify then dealt with what the

panel opinion called Shopify's "contractual partner" (headquartered in California)

to process payments to the 80,000 California merchants who use Shopify's

software.  *Id.* at 409.

---

forum state must be equivalent to that of a local enterprise to establish personal
jurisdiction).

[2] There are three defendants-appellees, Shopify, Inc. (the parent corporation
incorporated in Canada with its principal place of business in Ottawa, Ontario,
Canada), Shopify (USA) (a subsidiary incorporated in Delaware with its principal
either in Canada or New York), and Shopify Payments (also a subsidiary
incorporated and having its principal place of business in Delaware).  Because
nothing for jurisdictional purposes appears to turn on the relationship of the three
corporations, we will follow the panel in referring to them collectively as "Shopify."

[3] Computer cookies are small text files pushed onto a device to allow the pusher to
track the end user's browsing habits.

This, the Plaintiff alleges on his behalf and on behalf of the similarly situated California residents he hopes to represent, violated a host of California privacy and unfair competition laws. *Id.* Because all agree this is a specific jurisdiction case, plaintiffs must allege that defendants' contacts with the forum state arise out of or be related to the claims. Plaintiffs must allege also purposeful contacts (variously referred to as "purposeful availment" and "purposeful direction") with the forum state. Although the panel opinion thoroughly canvassed the precedents on specific jurisdiction, it unfortunately misapplied both prongs of the test for specific jurisdiction—leading it to affirm the District Court's grant of Shopify's motion to dismiss for lack of personal jurisdiction.[4] This en banc panel should reverse the District Court.

## ARGUMENT

### I. SPECIFIC JURISDICTION REQUIRES THE DEFENDANT HAVE PURPOSEFUL, RELATED CONTACTS WITH THE FORUM STATE

Specific jurisdiction has two fundamental requirements. The first is that the claims "arise out of *or* relate to" the defendant's forum-state contacts. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021). Even an

---

[4] Because California's long-arm statute goes to the constitutional limits, *see* Cal. Code Civ. Pro. § 410.10, and federal courts generally adopt their home state's long-arm statutes, *see* Fed. R. Civ. Pro. 4(k)(1)(A), only constitutional principles require discussion.

isolated contact can form the basis for jurisdiction if it also forms the basis for the claim. *See, e.g.*, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) (sale of single life insurance policy in the forum constituted minimum contacts where the claim was for non-payment of death benefit on that policy). Relatedness is not as strict. A non-causal relationship between the defendant's forum-state activities and the claim supports specific jurisdiction if the defendant's contacts and the claim are affiliated. *See Ford*, 592 U.S. at 361.

The second is that the defendant have purposeful contacts with the forum state. The Supreme Court over 60 years ago dubbed this requirement the defendant's "purposeful availment" of the benefits and protections of the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (for specific jurisdiction the "defendant [must] purposefully avail[] itself of the privilege of conducting activities" in the forum state). A defendant who gains no benefit—commercial or otherwise—from forum-state activities cannot be haled into court. *See, e.g.*, *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980) (dealer and distributor of a car not subject to personal jurisdiction when car was involved in an accident in a distant state where they did no business).

However, a defendant who enters into a commercially beneficial relationship with an out-of-state party, even if limited in scope, purposefully avails itself of that party's home state's benefits and protections. *See, e.g.*, *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462 (1985) (Michigan fast-food franchisees subject to jurisdiction in Florida for breach of franchise contract because forum was franchisor's home state). The defendant's purposeful relationship need not be a majority, or even a large percentage, of the defendant's activities. *See, e.g.*, *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770 (1984) (distribution in forum state of approximately 10,000 to 15,000 magazines with an allegedly libelous cartoon subject to jurisdiction in the forum even though this was a small percentage of the magazine's circulation).[5]

The purposeful availment test is sometimes slightly recast as "purposeful direction," but the root concept is the same. *See, e.g.*, *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 122 (1985) (Stevens, J., concurring in the

