*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

---

BRANDON BRISKIN,
on behalf of himself and those similarly situated,
*Plaintiff-Appellant,*

v.

SHOPIFY INC.; SHOPIFY (USA) INC.;
SHOPIFY PAYMENTS (USA) INC.,
*Defendants-Appellees.*

---

*Appeal from the United States District Court for the Northern District of California (Oakland),
Case No. 4:21-cv-06269-PJH · Honorable Phyllis J. Hamilton, Senior District Judge*

## SUPPLEMENTAL BRIEF FOR DEFENDANTS-APPELLEES

MOEZ KABA
ALLISON LIBEU
SOURABH MISHRA
HUESTON HENNIGAN, LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
mkaba@hueston.com
alibeu@hueston.com
smishra@hueston.com

ADAM MINCHEW
HUESTON HENNIGAN, LLP
1 Little West 12th Street
New York, NY 10014
Telephone: (646) 930-4046
aminchew@hueston.com

*Attorneys for Defendants-Appellees,
Shopify Inc.; Shopify (USA) Inc.; and Shopify Payments (USA) Inc.*

 COUNSEL PRESS · (213) 680-2300                    PRINTED ON RECYCLED PAPER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 9

I.    SUPREME COURT PRECEDENT GUIDES THIS COURT'S EVALUATION OF WHETHER THERE IS SPECIFIC JURISDICTION OVER A DEFENDANT FOR CLAIMS ARISING OUT OF CONDUCT ON THE INTERNET ...................... 9

    A.    The Supreme Court Has Announced Key Principles Courts Must Apply to Determine Whether a Defendant Has the Requisite "Minimum Contacts" .................................... 9

    B.    Under the Supreme Court's "Minimum Contacts" Test, There Is No Specific Jurisdiction Over the Shopify Defendants in this Case .............................................. 13

    C.    Briskin Misapplies the Supreme Court's "Minimum Contacts" Test ....................................................... 18

II.    THIS COURT SHOULD NOT REVISIT ITS PRIOR DECISIONS IN *DOE* AND *AMA* ....................................... 24

    A.    The "Something More" Analysis Ensures Specific Jurisdiction Complies with Due Process ................................. 24

    B.    The "Something More" Analysis Does Not Require that Contacts Directed at a Forum Exceed Those Directed at Other Fora ............................................................. 28

III.    THE ORIGINAL MEANING OF THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE CONFIRMS THE UNREASONABLENESS OF EXCERSIZING JURISDICTION OVER THE SHOPIFY DEFENDANTS ................ 31

    A.    The Due Process Clause Embodies Longstanding Principles of Sovereignty and Territorial Limits ...................... 31

B.    The Shopify Defendants Are Not Subject to Specific
Jurisdiction Under Longstanding Jurisdictional Principles ......32

CONCLUSION ........................................................................................35

CERTIFICATE OF COMPLIANCE ........................................................37

CERTIFICATE OF SERVICE ................................................................38

# TABLE OF AUTHORITIES

## CASES

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*,
   293 F.3d 707 (4th Cir. 2002) ........................................................................26

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) ........................................................6, 28, 29

*Asahi Metal Industry Co, Ltd. v. Superior Court*,
   480 U.S. 102 (1987) ........................................................................................25

*be2 LLC v. Ivanov*,
   642 F.3d 555 (7th Cir. 2011) ........................................................................27

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ..........................................................................10

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ......................................................................21

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) ......................................................................27

*Briskin v. Shopify Inc.*,
   2022 WL 1427324 (N.D. Cal. May 5, 2022)................................................3

*Briskin v. Shopify Inc.*,
   87 F.4th 404 (9th Cir. 2023) ....................................................................3, 29

*Bristol-Myers Squibb Co. v. Superior Court*,
   377 P.3d 874 (Cal. 2016) ...............................................................................33

*Bristol-Myers Squibb Co. v. Superior Court*,
   582 U.S. 255 (2017)........................................................................................14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................19, 20, 21, 23

*Burri L. PA v. Skurla*,
   35 F.4th 1207 (9th Cir. 2022) .......................................................................35

*Calder v. Jones*,
465 U.S. 783 (1984)..................................................................*passim*

*Chaganti v. Fifth Third Bank*,
2024 WL 2859259 (Cal. Ct. App. June 6, 2024)..........................34

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ........................................5, 10, 24, 26

*Doe v. WebGroup Czech Republic, a.s.*,
93 F.4th 442 (2024) .................................................................6, 28

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ......................................................13

*Fiore v. Walden*,
688 F.3d 558 (9th Cir. 2012) ...............................................*passim*

*Ford Motor Co. v. Montana*,
592 U.S. 351 (2021)......................................................................11

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000) ....................................................27

*Hanson v. Denckla*,
357 U.S. 235 (1958)......................................................................25

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ...............................................19, 25

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)..........................................................4, 10, 32

*J. McIntyre Machinery, Ltd. v. Nicastro*,
564 U.S. 873 (2011)......................................................................25

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)......................................................4, 21, 22, 23

*King v. Am. Family Mut. Ins. Co.*,
632 F.3d 570 (9th Cir. 2011) .......................................................34

iv

*Lafayette Ins. Co. v. French*,
    59 U.S. 404 (1855)....................................................................................31

*Mallory v. Norfolk S. Ry. Co.*,
    600 U.S. 122 (2023)..............................................................................8, 31

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ..............................................................19

*McBee v. Delica Co., Ltd.*,
    417 F.3d 107 (1st Cir. 2005)..................................................................27

*McQueen v. Middleton Manuf'g Co.*,
    16 Johns. 5 (N.Y. 1819)..........................................................................31

*Missouri Pac. R. Co. v. Clarendon Boat Oar Co.*,
    257 U.S. 533 (1922)................................................................................34

*Nichols v. Guidetoinsure, LLC*,
    --- F. Supp. 3d --- , 2024 WL 1643701 (N.D. Cal. Apr. 15, 2024)..............19

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ..............................................................24

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..............................................................26

*Pennoyer v. Neff*,
    95 U.S. 714 (1878)........................................................................7, 31, 32

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ..............................................................19

*Rosenthal v. Bloomingdales.com, LLC*,
    101 F.4th 90 (1st Cir. 2024) ...........................................................5, 10, 14

*Sandoval v. Barneburg*,
    470 F. App'x 550 (9th Cir. 2012)..............................................................2

*St. Clair v. Cox*,
    106 U.S. 350 (1882)..........................................................................31, 32

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ....................................................19, 20