---

[5] In one unusual case, a majority of the Supreme Court held that jurisdiction was unconstitutionally unreasonable even if the defendant (there a third-party defendant) had minimum contacts with the forum. *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987). However, in that case, by the time the case reached the Supreme Court, the California plaintiff had been dismissed, leaving the only remaining dispute indemnity between a Taiwanese manufacturer of motorcycle valves and a Japanese manufacturer of tire tubes. The facts in this case bear no resemblance to *Asahi*, particularly in that here we have a California plaintiff, which gives California an obvious interest, *see, e.g.*, *McGee*, 355 U.S. at 223, and the dispute here is in no way collateral to the main suit—it is the main suit. *See, e.g.*, *Freestream Aircraft (Bermuda) Limited v. Aero Law Group,* 905 F.3d 597, 607 (9th Cir. 2018) (jurisdiction reasonable over Bermudan aircraft company under multifactor balancing test). No party appears to argue that jurisdiction is unconstitutionally unreasonable, the panel did not consider it, and thus we will not discuss it further.

judgment).  The defendant's activities must create a purposeful relationship with the forum state.

Although this case involves "virtual contacts"—a subject that the Supreme Court has thus far not addressed directly, *see, e.g.*, *J. McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873, 890 (2011) (Breyer, J., concurring in the judgment)—this case fits comfortably into the minimum contacts framework.  This Circuit has applied the familiar relatedness and purposeful availment tests for analyzing jurisdiction when the defendants' contacts with the forum involve online interactions.  *See, e.g.*, *Will Co., Ltd. v. Lee*, 47 F.4th 917, 922, 927 (9th Cir. 2022) (defendant owners and operators of a video-hosting website "purposefully directed" their contacts towards the U.S., satisfying that prong of the personal jurisdiction analysis); *Herbal Brands, Inc. v. Photoplaza, Inc*., 72 F.4th 1085 (9th Cir. 2023) (defendant subject to personal jurisdiction in Arizona where it sold products over the internet to Arizona customers).[6]  The panel opinion in this case recognized that a highly interactive Internet transaction might qualify as "express

---

[6] Other circuits agree that Internet activity, directed at a resident of another state, can support specific jurisdiction even if there is an intermediary involved.  *See, e.g.*, *Snaprays v. Lighting Def. Group*., 100 F.4th 1371, 1375 (Fed. Cir. 2024) (defendant purposefully availed itself of forum state's benefits and protections by initiating a patent dispute mechanism through Amazon.com: "This decision is consistent with our sister circuits which held extra-judicial enforcement activities, even when routed through a third-party, satisfy purposeful direction.").

aiming," which the panel viewed as an element of purposeful availment.  *See*

*Briskin*, 87 F.4th at 417.

Therefore, pre-Internet authorities are not inapposite.  The fundamental

requirements of relatedness and purposeful contacts remain and are satisfied by

Shopify's contacts with California.

## II.     THE PLAINTIFF'S CLAIMS BOTH ARISE OUT OF AND RELATE TO SHOPIFY'S FORUM-STATE CONTACTS

### A.      The Plaintiff's Claims Arise out of Shopify's Contacts

The panel opinion got off on the wrong foot by holding that the Plaintiff's

claims neither arose out of or related to Shopify's California contacts.  The panel

reasoned that the Plaintiff's claims did not arise out of Shopify's forum-state

contacts because Shopify's "broader California business contacts . . . did not cause

[the Plaintiff's] harm."  *Briskin*, 87 F.4th at 414.  As to whether the Plaintiff's

claims relate to Shopify's forum-state contacts, the panel opinion recast *Ford* as

requiring a showing of "causation by proxy."  *Id.*[7]  This showing had not been

made, contended the panel, because the Plaintiff would have suffered the same

injury had he been in another state when he made his purchase.  *Id.* at 414-15.

---

[7] The panel relied on an earlier Ninth Circuit decision of *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023).  That case is obviously distinguishable from both this case and *Ford* as the product in question was not sold at all in the forum state.