*Thomson v. Anderson*,
  6 Cal. Rptr.3d 262 (Cal. App. 2003) .........................................8

*United States v. Heredia*,
  483 F.3d 913 (9th Cir. 2007) ......................................................28

*Walden v. Fiore*,
  571 U.S. 277 (2014).........................................................*passim*

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)................................................................10, 20

*Wyles v. Brady*,
  822 F. App'x 690 (10th Cir. 2020) ............................................20

*XMission, L.C. v. Fluent LLC*,
  955 F.3d 833 (10th Cir. 2020) ...................................................27

*Yamashita v. LG Chem, Ltd.*,
  62 F.4th 496 (9th Cir. 2023) ......................................................11

*Young v. New Haven Advocate*,
  315 F.3d 256 (4th Cir. 2002) ..............................................10, 27

**STATUTES**

Corporation Code § 2105(a) ....................................................34

**OTHER AUTHORITIES**

James Weinstein, *The Federal Common Law Origins of Judicial
  Jurisdiction: Implications for Modern Doctrine*,
  90 Va. L. Rev. 169 (2004) ........................................................31

# INTRODUCTION

Each year, hundreds of millions of Americans engage in e-commerce transactions, interacting with countless companies, directly and indirectly. Internet commerce is not limited to buying goods from sellers—instead, it involves various back-end services, such as cloud computing platforms, web hosts, payment gateways and processors, data encryptors, and more. Online commerce is made possible by this balanced ecosystem of third parties that provide services to those that sell goods or services to others online.

This case asks whether one such service provider is subject to jurisdiction in California because a consumer happened to be online in California when he made a purchase from a third-party merchant. Under well-established personal jurisdiction principles, the answer is no. Haling back-end service providers into court in every state in which a consumer transacts with a third-party merchant could lead to specific jurisdiction in all 50 states, a result that would offend traditional requirements of due process: fair play and substantial justice.

Shopify Inc. offers back-end, business-to-business, e-commerce services to online merchants. Merchants, but not consumers, have access to Shopify Inc.'s "software and infrastructure," which they can use to "design, set up and manage their [online] stores." (ER-83; ER-99.) Once a merchant contracts with Shopify Inc., it "can elect to embed certain Shopify assets, such as payment forms, into their

pre-existing websites." (ER-99.) Shopify Payments, a subsidiary of Shopify Inc., offers merchants the ability "to accept and process online credit and debit payments" through that merchant's website. (ER-97.) Non-party IABMFG, an independent online retailer of fitness apparel, contracted with Shopify Inc. and Shopify Payments to use certain of these e-commerce services. (ER-95.)

In June 2019, Plaintiff-Appellant Briskin, a California resident, used his iPhone to purchase apparel from IABMFG's website (www.iambecoming.com). (ER-113.) At checkout on IABMFG's website, Briskin provided his name, payment information, shipping address, and other necessary details. (ER-113-114.) Briskin alleges that after he completed his purchase from IABMFG, "Shopify"—which he collectively and indiscriminately defines to include Shopify Inc., Shopify USA Inc. ("Shopify USA"), and Shopify Payments (USA) Inc. ("Shopify Payments")[1]— surreptitiously obtained the information he provided to process his order. (ER-114.) Briskin alleges that the Shopify Defendants collect such transaction data "wherever" IABMFG's customers happen to be located. (Briskin Opening Br. (Dkt. No. 12) at 24.) The necessary predicate of Briskin's surreptitious-collection theory is that all

---

[1] Appellees adopt this construction for purposes of this appeal because they must as Plaintiff directs his allegations to "Shopify" collectively and generically. Plaintiff's indiscriminate reference to "Shopify" is both legally improper and factually implausible. *See, e.g.*, *Sandoval v. Barneburg*, 470 F. App'x 550, 551 (9th Cir. 2012) (affirming dismissal where plaintiff failed to "identify which actions of the individual defendants violated his rights with regard to each claim").

his alleged interactions were with third-party IABMFG. He does not allege he ever visited any Shopify website or engaged in any transaction directly with any Shopify entity.

Briskin's fanciful allegations that Shopify nefariously wiretapped him are meritless. But the case cannot proceed for a more fundamental reason. As Judge Hamilton and a unanimous Ninth Circuit panel correctly concluded, the district court lacks personal jurisdiction over the Shopify Defendants. *See Briskin v. Shopify Inc.*, 2022 WL 1427324, at *4 (N.D. Cal. May 5, 2022) ("Shopify serves as an agent of IABMGF, providing hosting services for the latter's website, which falls far short of invoking the benefits and protections of California's laws."), *aff'd*, 87 F.4th 404, 423 (9th Cir. 2023) (alleged "extraction and retention of consumer data depends on the actions of third-party merchants who are engaged in independent transactions that themselves do not depend on consumers being present in California"), *reh'g en banc granted*, 101 F.4th 706 (9th Cir. 2024). In so holding, the district court and panel dutifully applied the Supreme Court's and this Court's established personal jurisdiction precedent.

After granting Briskin's petition for rehearing en banc, this Court ordered supplemental briefing on three issues: (1) what standard or rule should govern the analysis of personal jurisdiction in cases involving internet-related conduct; (2) whether the Court should revisit its prior holdings that a defendant's aiming of

its internet-related conduct at a jurisdiction must exceed its aiming at other jurisdictions; and (3) whether and how the original meaning of the Fourteenth Amendment's Due Process Clause should inform the Court's considerations.

*First*, the parties agree that an internet-specific standard for personal jurisdiction is unnecessary. Although individual cases present different facts, circumstances, and contexts, the principles underlying the jurisdictional inquiry are well understood. Because jurisdiction is fundamentally constrained by the territorial and sovereign reach of the state in which a court sits, its authority over a defendant depends on the defendant having the requisite "minimum contacts" with the forum such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945). "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (cleaned up). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). The contacts must establish that the defendant deliberately "reached out beyond" its home. *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Exercising jurisdiction over the Shopify Defendants would run afoul of these principles. The Shopify Defendants did not deliberately "reach out beyond" their respective homes in Canada, Delaware, and New York to extract information from

Appellant in California. IABMFG made the decision to offer its goods to consumers throughout the United States on its own website. Briskin made the decision to access that website to purchase goods from IABMFG while in California. IABMFG chose to use the Shopify Defendants' services to help facilitate order processing, wherever orders might originate. Finding specific jurisdiction over the Shopify Defendants based on these allegations would upend decades of Supreme Court precedent, ignore the traditional limits on personal jurisdiction, and create a circuit split. *See Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 99 (1st Cir. 2024) (affirming dismissal for lack of personal jurisdiction in Massachusetts over defendant that allegedly "wiretapped" plaintiff through its e-commerce website).