All this confused a quite straightforward matter. The Plaintiff's claims bear an obvious causal relationship to Shopify's efforts to serve the California market. Shopify's marketing efforts led to the sale of its software to 80,000 California-based merchants and undoubtedly hundreds of thousands others throughout the United States. Shopify caused the Plaintiff injury when its software interacted with the Plaintiff's smartphone, installed cookies on it, and harvested personal information from him for Shopify's commercial benefit, through a form created by Shopify (including his California address)—all of which is the very foundation of his claims. Shopify's interaction with the Plaintiff was not a "random, isolated or fortuitous" event but rather a result of "the defendant's own choice." *See Ford*, 592 U.S. at 359 (quoting *Keeton*, 465 U.S. at 774).

Supreme Court jurisdictional cases have treated less robust affiliations with the forum state as obviously meeting the "arising out of" prong of the test. For example, in *McGee*, a case brought by a Californian for breach of a life insurance contract, there was no showing that the defendant Texas life insurance company had done any forum-state business aside from a single life insurance policy sold in California. *See McGee*, 355 U.S. at 222 ("[S]o far as the record before us shows, respondent has never solicited or done any insurance business in California apart from the policy involved here."). The defendant insurance company refused to pay the death benefit, contending the death was by suicide. *Id.* A unanimous Supreme

Court concluded that the defendant's forum-state contacts allowed jurisdiction in the policyholder's and beneficiary's home state of California because "the suit was based on a contract which had substantial connection with that State." *Id.* at 223.

Somewhat more recently, in *Burger King*, 471 U.S. 462, the Court found Michigan franchisees of the fast-food giant Burger King subject to jurisdiction in Florida on a claim for breach of a franchise contract. The defendant franchisees argued that because the claim "did not 'arise' within the Southern District of Florida [which is home to Burger King's headquarters], the District Court lacked personal jurisdiction over them." *Id*. at 469. Not so, said a majority of the Court. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id*. at 474. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 476 (emphasis in original and citing *McGee*, 355 U.S. at 223). The lack of any physical contacts with the forum state of Florida could not defeat jurisdiction because the defendants intentionally created a commercial relationship with a plaintiff, and the suit was based on that relationship. *Id.* at 487.

Or consider *Keeton*, 465 U.S. 770. In *Keeton*, the plaintiff was a New York resident who sued an Ohio publisher of a magazine; the plaintiff claimed that she had been libeled by a cartoon appearing in five issues. *Id.* at 772. The plaintiff

sued in New Hampshire—a state with which she had no obvious connection—because New Hampshire's six-year limitation period had not run. The defendant's magazine sold a modest 10,000 to 15,000 copies per month in New Hampshire. *Id*.

The Court noted that only a "small proportion" of the defendant's magazines circulated in the forum state. *Id.* at 773. But that could not defeat jurisdiction. "[Defendant]'s regular circulation of magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine." *Id.* at 773-74. The Court further reasoned that "it is beyond dispute that New Hampshire has a significant interest in redressing injuries that ***actually occur*** within the State." *Id*. at 776 (emphasis added). In other words, because the magazines circulated in the forum state were the foundation of the suit, plaintiff's claim arose out of defendant's contacts.

The panel here thought it critical that Shopify sells its software throughout the United States and not just California. *See Briskin*, 87 F.4th at 422. But that simply means similarly situated Nevada or Nebraska plaintiffs would be able to bring suit in their home states, assuming they have a plausible legal basis to do so. The defendant life insurance company in *McGee* issued policies in other states. Burger King has franchisees in all 50 states. *Hustler* magazine circulated nationally. The fact that one of the parties has a national presence does not mean

that its activities in the forum state, particularly when injuring a forum-state resident, immunize it from jurisdiction.

Counterintuitively, perhaps the best illustration that the Plaintiff's claims arise from Shopify's forum-state contacts is a recent Supreme Court case finding an insufficient relationship as to most of the plaintiffs.  In *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), more than 600 plaintiffs brought suit in California state court against a large pharmaceutical company incorporated in Delaware with its principal place of business in New York.  They claimed to have been injured by defendant's blood-thinning drug Plavix.  *Id.* at 258. Eighty-six of the plaintiffs were California residents and 592 others were scattered among 33 other states.  *Id*. at 259.