*Second*, the parties agree that this Court's precedents do not require that a defendant's aiming of its internet-related conduct at a jurisdiction *exceed* its aiming at other jurisdictions. Instead, for nearly three decades, consistent with Supreme Court precedent, this Court has required the plaintiff to show "something more" connecting the defendant and the forum than the general availability of an online service. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) ("'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state"). This "something more" requirement is critical because, without it, the defendant would be subject to jurisdiction in *any state* where the plaintiff was located or from where he chose to

access a website. As the Supreme Court directed in another case originating from this Court, the focus must be on *defendant's contacts*, not where the plaintiff happens to reside. *Walden*, 571 U.S. at 285.

This Court's prior holdings in *Doe* and *AMA* are consistent with the panel's holding here, and require only that the plaintiff show "something more." *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1204, 1211 (9th Cir. 2020) ("geo-located advertisements" did not constitute "something more" because they would "impermissibly allow a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis" (cleaned up)); *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 447, 453 (2024) (defendants' decision to use "U.S.-based content delivery network service[s]" constituted "something more" because defendants "directly target[ed] the forum" (cleaned up)). The *Doe* court specifically noted that a defendant may expressly aim its conduct at multiple fora and still satisfy the "something more" requirement. 93 F.4th at 455 (holding that just because defendants "may have *also* differentially targeted other particular locations" does not mean that it did not "expressly aim[]" at the forum). Therefore, this Court need not revisit *Doe* and *AMA*.

But nor must the Court rely on *Doe* and *AMA* to affirm dismissal of Briskin's claims. California's only jurisdictionally relevant connection to Shopify is the fact that Briskin happened to be there when he made his purchase from IABMFG. No

authority supports the argument that Shopify "expressly aimed" its conduct at California where information was sent to Shopify over the internet solely due to the decisions of plaintiff and a third-party merchant. Thus, even if this Court dispensed with the "something more" requirement, there would not be personal jurisdiction in this case.

*Third*, the original meaning of the Fourteenth Amendment's Due Process Clause underscores the unreasonableness of subjecting the Shopify Defendants to jurisdiction in California. Specific jurisdiction—a state's exercise of personal jurisdiction over an out-of-state defendant—has traditionally been understood to be narrow and restricted. At the Founding and the ratification of the Fourteenth Amendment, a state's sovereignty was understood to be coextensive with the state's territorial boundary. A state's authority to enter binding judgments was limited to those people and things physically present within its borders. These longstanding principles were constitutionalized in the Due Process Clause. *Pennoyer v. Neff*, 95 U.S. 714 (1878). It was not until 1945 that the Supreme Court recognized that a state could exercise jurisdiction over an out-of-state corporate defendant for claims that "arise out of or are connected with the activities within the state," so long as that defendant had "minimum contacts" with the forum such that it could be said to be present there. *Int'l Shoe*, 326 U.S. at 316, 319.

The Shopify Defendants are not present in California. They have not consented to the jurisdiction of California's courts. Shopify Inc. and Shopify Payments were not served with process in the state. Although Shopify USA was served with process in California, California has never conditioned out-of-state corporations' ability to conduct business within the state on consent to jurisdiction there. *Compare Thomson v. Anderson*, 6 Cal. Rptr.3d 262, 269 (Cal. App. 2003) (rejecting corporate registration in California as a separate basis for personal jurisdiction), *with Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023) (general jurisdiction over defendant where state's registration statute expressly provided for consent to jurisdiction). A decision that California may exercise jurisdiction over the Shopify Defendants would subject every back-end internet service provider to suit in every state in which a merchant that uses those back-end services enters into a transaction with a consumer over the internet. Such a result would erode the very foundations of sovereignty and territoriality on which personal jurisdiction is based.

This case is not the right vehicle to chart new personal jurisdiction doctrine in the internet era. Under binding Supreme Court precedent, this Court's focus must

remain on the Shopify Defendants' intentional acts directed at California, not where

Briskin decided to be when the alleged harm occurred.[2]

## ARGUMENT

I. **SUPREME COURT PRECEDENT GUIDES THIS COURT'S EVALUATION OF WHETHER THERE IS SPECIFIC JURISDICTION OVER A DEFENDANT FOR CLAIMS ARISING OUT OF CONDUCT ON THE INTERNET**

The Supreme Court has not expressly set forth how its specific jurisdiction standards and rules apply to claims arising out of conduct on the internet. *See Walden*, 571 U.S. at 290 n.9 ("We leave questions about virtual contacts for another day."). Nevertheless, because the principles underlying the Supreme Court's specific jurisdiction jurisprudence ensure that the exercise of jurisdiction comports with the Constitution, this Court should (consistent with its sister circuits) apply those same, well-established rules and standards to claims arising out of conduct on the internet. The application of those rules and standards here requires dismissal.

A. **The Supreme Court Has Announced Key Principles Courts Must Apply to Determine Whether a Defendant Has the Requisite "Minimum Contacts"**

As the parties agree, and eight decades of uninterrupted case law supports, the

Shopify Defendants must have "minimum contacts" with the forum before they may

---

[2] Plaintiff is not without a forum. Shopify USA and Shopify Payments can be sued together in New York or Delaware, where they are both headquartered and incorporated, respectively. And Shopify Inc. can be sued in Ottawa, Canada, where it is headquartered and incorporated.

be subject to personal jurisdiction, and the claim asserted must arise out of or relate to those contacts. *See Int'l Shoe*, 326 U.S. at 319; Briskin Suppl. Br. at 5-7.

The Supreme Court has announced key principles to determine whether a defendant has the "minimum contacts" required: "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial connection* with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). The "minimum contacts" inquiry must focus solely on "the relationship among the defendant, the forum, and the litigation." *Id.* These principles are intended to provide "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). These same principles apply in internet cases because they are based on due process requirements set forth in controlling Supreme Court precedent. *See, e.g.*, *Cybersell*, 130 F.3d at 420 (applying minimum contacts analysis to online conduct); *Rosenthal*, 101 F.4th at 95 (same); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 251-52 (2d Cir. 2007) (same); *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (same).