The defendant in *Bristol-Myers Squibb* had extensive contacts with California through sales of its drugs and a research facility located in California. *Id.* at 259-60.  The U.S. Supreme Court agreed with the California Supreme Court that general jurisdiction was lacking, *see, e.g.*, *Daimler*, 571 U.S. at 137 (corporation subject to general jurisdiction in state of incorporation or principal place of business), while disagreeing with the California Supreme Court's holding that it had specific jurisdiction over both the resident and nonresident plaintiffs. *See Bristol-Myers*, 582 U.S. at 260.

Tellingly, the U.S. Supreme Court addressed at length only the claims of the **nonresident** plaintiffs. *Id*. at 264-68. The eight-justice majority held that parallel activity in non-forum states could not by itself create the necessary relationship with California to allow the nonresidents to sue. *Id.* The nonresident plaintiffs contended California had jurisdiction because they had seen in their home states the same television advertisements as the resident plaintiffs, been prescribed chemically identical pills, and suffered the same adverse health effects. *Id.* at 270. This could not suffice for specific jurisdiction over the nonresident plaintiffs' claims because every event of consequence took place outside of California.

But the Court was clear that jurisdiction over the California residents' claims was **not** in jeopardy. The Court contrasted the activity regarding the nonresidents with the *residents*' claims: "[The nonresidents' claims fail] even when third parties (here, the plaintiffs who reside in California) **can bring claims** similar to those brought by the nonresidents." *Id*. at 265 (emphasis added).

The case at hand cannot be distinguished in any principled fashion from the California residents' claims in *Bristol-Myers*. Both the drug company and Shopify purposefully created an extensive commercial relationship with California which resulted in hundreds of thousands (likely millions) of commercially beneficial transactions with California residents. In *Bristol-Myers* it was the sale of Plavix to Californians; here it is Shopify's software interacting with Californians to harvest

their personal information for Shopify's benefit (including sharing the data with a California "contractual partner") and placing cookies on their devices. In both cases a third party connected the plaintiffs and the defendants; doctors needed to prescribe Plavix and retailers needed to have purchased Shopify's software. But once the plaintiffs and the defendants were connected, the liability-creating conduct took place in California.[8] The California plaintiffs presumably ingested most or all the Plavix pills in California and the Plaintiff here (as is undoubtedly true of most Californians) had his data harvested from, and cookies installed on, his device in California.

The Plaintiff's claims thus arise from Shopify's California contacts in the most obvious way possible. Most or all the liability-creating conduct took place in the forum state injuring a forum-state resident. Shopify went to great lengths to establish itself in the California market. Shopify knew, or can be charged with

---

[8] For this reason, the result in this case would not change if the merchant were not based in California. Once a purchaser uses his or her credit card information to make a purchase from a merchant using Shopify's software, the direct interaction between Shopify and the purchaser begins. Shopify connects its network to the purchaser's device by creating a data entry form and then harvests and stores the purchaser's data (including the address, which obviously would show if the purchaser were a Californian) and simultaneously pushes cookies onto the purchaser's device. The location of the merchant is irrelevant because the claims arise from the direct interaction with Shopify. The existence of a temporary intermediary is irrelevant. For example, in *McGee*, 355 U.S. at 221-22, the insured originally bought the policy from an Arizona company, and then the policy was taken over by the defendant, who continued to pay premiums from California. It was this direct relationship between the California insured and the defendant that sustained jurisdiction.

knowledge, that it was harvesting data from Californians because it collected the purchasers' addresses. The Plaintiff's claims therefore satisfy the more demanding prong of the "arise out of or relate to" test.

### B. The Plaintiff's Claims Relate to Shopify's Forum-State Contacts

Having satisfied the rigorous "arise out of" prong of the test, discussion of the more generous "relates to" prong is superfluous. But in the interests of completeness, we will address it.