*First*, due process requires that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (emphasis in original). The Supreme Court has "consistently rejected attempts to

satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.*

*Second*, to comport with due process, only contacts that "arise out of or relate" to plaintiff's claims are relevant to the minimum contacts analysis. *Ford Motor Co. v. Montana*, 592 U.S. 351, 359 (2021). The Supreme Court has stated that this rule "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford*, 592 U.S. at 362; *see also id.* ("relates to" inquiry "[d]oes not mean anything goes"). Applying that Supreme Court precedent, this Court has held that "relate to" "requires a *close connection* between contacts and injury" to avoid "collapsing the core distinction between general and specific personal jurisdiction." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) (emphasis added) (cleaned up).

*Third*, due process requires that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. Accordingly, "the defendant's conduct," not any relationship with the plaintiff, "must form the necessary connection with the forum State." *Id.*

The Supreme Court's reversal of the panel decision in *Fiore v. Walden*, 688 F.3d 558 (9th Cir. 2012), is illustrative. This Court held in *Fiore* that when a defendant "schemed against someone with substantial ties to a forum, the 'expressly

aimed' factor is met, even if all the defrauding activities occur outside the forum." *Id*. at 580. As Judge Ikuta's dissent in *Fiore* explained, looking to the plaintiff's ties to a forum to find jurisdiction over the defendant "threatens a substantial expansion of the scope of personal jurisdiction." *Id*. at 562 (Ikuta, J., dissenting); *see id.* at 568 (McKeown, J., dissenting to denial of rehearing en banc) ("Under the majority's construct, mere knowledge of the potential out-of-state plaintiff's residence, along with a wrongful act, confers specific personal jurisdiction. This virtually limitless expansion of personal jurisdiction runs afoul of both due process guarantees and Supreme Court precedent."); *id.* at 565 (O'Scannlain, J., dissenting to denial of rehearing *en banc*) (similar). In reversing, the Supreme Court agreed with the dissenting judges, holding that the "minimum contacts" inquiry assesses defendant's "own affiliation with the State." *Walden*, 571 U.S. at 285-286.

*Fourth*, in cases involving intentional torts, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on *intentional conduct* by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286 (emphasis added). This is known as the "purposeful direction" test. *Calder*, 465 U.S. at 789-91. Under "*Calder*, the 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted).

Taken together, Supreme Court precedent requires the "minimum contacts" analysis focus on whether: (1) the defendant took intentional acts, (2) expressly aimed at the forum, (3) that relate to the claims in the case.

## B. Under the Supreme Court's "Minimum Contacts" Test, There Is No Specific Jurisdiction Over the Shopify Defendants in this Case

Applying the Supreme Court's rules and standards confirms that there is no specific jurisdiction over the Shopify Defendants here.

Briskin filed suit in California, claiming that since he is a California resident who ordered apparel from the third-party retailer IABMFG while in California, California courts have personal jurisdiction over the foreign Shopify Defendants who processed his payment. Briskin's allegations do not satisfy the minimum contacts test.

*First*, the Shopify Defendants' contacts—not Briskin's or third-party IAMBFG's—must be evaluated. That Briskin happened to be in California when he made his purchase does not give rise to specific jurisdiction over the Shopify Defendants. Nor is jurisdiction created over the Shopify Defendants because Briskin made his purchase from a third party that also happened to be in California.

*Second*, the Shopify Defendants must have "minimum contacts" that "arise out of or relate" to Briskin's claims. Briskin alleges that the Shopify Defendants

have "extensive in-state operations" such as "fulfillment centers and physical stores and offices in California." (Briskin Suppl. Br. at 18.) Even if true, Briskin does not allege harm due to fulfillment centers or physical stores and offices. Nor can he: his supposed harm occurred when he purchased a product online from a third-party merchant. Allegations about fulfillment centers and physical stores are thus irrelevant because they do not "relate to" Briskin's claims. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) ("Nor is it sufficient—or even relevant—that [defendant] conducted research in California on matters unrelated to [the product-at-issue]. What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."); *see also Rosenthal*, 101 F.4th at 95 ("Bloomingdales operates stores in Massachusetts, but—given that the plaintiff has not pursued a claim of general jurisdiction regarding Bloomingdales—any claim of jurisdiction based on the operation of these stores has been waived.").[3]

*Third*, due process requires the Shopify Defendants have "minimum contacts" with *California itself* and not merely persons who reside there. Although Shopify provided services to IABMFG in connection with Briskin's purchase, Shopify did

---

[3] Briskin's amici disregard Supreme Court precedent requiring specific jurisdiction be based on a "close connection" between the forum-related conduct and the claim. *See, e.g.*, Br. of Prof. Berman (Dkt. 82) at 7 (arguing that the Court should consider as jurisdictionally relevant "a defendant's *unrelated* contacts with a state" (emphasis added)).

nothing to target California. Shopify enables transactions between IABMFG and its customers wherever they are located. Finding jurisdiction over the Shopify Defendants based on Briskin's choice to be in California when he purchased goods from IABMFG would impermissibly expand jurisdiction in the same way this Court did in *Fiore*, before reversal by the Supreme Court. *Compare Fiore*, 688 F.3d at 590 ("Walden intentionally targeted persons and funds with substantial connections to Nevada"), *with Walden*, 571 U.S. at 289 ("[s]uch reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis").

*Fourth*, to satisfy the purposeful direction test, Briskin must allege the Shopify Defendants took intentional acts expressly aimed at California. The only intentional act even arguably related to this case is that IABMFG, a California merchant, contracted with the Shopify Defendants for e-commerce services. (*See* Briskin Suppl. Br. at 18.) This allegation does not satisfy the express aiming requirement. *Calder*, 465 U.S. at 789.