Respectfully, the panel opinion's discussion of this prong is confusing. *See Briskin*, 87 F.4th at 414-15. Much of that opinion's discussion of relatedness understandably centered on the Supreme Court's recent decision in *Ford*, 592 U.S. 351. But the panel misunderstood the central teaching of *Ford*.

In *Ford*, the Court considered two consolidated products liability cases in which the defendant Ford Motor Company's vehicles had been initially sold in one state, but through a series of resales were sold to owners in neighboring states. There they allegedly malfunctioned and caused the forum-state-resident plaintiffs' injuries. *Id.* at 354-55. Defendant Ford Motor Company challenged the forum states' assertions of jurisdiction because the cars in question were not designed, manufactured, or initially sold there. *Id.* at 356. The defendant contended that specific jurisdiction required a causal link between its contacts with the forum state and the injuries. Because the cars in question arrived in the forum states through

the actions of persons outside of Ford's control, Ford contended it did not have minimum contacts.

All eight of the participating Justices rejected Ford's contention that it lacked minimum contacts. Writing for the majority, Justice Kagan acknowledged that a causal link between the defendant's forum-state activities and the injuries could not be shown. But this was not fatal to specific jurisdiction. Ford's substantial business presence in the forum states—dealerships, advertising, repair facilities, and so on—created a sufficient "affiliation" between Ford's forum-state contacts and the claims. *Id.* at 359-60. Therefore, defendant Ford was amenable to specific jurisdiction without a causal link.

Much of the panel opinion here centered on whether "Shopify's broader California contacts 'relate to' [the Plaintiff's] claims under *Ford.*" *See Briskin*, 87 F.4th at 414. It is a fair question whether Shopify's California contacts are as comprehensive as Ford's were with the forum states, but the question requires no answer here. It cannot be denied that Shopify's California contacts are significant. They include over 80,000 California merchant clients, a physical location in Los Angeles "to expand its access to the California market and enhance relationships with Shopify's merchant-customers," and "at least one fulfillment center in California that stores good from merchants and ships them to consumers." *Id.* at 410. Moreover, one of the Shopify subsidiaries, Shopify USA, "is registered to do

business in California, at one point had an office in San Francisco, has a quarter of its employees in California, and provides services to thousands of California businesses." *Id.*

The question of whether these contacts are sufficiently affiliated with the Plaintiff's claim as to render a causal link unnecessary requires no answer because ***here there is*** a causal link. Once the Plaintiff placed his order for the merchandise, he fell into Shopify's hands. Shopify reached into California to harvest his personal data for Shopify's benefit, linked his device to Shopify's network, created a form for him to enter his personal information, and pushed cookies onto his device. Shopify either knew—or can be charged with knowledge—that it was dealing with a Californian because it collected addresses.

Unfortunately, the panel opinion missed the forest for the trees. It is difficult to imagine a more related, direct link between Shopify's contacts and the Plaintiff's claims. The foundation of the Plaintiff's claims is Shopify's act of reaching into California to collect data for Shopify's commercial benefit. The panel opinion's discussion would be germane if the Plaintiff were a Nevadan and attempting to sue in California, but he's not a Nevadan. To put the matter in *Ford*'s terms, here it's as if the Plaintiff went to a local dealership in California and purchased a Ford. Defendant Ford conceded that in such a scenario its forum-state contacts would relate to the plaintiffs' claims and the same is true here.

The Plaintiff's claims both arise out of and related to Shopify's California contacts.

### III.    SHOPIFY'S CONTACTS WITH CALIFORNIA ARE PURPOSEFUL

The panel's opinion finding a lack of purposeful availment also unfortunately suffered from similar analytical difficulties.  It is difficult to imagine a case in which the defendant more obviously directed its activities to the forum state.