As Briskin admits, the Shopify Defendants offer the same web services to merchants "wherever located." (Briskin Opening Br. at 24.) It was the third-party *merchant* in California that chose to utilize the Shopify Defendants' services and

transact with California consumers, and it was the plaintiff *customer* who decided to purchase a product from that merchant. Finding jurisdiction on these facts would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis," not the *Shopify Defendants*' intentional acts. *Walden*, 571 U.S. at 289.[4]

Briskin urges this Court to find jurisdiction because the Shopify Defendants' "intentional operations cause foreseeable harm" in California. (Briskin Suppl. Br. at 9.) Briskin's reliance on foreseeability is the same theory that this Court relied on in *Fiore* and that the Supreme Court rejected. *See Fiore*, 688 F.3d at 568 (McKeown, J., dissenting from denial of rehearing en banc) ("With the stroke of a pen, our circuit returns to a discredited era of specific personal jurisdiction, where foreseeability reigns supreme and purposeful direction is irrelevant."). Adopting Briskin's theory would violate the Supreme Court's directive that foreseeability "improperly

---

[4] Briskin argues it does not matter to the jurisdictional analysis that the Shopify Defendants offer the *same* services and allegedly create the *same* harm "everywhere." (Briskin Suppl. Br. at 8-9.) Briskin's position would require this Court go beyond even the *Fiore* majority, which held that conduct that created "undifferentiated" impacts is insufficient to find express aiming. *Fiore*, 688 F.3d at 578.

attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Walden*, 571 U.S. at 289.[5]

The First Circuit's recent decision in *Rosenthal* is instructive. 101 F.4th 90. There, plaintiff alleged that defendant's online store—bloomingdales.com— "unlawfully intercepted and used information about his activity on its website," thereby violating the Massachusetts Wiretapping Act. *Id.* at 93. Plaintiff argued that the defendant should be subject to personal jurisdiction in Massachusetts because it "cultivated a market" and "benefited from that market" in the forum. *Id.* at 96. The First Circuit affirmed dismissal for lack of personal jurisdiction because defendant's alleged acts were the same for "internet browsers of users located anywhere in the world (including Massachusetts)." *Id.* at 97. Although defendant

---

[5] The test Briskin's amici propose suffers from the same flawed analysis. *See* Br. of EFF (Dkt. 76) at 3 ("[W]here, as here, a company is credibly alleged to have *knowingly* collected consumer data from a particular state, it cannot fairly claim it has not expressly aimed its conduct toward the jurisdiction." (emphasis added)); Br. of Local Civil Prosecutors (Dkt. 81) at 15 ("Shopify expressly aimed its activities at California by *knowingly* serving the California market . . . ." (emphasis added)); Br. of Professors Borchers and Hays (Dkt. 72) at 13-14 ("Shopify *knew, or can be charged with knowledge*, that it was harvesting data from Californians because it collected the purchasers' addresses." (emphasis added)); *see also* Br. of Prof. Morrison (Dkt. 68) at 5-7 (arguing the Court should ignore minimum contacts and instead invoke the Dormant Commerce Clause). Briskin does not contend the Shopify Defendants knew *he* was in California when he made his purchase; instead, he argues it was foreseeable that Shopify might collect data from California consumers generally. The Supreme Court rejected this very argument in *Walden*, holding that foreseeability that plaintiffs reside in a particular state is not sufficient to establish express aiming. 571 U.S. at 289.

operated brick-and-mortar stores in Massachusetts, defendant did not take an intentional act directed at the forum because its jurisdictionally relevant contacts (i.e., its website) did not "intentionally target users in Massachusetts." *Id.* at 97-98.

Briskin fails to allege the Shopify Defendants took any intentional acts *expressly aimed* at California. The jurisdictional facts here are far more attenuated than in *Rosenthal*. Whereas the plaintiff in *Rosenthal* sued Bloomingdales after visiting its online store, Briskin visited IABMFG's website but seeks to sue the Shopify Defendants on the basis that he allegedly suffered harm in California. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. No such conduct connects Shopify to California.

## C.    Briskin Misapplies the Supreme Court's "Minimum Contacts" Test

Despite agreeing that Supreme Court precedent requires sufficient "minimum contacts," Briskin offers three arguments for why jurisdiction is proper. (Briskin Suppl. Br. at 5-9.) All three arguments fail to properly apply the "minimum contacts" test.

*First*, in a reversal of the position he took before the district court (ER-15-16), Briskin urges this Court to focus on *purposeful availment*, not purposeful direction (Briskin Suppl. Br. at 8-12.) The purposeful availment test contemplates a quid pro quo pursuant to which a defendant "submit[s] to the burdens of litigation" in the

forum in return for availing itself of the "benefits and protections" afforded by doing business in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Purposeful direction, by contrast, imposes the burden of litigation on a defendant that intentionally aims its conduct toward the forum knowing that harm will be suffered there. *Calder*, 465 U.S. at 788-89.

Because, as Briskin acknowledges, this case involves alleged *intentional torts* (*see* Briskin Suppl. Br. at 9), *Calder*'s purposeful direction test applies. In *Walden*, the Supreme Court held that when determining whether there is personal jurisdiction over an "intentional tortfeasor," the plaintiff "must" show "intentional conduct by the defendant that creates the necessary contacts with the forum." 571 U.S. at 286-87. The Supreme Court cited *Calder*, which is the basis for this Court's "effects test," as an "illustration of these principles" in an intentional tort case. *Id.*

This Court consistently applies *Calder*'s purposeful direction test in intentional tort cases. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228-29 (applying *Calder* effects test to internet-based conduct); *Picot v. Weston*, 780 F.3d 1206, 1213–14 (9th Cir. 2015) ("In analyzing whether a court has specific personal jurisdiction over a tort claim, we apply our three-part 'effects' test derived from *Calder*. . . ."); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (same); *Nichols v. Guidetoinsure, LLC*, --- F. Supp. 3d --- , 2024 WL 1643701, at *2 (N.D. Cal. Apr. 15, 2024) (same); *accord Tamburo v.*

*Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (same); *Wyles v. Brady*, 822 F. App'x 690, 695 (10th Cir. 2020) (same).[6]  Because this case involves intentional torts, the purposeful direction test applies.

*Second*, relying on *Burger King* and *Keeton*, Briskin argues that if purposeful availment applies, he need only allege that the Shopify Defendants "engag[ed] in significant activities" in the forum for this Court to find specific jurisdiction. (Briskin Suppl. Br. at 9.)  Even if purposeful availment applied in this case (which it does not), Briskin's expansive reading of that test is incorrect.[7]

In both *Burger King* and *Keeton*, the Supreme Court found specific jurisdiction because, unlike here, the defendants intentionally took acts in the forum that gave rise to the claims in the case.  In *Burger King*, the Supreme Court found jurisdiction over a Michigan defendant who "entered into a carefully structured

---

[6] Briskin does not cite *Calder* in his supplemental brief, let alone discuss its application here.  Even Briskin's amici do not challenge that the *Calder* effects test applies.  (*See* Br. of State AGs (Dkt. 73) at 3-4; Br. of Local Civil Prosecutors (Dkt. 81) at 8-10; Br. of EFF (Dkt. 76) at 9-10 & n.20; Br. of Prof. Borchers and Hay (Dkt. 72) at 22-23.)