The panel opinion assumed that the only contacts that could count toward purposefulness were those tied directly to the Plaintiff.  *See Briskin*, 87 F.4th at 416 ("[The Plaintiff's injuries] were entirely personal to him and would follow him wherever he might choose to live or travel.") (internal citation omitted). In *Ford*, the defendant conceded that its substantial business contacts with the forum states (scores of dealerships, advertising promotions, and so on) qualified as purposeful availment of the benefits and protections of the states.  *See Ford*, 592 U.S. at 361. The majority noted the wisdom of this concession:

> To see why Ford is subject to jurisdiction in these cases . . . consider first the business that the company regularly conducts in Montana and Minnesota. ***Small wonder*** that Ford has here conceded 'purposeful availment' of the two States' markets.  *Id*. at 364-65 (emphasis added).

Much of Ford's contact with the forum states had nothing directly to do with the plaintiffs and their claims in those cases.  Neither car had been purchased at

any of the dealerships in the forum states. There was no showing that either car had been serviced by Ford in the forum states or that the second-hand owners had been persuaded by Ford's advertising to buy their used cars. No matter, said the *Ford* Court. The defendant's contacts were not "random, isolated or fortuitous," *see Ford*, 592 U.S. at 359, but rather were the result of deliberate, purposeful efforts to benefit from the forum states' markets, *see id.* at 359-60, and that sufficed for specific jurisdiction.

One can debate whether Ford's or Shopify's contacts with the respective forum states measure higher on the metaphorical Richter contacts scale. However, Shopify's contacts easily cross the threshold to purposeful and deliberate. Shopify has more than 80,000 merchant-customers in the Golden State and has surely processed millions of California transactions. But beyond this, it created a physical location in Los Angeles to expand its access to the California market; it there has a "fulfillment center" where it stored popular merchandise for easy delivery to California purchasers; it either had or has another physical location in San Francisco, and a quarter of subsidiary Shopify USA's work force is in California. None of this was accidental; it was purposeful.

The panel chose to frame the question as one of whether Shopify "expressly aimed" its conduct at California. *See Briskin*, 87 F.4th at 422. By this it seemed to mean that purposeful availment required it to have singled out California to a

greater degree than any other state.  *See Briskin*, 87 F.4th at 422 (Shopify "is

indifferent to the location of either the merchant or the end consumer.").  The

Plaintiff correctly rejoined that this would mean that a defendant that spread its

contacts evenly among the 50 states would not be subject to jurisdiction in any of

them.  *See Briskin*, 87 F.4th at 421.  To this, the panel opinion's reply was that such

a corporate defendant could still be sued in its principal place of business or state

of incorporation.  Assuming this were a sufficient reply—and it's not—it would

have the bizarre consequence of permitting a U.S. forum over domestic defendants

(in their states of incorporation and principal places of business) but give foreign

defendants jurisdictional immunity.  Consider the corporate parent here, which is

incorporated in Canada and has its principal place of business in Ottawa.  On the

panel's theory, no U.S. plaintiff can sue the corporate parent in the United States

even as the corporation reaps the benefit of the enormous U.S. market.

Perhaps an analogy will help.  Suppose a letter bomber resident in Ontario

has two enemies, both in California.[9]  The bomber sends letter bombs to each at

their addresses and the recipients are injured.  Presumably, nobody would seriously

contest that the recipients could bring a civil action in California.  The bombs were

aimed at them and the source of their injury.  Now suppose that the letter bomber

---

[9] Other commentators have used bomber analogies.  *See, e.g.*, Allan Erbsen,
*Impersonal Jurisdiction*, 60 Emory L.J. 1, 48, n.197 (2010).

has 100 enemies, two in each state. He sends the letter bombs, all of which reach the recipients at their homes and cause them injury. Under the panel opinion's theory, the injured can't sue in their home states (or anywhere in the United States) because no state was targeted to a greater degree than the others.

But not allowing the victims to sue at home is absurd. The two California victims were no less targeted simply because there were 98 equally unlucky souls in the other 49 states. The panel's concern—which would presumably apply by analogy to our letter bomber—was that "web-based platforms cannot be subject to specific jurisdiction in any forum from which they are accessible, which would lead to the eventual demise of all restrictions on personal jurisdiction." *See Briskin*, 87 F.4th at 421 (internal quotations and citations omitted).