[7] The States' brief suggests internet companies may have to be subject to jurisdiction in each state because states have interests in "enforc[ing] the state's own consumer protection or privacy laws….".  (Br. of State AGs at 17.)  But the Supreme Court has long held that even where a state may have a "strong interest in applying its laws," and even where the state is "the most convenient location for litigation," "the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen*, 444 U.S. at 294.

20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida" and then failed to "make the contractually required payments" pursuant to that relationship. 471 U.S. at 480. However, the Supreme Court held that "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Id.* at 478.[8] *Burger King* thus supports the Shopify Defendants, not Briskin.

The same is true of *Keeton*. In *Keeton*, the Supreme Court reaffirmed the principle that the specific jurisdiction inquiry focuses on the defendant, not the plaintiff. 465 U.S. at 779 ("we have not to date required a plaintiff to have 'minimum contacts' with the forum State before permitting that State to assert personal jurisdiction over a nonresident defendant"). The Supreme Court found specific jurisdiction because the defendant chose to sell "10 to 15,000 copies" of its magazine in New Hampshire each month, and the plaintiff's claims arose out of alleged

---

[8] Briskin contends that Shopify Defendants have contracts with many California merchants. (Briskin Suppl. Br. at 18.) Briskin nowhere explains how his claims relate to those supposed contracts, making them irrelevant. Although IABMFG is one such merchant, this Court has long held "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008).

defamatory statements in those magazines. *Id.* at 770.[9] *Keeton's* analysis thus properly focuses on the defendant's intentional forum acts relating to the claims in the case, not merely unrelated "significant activities" in the forum as Briskin urges.

Concluding that "significant activities" in the forum is sufficient to find jurisdiction would improperly conflate general and specific jurisdiction. As the Supreme Court noted in *Ford*, because general jurisdiction extends to all claims against a defendant, "[t]hose claims need not relate to the forum State or the defendant's activity." 592 U.S. at 358-59. Specific jurisdiction is different because it occurs only when there is an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (cleaned up). While all forum contacts may be considered in a general jurisdiction analysis, only contacts that "arise out of or relate to" the plaintiff's claims can be considered for specific jurisdiction. *Id.* at 358-60. Briskin's reference to the Shopify Defendants' alleged general business activities in California is thus irrelevant regardless of whether the purposeful availment or purposeful direction test applies.

*Third*, Briskin argues that Shopify's decision not to "geoblock" California constitutes an intentional act to conduct business in California. (Briskin Suppl. Br.

---

[9] *Herbal Brands* is inapposite for the same reason: the defendant merchant chose to ship physical products into the forum that created the alleged harm. 72 F.4th at 1088 (purposeful direction where a defendant "causes that product to be delivered to the forum").

at 16-17.) This argument turns the purposeful direction test on its head and adopting it would have extraordinary consequences. In *Calder*, the Supreme Court required that the defendant engage in "intentional conduct" that is "expressly aimed" at the forum. 465 U.S. at 789-91. Contrary to *Calder*, Briskin argues that an internet service provider should have to direct its activities *away* from the forum to *avoid* jurisdiction. There is no legal support for Briskin's position. Each Supreme Court case on which Briskin relies finds jurisdiction because of *intentional acts*, not the failure to take acts to avoid the forum. *See, e.g.*, *Burger King*, 471 U.S. at 481-82 ("20-year interdependent relationship Rudzewicz established with Burger King's Miami headquarters"); *Keeton*, 465 U.S. at 774 ("regular monthly sales of thousands of magazines" in New Hampshire).

If Briskin's argument were to succeed, everyone who operates on the internet could be subject to jurisdiction in all 50 states simply because of where particular plaintiffs choose to reside.[10] If a company did not want to be subject to jurisdiction in a forum, it might have to actively geoblock users. The result is that some websites would be available in some states but not others. Not only that, but back-end service providers like the Shopify Defendants might have to condition agreements with

_____

[10] Briskin, and his supporting amicis', theory would permit Briskin to travel to all 50 states, make a purchase from IABMFG while in each state, and as a result subject the Shopify Defendants to suit in every state.

merchants on the merchants not making *their* websites available to consumers in particular states. Such a patchwork would needlessly cripple commerce, consumer choice, and the internet. And it is plainly avoidable. As the Supreme Court has stated, a rule under which jurisdiction hinges on where the plaintiff happens to be is inconsistent with due process. *Walden*, 571 U.S. at 290 (no personal jurisdiction because "Respondents would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled").

## II. THIS COURT SHOULD NOT REVISIT ITS PRIOR DECISIONS IN *DOE* AND *AMA*

### A. The "Something More" Analysis Ensures Specific Jurisdiction Complies with Due Process

From its first decision analyzing personal jurisdiction arising out of conduct on the internet, this Court has consistently required the plaintiff show "something more" than maintaining online presence "to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Cybersell*, 130 F.3d at 418; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (similar). Because *Doe* and *AMA* simply apply the "something more" standard to ensure express aiming consistent with Supreme Court precedent, this Court should not and need not revisit those holdings.

As discussed above, the Supreme Court has long considered it to be "essential in each case that there be some *act* by which the defendant purposefully avails itself

of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added); *see also Walden*, 571 U.S. at 286 (requiring "intentional conduct" that "creates the necessary contacts with the forum"). The mere fact that it is foreseeable that defendants' acts may have an effect in the forum is not enough.

In *Asahi*, for example, the Supreme Court held that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State," even though it is foreseeable that the defendant's product might enter the forum. *Asahi Metal Industry Co, Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987). "[T]he Due Process Clause [requires] *something more* than that the defendant was aware of its product's entry into the forum State through the stream of commerce in order for the State to exert jurisdiction over the defendant." *Id.* at 111 (emphasis added); *cf. J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 889 (2011) (Breyer, J., concurring) (citing *Asahi* for "something more" requirement). In *Herbal Brands*, this Court concluded that a merchant that sells goods to consumers over the internet "must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce" before personal jurisdiction may be exercised consistent with due process. 72 F.4th at 1094.

There is no reason, in law or otherwise, why the "something more" requirement would not apply in the internet context. As with a defendant who simply puts her product into the stream of commerce, web service providers can offer services globally. Just as a third party can take a physical product into a forum without any forum-directed activity by the defendant, a third party can utilize the web-based services without any relevant forum-directed activity by the service provider. Without the "something more" requirement, there could be personal jurisdiction over every web service provider in every state based simply on where the plaintiff chose to interact on the internet. *See ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) ("If ... a person's act of placing information on the Internet subject[ed] that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist."). Such a jurisdictional rule would violate due process and conflict with Supreme Court precedent. *Walden*, 571 U.S. at 286.