Perhaps this would be a fair point if, as in *Bristol-Myers*, 582 U.S. 255, this suit included plaintiffs from throughout the United States. But it doesn't. The Plaintiff is a Californian and seeks to represent only Californians in the class action. This is not a situation in which a plaintiff seeks to establish jurisdiction merely based on the visibility of a webpage in any place in which there is Internet access. This suit in no way foretells "the eventual demise" of limitations on personal jurisdiction.

It is possible, of course, that Shopify will face similar lawsuits in other states on behalf of residents of those states whose personal information was harvested.

But that's because Shopify decided to take advantage of state markets across the United States.  Assuming other states have laws that make Shopify's conduct illegal, as the Plaintiff believes is the case in California, this is a risk that Shopify chose to take.  It's also a perfectly fair exchange.  Shopify sought to exploit the vast California market.  Requiring it to answer in California for alleged injuries to Californians is a fair trade.

As discussed in the original minimum contacts case, *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), it is fair to require a corporation doing business in the forum state to answer for liabilities that arise within the state.  As is well known, that suit was brought in the Washington state courts for unpaid unemployment insurance taxes for the dozen or so salesmen located in that state.  In holding that jurisdiction could be established by minimum contacts, the Court stated that jurisdiction must be assessed by "traditional notions of fair play and substantial justice." *Id.* at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Fairness requires putting plaintiffs and corporate defendants on a level playing field.  As the *International Shoe* Court stated:

> But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. *International Shoe*, 326 U.S. at 319.

The Supreme Court has never held that an assertion of specific jurisdiction by forum-state residents is defeated because of the possibility of similar suits in other states. Consider *International Shoe*. The International Shoe Company did business in many other states. It's quite possible that the corporation wasn't paying unemployment insurance taxes in other states and that the International Shoe Company could therefore face similar suits in other states.

In *Calder v. Jones*, 465 U.S. 783 (1984)—relied on heavily by the panel opinion, *see Briskin*, 87 F.4th at 412-13—a famous California-resident actress sued the writer and editor of a libelous story about her published in *The National Enquirer*. The individual defendants objected to jurisdiction, claiming that their contacts were too sparse to support personal jurisdiction. A unanimous Supreme Court disagreed. "Jurisdiction over [the individual defendants] is . . . proper in California based on the 'effects' of their Florida conduct in California." *See Calder*, 465 U.S. at 789. The Court held that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California." *Id*. at 790.

Remarkably, the panel opinion found the *Calder* effects-and-aiming test not satisfied. *See Briskin*, 87 F.4th at 422-23. The panel opinion reached this conclusion through circular reasoning. The panel wrote that Shopify did not have a "forum-specific focus." *Id*. at 422. But this merely engrafted onto *Calder* reasoning the Court never employed. *The National Enquirer*'s circulation was not

limited to California.  A reader in New Jersey could just as easily have read the article and formed a diminished view of the plaintiff's character.  The effects-and-aiming test was satisfied in *Calder* because the plaintiff was injured in the forum state, where she resided.  So it is here too.  Though the injury is not to the Plaintiff's reputation, but rather his privacy, Shopify's actions affected him in his home state of California.

Contacts in other states are irrelevant to specific jurisdiction.[10]  In *Calder*'s companion case of *Keeton*, only a "small proportion" of the libelous magazines were sold in New Hampshire.  *See Keeton*, 465 at 773.  As noted above, Washington was one of many states in which the International Shoe Company did business.  Ford conceded purposeful availment even though Montana and Minnesota surely account for only a small portion of its business.  In *Bristol-Myers*, Plavix was sold nationwide yet that gave the Court no pause in concluding the resident plaintiffs had jurisdiction.  *Bristol-Myers*, 582 U.S. 255.  In every one of these cases, the Supreme Court upheld the constitutionality of jurisdiction even though the defendant's forum-state activities did not approach a majority of its commercial activities.