This Court has recognized in multiple decisions spanning decades that online activity that does not specifically target California does not provide the express aiming necessary to comply with due process. *Cybersell*, 130 F.3d at 415 ("offer[ing] web page construction services over the Internet" is not enough); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) (no purposeful direction

by defendant who operated a forum-agnostic website). Other circuits are uniformly in accord. *See, e.g.*, *McBee v. Delica Co., Ltd.*, 417 F.3d 107, 124 (1st Cir. 2005) ("[t]he mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible" and so "something more is necessary"); *Young,* 315 F.3d at 262-63 (similar); *Johnson*, 21 F.4th at 325-26 (similar).[11]

A natural consequence of this longstanding precedent is that there must be "something more" to establish express aiming involving a nationally accessible web service. The "something more" requirement properly balances the interests of the state to exercise jurisdiction over a defendant whose intentional activities target the forum, while ensuring that forum-agnostic web services are not subject to specific jurisdiction in every state. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) ("something more" is a way to determine "whether the defendant's conduct was expressly aimed at the forum"). "Overturning a long-

---

[11] *See also XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 846-47 (10th Cir. 2020) ("Purposeful direction cannot be satisfied if the website host, web poster, or email sender simply wants as many responses as possible but is indifferent to the physical location of the responder."); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (rejecting argument that "mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' with [the] forum").

standing precedent is never to be done lightly," particularly where "private reliance interests" are implicated. *United States v. Heredia*, 483 F.3d 913, 918 (9th Cir. 2007) (en banc). The "something more" requirement has proved a workable framework for decades and should not now be second guessed.

**B.**   **The "Something More" Analysis Does Not Require that Contacts Directed at a Forum Exceed Those Directed at Other Fora**

Briskin and amici mischaracterize the "something more" analysis as requiring that express aiming at the forum *exceed* aiming at all other fora and thus request the Court reject *Doe* and *AMA* to the extent they contain that requirement. Neither *Doe* nor *AMA*, nor the panel opinion here, imposes such a requirement.

The *Doe* court held that the plaintiff showed "something more" because the defendant "contract[ed] with U.S.-based content delivery network services [] for their websites" to specifically "improve the viewing experience of persons" in the U.S. 93 F.4th at 453-54. The court did not hold that the defendant's aiming toward the U.S. "exceeded" its aiming toward other jurisdictions. Indeed, the *Doe* court specifically noted that defendants "may have *also* differentially targeted other particular locations" in the same way that they did the U.S. *Id.* at 455 (emphasis added). Since the defendant specifically aimed its case-related acts at the U.S., there was "something more" to tie the defendant to the forum. *Id*.

The *AMA* court likewise did not require the plaintiff to show the defendant's conduct toward the forum "exceed[ed]" all other fora. In *AMA*, there was no specific

jurisdiction because the plaintiff failed to show that the defendant's website had a "forum-specific focus," that the defendant "expressly aimed the site at the [forum]," or that the defendant "tailored the website to attract U.S. traffic." 970 F.3d at 1210-11. Instead, the defendant, like Shopify here, made available a forum-agnostic service on the internet. It was the *plaintiff* who took acts that caused the service to be used in the forum. *Id.* at 1211 (no jurisdiction because "all users in every forum received advertisements directed at them" (cleaned up)). As in *Doe*, the *AMA* court did *not* require that the "something more" exceed aiming at other jurisdictions. *Id.* at 1210.

Therefore, "something more" requires conduct intentionally directed at the forum; it does not require such conduct to exceed conduct directed at other fora. The panel decision did nothing more than carefully survey these and other precedents and faithfully apply them to the facts before it to reach the unanimous conclusion that exercising personal jurisdiction over the Shopify Defendants would violate due process. *See Briskin*, 87 F.4th at 417. This is consistent with the Amici States' request that the Court "clarify that a defendant that conducts business via websites is not entitled to special jurisdictional protection by requiring that a plaintiff prove

that defendant's contacts with the forum are differentiated from and in excess of the defendant's contacts with any other forum." (States' Br. at 7.)[12]

Even if this Court dispensed with the "something more" requirement, there would not be personal jurisdiction over the Shopify Defendants here. The Shopify Defendants offered their services to *merchants* over the internet, not to consumers like Briskin. (*Compare* Briskin Suppl. Br. at 3-4 (incorrectly asserting the Shopify Defendants "forge[d] online connections with *shoppers* in the forum" (emphasis added), *with* ER-95 (describing how "*merchants* located in the United States sign up for Shopify's services" (emphasis added)), *and* ER-99 ("Shopify is an e-commerce platform that enables *merchants* to sell products online." (emphasis added)).) Briskin's only connection to Shopify is through his decision to make a purchase from third-party merchant IABMFG and IABMFG's decision to use Shopify's services. There is no authority supporting the argument that Shopify "expressly aimed" its

---

[12] The States' mistaken interpretation of this Court's precedents lead them to foretell of dire consequences. *Id.* at 17 ("For a sovereign state suing a foreign defendant for violating state law, a lack of personal jurisdiction in the state's own courts leaves no appropriate venue to enforce the state's substantive laws."). But as the States note, they have "plenary power . . . to define [their] own law[s], independent of the federal government." *Id.* at 19. Just as Pennsylvania conditioned registration to do business on consent to general jurisdiction, Amici States could do the same. This Court should not tread new constitutional ground to resolve a concern that could easily be ameliorated through state action.

conduct at California where information was sent to Shopify over the internet solely

due to the decisions of the plaintiff and a third party.

**III.   THE ORIGINAL MEANING OF THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE CONFIRMS THE UNREASONABLENESS OF EXCERSIZING JURISDICTION OVER THE SHOPIFY DEFENDANTS**

### A.   The Due Process Clause Embodies Longstanding Principles of Sovereignty and Territorial Limits

Before ratification of the Fourteenth Amendment, it was well established that

"a foreign corporation could not be sued" outside the state of its incorporation.  *St.*

*Clair v. Cox*, 106 U.S. 350, 354 (1882) (citing *McQueen v. Middleton Manuf'g Co.*,

16 Johns. 5, 6 (N.Y. 1819) ("a foreign corporation never could be sued here")).  To

address this issue, "the legislatures of several states interposed and provided for

service of process on officers and agents of foreign corporations doing business

therein." *Id.* at 355; *see also Mallory*, 600 U.S. at 130 (similar).  The Supreme Court

upheld such statutes as an exercise of the state's sovereignty within its territorial

limits.  *See Lafayette Ins. Co. v. French*, 59 U.S. 404, 407 (1855).