---

[10] Contacts in other states are relevant to **general jurisdiction** because a corporation can have only one principal place of business.  *See Daimler*, 571 U.S. at 137 ("[The place of incorporation and principal place of business] have the virtue of being unique—that is, each ordinarily indicates only one place . . . .").

Ninth Circuit specific jurisdiction decisions requiring courts to compare contacts inside and outside the jurisdiction in question also conflicts with Supreme Court precedent. *AMA Multimedia, LLC v. Wanat* wrongly considered whether the defendant had a "forum-specific focus." 970 F.3d 1201, 1210 (9th Cir. 2020). As the dissent in *AMA Multimedia* correctly pointed out, the Supreme Court in *Keeton* found that jurisdiction existed in New Hampshire since the defendant "continuously and deliberately exploited the New Hampshire market" even as the defendant had no particular "focus" towards that market. *See id.* at 1221 (Gould, J., dissenting) (quoting *Keeton*, 465 U.S. at 781). *Doe v. Webgroup Czech Republic, A.S.* introduces language that departs even more sharply from *Keeton* and *Bristol-Meyers*, requiring that defendants "differentially" favor a particular forum to have jurisdiction there. 93 F.4th 442, 453-54 (9th Cir. 2024) (citing the now-vacated *Briskin*, 87 F.4th at 420).

This leaves *Walden v. Fiore*, 571 U.S. 277 (2014)—a *Bivens* action brought by two gamblers against a deputized TSA agent who temporarily seized cash from them in the Atlanta airport—as the primary authority on which the panel found a lack of purposeful availment, *see Briskin*, 87 F.4th at 415-17, and which Justice Kagan described as one of defendant Ford's "favorite cases." *See Ford*, 592 U.S. at 371. Justice Kagan's pithy observation that Ford's reliance on *Walden* was self-

refuting applies as well to Shopify.  Her explanation of why *Walden* gave Ford no safe harbor applies with equal force to Shopify:

> But *Walden* has precious little to do with the cases before us. In *Walden*, only the plaintiffs had any contacts with the State of Nevada; the defendant-officer had never taken any act to form a contact of his own. The officer had never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada. So to use the language of our doctrinal test: He had not purposefully availed himself of the privilege of conducting activities in the forum State.  *Ford*, 592 U.S. at 370-71 (internal citations and quotes removed).

Here as well, *Walden* is worlds away from this case.  Shopify went to great lengths to establish a substantial commercial relationship with California.  The *Walden* defendant was a lone TSA agent in the Atlanta airport—who so far as the record showed had never been to Nevada—being sued in the Silver State because one of the plaintiffs happened to be from Nevada.  Moreover, had the *Walden* plaintiffs wanted to press the issue they had alternative forum in Georgia.  Here, if the Plaintiff can't sue in California, he has no U.S. forum available to him against the Shopify corporate parent.  As in *Ford, Walden* "has precious little to do" with this case.

## CONCLUSION

For the foregoing reasons, amici respectfully request that this en banc panel reverse the District Court's dismissal for lack of personal jurisdiction and disapprove Circuit panel precedent that has required differential targeting of a forum and veered from the Supreme Court's personal jurisdiction caselaw.

July 2, 2024

/s/ Jonathan M. Rotter

Jonathan M. Rotter
Glancy Prongay & Murray LLP

*Attorneys for Amici Curiae Professor Patrick J. Borchers and Professor Peter Hay*

## Certificate of Compliance with Rule 32

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains approximately 6,181 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-Point Times New Roman.

*/s/ Jonathan M. Rotter*
Jonathan M. Rotter
Glancy Prongay & Murray LLP

**Certificate of Service**

I hereby certify that on July 2, 2024, I electronically filed and served this Brief using the Ninth Circuit CM/ECF system; all participants in the case are registered CM/ECF users.

<u>*/s/ Jonathan M. Rotter*</u>
Jonathan M. Rotter
Glancy Prongay & Murray LLP