Less than a decade after the Fourteenth Amendment's ratification, *Pennoyer*

*v. Neff* held that longstanding jurisdictional principles of sovereignty and

territoriality were constitutionalized in the Due Process Clause.  95 U.S. at 731-33;

*see* James Weinstein, *The Federal Common Law Origins of Judicial Jurisdiction:*

*Implications for Modern Doctrine*, 90 Va. L. Rev. 169, 209 (2004) ("by virtue of the

then-recently ratified Due Process Clause of the Fourteenth Amendment, the jurisdictional rules that had long governed interstate recognition cases would now directly limit the assertion of state court jurisdiction").

For a court to validly undertake "a determination of the personal liability" of a defendant, the Due Process Clause required the defendant "be brought within its jurisdiction *by service of process within the State, or his voluntary appearance.*" *Pennoyer*, 95 U.S. at 733 (emphasis added); *see also St. Clair*, 106 U.S. at 353 (applying *Pennoyer* to corporations). *International Shoe* later crafted an exception to *Pennoyer*'s strict requirement of in-state service or consent to jurisdiction, but the Supreme Court's emphasis on sovereignty and territorial limits remained. 326 U.S. at 317, 320 (defining "presence" within a state to include "when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on").

### B. The Shopify Defendants Are Not Subject to Specific Jurisdiction Under Longstanding Jurisdictional Principles

The principles of territoriality and sovereignty that existed at the enactment of the Fourteenth Amendment and that undergird the Due Process Clause demonstrate that the Shopify Defendants are not "present" in California and are not subject to personal jurisdiction in the forum.

None of the Shopify Defendants is incorporated in or has its principal place of business in California. (Briskin Suppl. Br. at 37).[13] Shopify Inc. and Shopify Payments were served with process outside of California. Although Shopify USA was served with process through its registered agent in Sacramento, California, California does not require companies registered to do business to consent to jurisdiction in the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 377 P.3d 874, 884 (Cal. 2016) ("[A] corporation's appointment of an agent for service of process, when required by state law, cannot compel its surrender to general jurisdiction for disputes unrelated to its California transactions."), *rev'd on other grounds*, 582 U.S. 255 (2017). Shopify USA therefore did not consent to jurisdiction merely by designating an agent for service of process in California.

Briskin contends that California "*could have*" required Shopify USA to consent to general jurisdiction in the state as a condition of doing business there. (Briskin Suppl. Br. at 37 (emphasis added)). That may be true, but California did not do so, and, regardless, Briskin admits that he "has not argued that any of the

---

[13] Shopify Inc. is a Canadian corporation with its principal place of business in Ottawa, Canada. (ER-95.) Shopify Payments (USA) Inc. is a Delaware Corporation with its principal place of business in Delaware. (ER-97.) Shopify (USA) Inc. is a Delaware Corporation with its principal place of business in New York. (ER-88-89.)

Shopify entities is subject to general, all-purpose jurisdiction in California." (Briskin Opening Br. at 19.)

"Provisions for making foreign corporations subject to service in the state is a matter of legislative discretion . . . ." *Missouri Pac. R. Co. v. Clarendon Boat Oar Co.*, 257 U.S. 533, 535 (1922). The Supreme Court has made clear that the "failure to provide for such service is not a denial of due process" and "[s]till less is it incumbent upon a state in furnishing such process to make the jurisdiction over the foreign corporation wide enough to include the adjudication of transitory actions not arising in the state." *Id.*; *accord King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 575 (9th Cir. 2011). Regardless of whether California's legislature *could* enact a statute requiring that Shopify USA consent to general jurisdiction as a condition of doing business in the state, what matters for purposes of due process is whether California *has* done so. It has not.[14]

The principles of territoriality and sovereignty that underlie personal jurisdiction require that an out-of-state defendant be "present" in a state before a court in that forum can bind the defendant. Because no Shopify Defendant is present

---

[14] The Supreme Court's decision in *Mallory* did not change that. *See, e.g.*, *Chaganti v. Fifth Third Bank*, 2024 WL 2859259, at *9 (Cal. Ct. App. June 6, 2024) ("California does not have the same type of law that was at issue in *Mallory*" because Cal. Corp. Code § 2105(a) "says nothing about agreeing to appear in court on 'any cause of action,' as the Pennsylvania law in *Mallory* did").

in California, jurisdiction over them must be based on minimum contacts. And, as explained above, no such contacts exist for purposes of Briskin's claims.

## CONCLUSION

The touchstone of the personal jurisdiction analysis is—and has always been—a defendant's relationship with a state, as limited by the state's territorial borders. No court has adopted the theory Briskin advances, because to do so would be to ignore the longstanding significance of territorial borders and subject all internet-based business, large and small, to jurisdiction in virtually any state in the country. Because they did not take any actions directed at California, exercising personal jurisdiction over the Shopify Defendants based on their back-end role facilitating a transaction between Briskin and IABMFG would offend traditional notions of fair play and substantial justice enshrined in the Fourteenth Amendment's Due Process Clause. The panel opinion should be affirmed. Alternatively, should the Court identify a new standard for personal jurisdiction in the context of internet-based conduct, the Court should remand this case to the district court to apply that standard to the facts alleged in the first instance. *See, e.g.*, *Burri L. PA v. Skurla*, 35 F.4th 1207, 1217 (9th Cir. 2022) (vacating decision dismissing complaint

for lack of personal jurisdiction and remanding "so that the district court may assess these questions afresh").

Dated: July 26, 2024

Respectfully submitted,

By: /s/ Moez Kaba
Moez M. Kaba (CA Bar No. 257456)
Allison Libeu (CA Bar No. 244487)
Sourabh Mishra (CA Bar No. 305185)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
mkaba@hueston.com
alibeu@hueston.com
smishra@hueston.com

Adam F. Minchew (NY Bar No. 5661808)
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, NY 10014
Telephone: (646) 930-4046
aminchew@hueston.com

*Attorneys for Defendants-Appellees*
*Shopify Inc., Shopify (USA) Inc., and*
*Shopify Payments (USA) Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 22-15815

I am the attorney or self-represented party.

**This brief contains 8,387 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[XX] complies with the length limit designated by court order dated May 23, 2024.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Moez M. Kaba      **Date** July 26, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 /s/ Kirstin Largent