# 22-15815

IN THE

# United States Court of Appeals
### FOR THE NINTH CIRCUIT

◆◆◆

BRANDON BRISKIN, on behalf of himself and those similarly situated,

*Plaintiff-Appellant,*

—v.—

SHOPIFY, INC.; SHOPIFY (USA) INC.; SHOPIFY PAYMENTS (USA) INC.,

*Defendants-Appellees.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, 4:21-CV-6269-PJH (HAMILTON, S.J.)

---

**BRIEF OF THE COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION AS *AMICUS CURIAE*
SUPPORTING DEFENDANTS-APPELLEES**

---

STEPHANIE JOYCE
COMPUTER & COMMUNICATIONS
  INDUSTRY ASSOCIATION
25 Massachusetts Avenue NW
  Suite 300C
Washington, DC 20001
(202) 783-0070

*Attorneys for Amicus Curiae*

# RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* states as follows:

The Computer & Communications Industry Association ("CCIA") is a trade association operating as a 501(c)(6) non-profit, non-stock corporation organized under the laws of Virginia. CCIA has no parent corporation and no publicly held corporation owns 10% or more of its stock.

/s/ *Stephanie A. Joyce*
Stephanie A. Joyce

August 2, 2024

i

# TABLE OF CONTENTS

STATEMENT OF *AMICUS CURIAE* ..................................................................1

INTEREST OF *AMICUS CURIAE* .....................................................................2

INTRODUCTION ................................................................................................2

SUMMARY OF ARGUMENT ............................................................................4

ARGUMENT ........................................................................................................5

I.    THE PANEL APPROPRIATELY RELIED ON SETTLED LAW TO CONCLUDE THAT THE DISTRICT COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS-APPELLEES. .............................5

II.   PLAINTIFF-APPELLANT'S ARGUMENT WOULD ESTABLISH VIRTUALLY LIMITLESS JURISDICTION, AND POTENTIAL LEGAL EXPOSURE, FOR THE INTERNET ECOSYSTEM. ...................9

CONCLUSION ...................................................................................................11

CERTIFICATE OF COMPLIANCE ..................................................................12

CERTIFICATE OF SERVICE ............................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*AMA Multimedia, LLC v. Wanat*,
　970 F.3d 1201 (9th Cir. 2020) ................................................................................ 6

*Calder v. Jones*,
　465 U.S. 783 (1984) .............................................................................................. 3, 4

*Cybersell, Inc. v. Cybersell, Inc.*,
　130 F.3d 414 (9th Cir. 1997) .................................................................................. 7

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
　141 S. Ct. 1017 (2021) ........................................................................................... 3

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
　72 F.4th 1085 (9th Cir. 2023) ................................................................................ 6

*International Shoe Co. v. Washington*,
　326 U.S. 310 (1945) .............................................................................................. 6, 10

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
　647 F.3d 1218 (9th Cir. 2011) ............................................................................... 3, 6

*Will Co. v. Lee*,
　47 F.4th 917 (9th Cir. 2022) .................................................................................. 6

*World-Wide Volkswagen Corp. v. Woodson*,
　444 U.S. 286 (1980) .............................................................................................. 10

**Other Authorities**

Abbas Haleem, *U.S. ecommerce sales reached $1.119 trillion in 2023*,
　Digital Commerce 360 (Feb. 26, 2024),
　https://www.digitalcommerce360.com/article/us-ecommerce-
　sales/#:~:text=U.S.%20ecommerce%20sales%20accounted%20for,do
　n't%20typically%20sell%20online ......................................................................... 9

Census Department, Quarterly Retail E-Commerce Sales (May 17, 2024),
　https://www.census.gov/retail/ecommerce.html ................................................... 10

# STATEMENT OF *AMICUS CURIAE*

This brief was authored entirely by the undersigned counsel and was funded entirely by the *amicus curiae*. No person or party other than *amicus curiae* contributed money to the creation, filing, or service of this brief. All parties have consented in writing to the filing of this brief. Defendant-Appellee Shopify Inc. is a member of *amicus curiae*.

# INTEREST OF *AMICUS CURIAE*

*Amicus curiae* the Computer & Communications Industry Association ("CCIA") is an international, not-for-profit association representing a broad cross-section of communications, technology, and internet industry firms that collectively employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars to the global economy. For more than 50 years, CCIA has promoted open markets, open systems, and open networks.

CCIA submits this brief to urge the *en banc* Court to affirm the panel's decision in order to prevent the inevitable, far-reaching, and damaging consequences to the internet ecosystem that Plaintiff-Appellant's position invites. CCIA's member companies, many of which are based in this Circuit, employ innovative business models that optimize the availability of popular goods and services for users across the United States. Such companies are often targets for

civil suits, including class actions, filed in district courts in any nook or cranny of the country where the forum is deemed favorable for plaintiffs. The expansive, in fact limitless, theory of personal jurisdiction that Plaintiff-Appellant advances would exponentially increase the exposure of virtually the entire internet and strip away the constitutional protections that settled, applicable personal jurisdiction precedent has so long guaranteed.

## **INTRODUCTION**

The Shopify Defendants-Appellees[1] provide back-office services that facilitate transactions between third-party merchants and consumers. In this case, Plaintiff Briskin bought clothing from IABMFG, whom he did not sue, and Shopify Payments (USA) Inc. processed the credit card charge. That is a construct by which a great proportion of internet-based consumer shopping is provided in the United States.

Defendants-Appellees—"a group of out-of-state online payment processors" (Petition for Rehearing En Banc (ECF 50-1) ("Pet.") at 1)—are organized under the laws of Ottawa and Delaware, and have their principal places of business in Ottawa, Delaware, and New York. Opinion (ECF 47-1) ("Op.") at 6. Plaintiff-Appellant concedes that "the primary defendant here" is "a Canadian company that is

---

[1] Shopify Inc., Shopify Payments (USA) Inc., and Shopify (USA) Inc.

headquartered in Canada[,]" Pet. at 2, and none of the Defendants-Appellees "is headquartered or incorporated in California." *Id*. at 4. He also concedes that "[w]hen a consumer accesses a Shopify platform through a merchant's website, the consumer appears to be interacting solely with the merchant." *Id*. The alleged conduct giving rise to the underlying claims is "monitor[ing] the consumer's behavior across Shopify's entire network of over one million merchants," Pet. at 4, via consumer interactions with "nationally accessible" websites, *id*. at 2, that reach "into *every* state." *Id*. at 2 (emphasis in original).

The question that was before the panel and is now before the *en banc* court is whether the district court can exercise specific jurisdiction over any of the Defendants consistent with the Due Process clause as explicated by settled precedent from the Supreme Court and this Circuit. After thorough analysis grounded in the tests established in *Calder v. Jones*, 465 U.S. 783 (1984), *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011), and *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), the panel held that the district court lacked jurisdiction.

Plaintiff-Appellant, in his effort to discredit the panel's decision, largely avoids grappling with its personal-jurisdiction analysis in favor of positing that consumers are now bereft of any forum to sue a company of nationwide reach unless general jurisdiction can be asserted. Pet. at 1, 2, 10. This hyperbole does not,

however, obscure the clear guidance that the panel provides to claimants: establish that the defendant made an intentional act targeted to the forum state, and personal jurisdiction is satisfied. Plaintiff-Appellant remains unable to establish those facts, and that failing has long been grounds for dismissal. The panel's reasoning is not "new", Pet. at 9, 10, it is well founded and sound.

## SUMMARY OF ARGUMENT

Applying settled law that is binding on or was established in this Circuit, the panel held that Defendants-Appellees did not "expressly aim" their conduct into California as the Supreme Court's test in *Calder v. Jones*, 465 U.S. 783 (1984), requires, Op. at 4, 16, but rather they simply operate "a purely 'passive' website," *id*. at 20 (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997)), that "processes consumer payments." *Id*. at 26. The panel did not establish any "new principles" in its decision, *see* Pet. at 10, nor did it ignore applicable precedent in its close review under *Calder* of "whether the effects of the defendant's actions were felt in the forum state." Op. at 10. Contrary to Plaintiff-Appellant's argument for reversal, the panel's analysis did not "run counter to precedents of this Court and the Supreme Court," Pet. at 15—his position boils down to protesting that the panel's analysis would not enable plaintiffs to sue large-scale corporations in any forum they choose, even where the corporations' conduct was not aimed at,

or specifically intended for, the forum state.

Not only does the panel's opinion stand foursquare on well-settled precedent, it also carries the benefit of avoiding exponential expansion of personal jurisdiction over virtually every internet website and application in the online ecosystem. By asserting that a "nationwide course of conduct" is sufficient to haul any company into any district court, Pet. at 10, Plaintiff-Appellant asks this Court to jettison decades of jurisprudence and destroy any predictable rubric for ensuring the Due Process clause retains any force in jurisdictional analysis. He asks the Court to enable tremendously expanded litigation burdens and legal exposure for every commerce-related website in the country. Were Plaintiff-Appellant successful in this attempt, the internet would likely cease to provide users the breadth and scope of services that they enjoy today.

## ARGUMENT

### I. THE PANEL APPROPRIATELY RELIED ON SETTLED LAW TO CONCLUDE THAT THE DISTRICT COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS-APPELLEES.

Plaintiff-Appellant's core argument for obtaining *en banc* review is that the panel's opinion "announces new principles" to govern personal jurisdiction. Pet. at 9, *see also id*. at 10. That assertion is false.

The purportedly "new principles" on which the panel relied involve distinguishing between a company that sells "physical products through an

5

interactive website" and notoriously ships them to the buyer, Op. at 28, versus a company engaged in "other internet activity" such as displaying content on a website, Op. at 30. That dichotomy is not new in this Circuit—it flows from three prior decisions of this Court, two of which held that specific jurisdiction was established,[2] which were synthesized last term in *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023). *See* Op. at 21.

Ensuring that the district court had personal jurisdiction over Shopify is a matter of due process. *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945); *see also* Op. at 8 (citing, *inter alia*, *Ford Motor Co.*, 141 S. Ct. at 1024). Where, as here, a plaintiff concedes that defendant is not subject to general jurisdiction, Op. at 8, plaintiff must demonstrate that defendant "ha[s] certain minimum contacts with" the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). As the panel aptly noted, "minimum contacts" and "fair play and substantial justice" have received close attention in this Circuit for nearly 30 years—"[a]lmost as soon as the

---

[2] *Will Co. v. Lee*, 47 F.4th 917 (9th Cir. 2022) (operators of ThisAV.com were subject to personal jurisdiction in United States); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) (district court lacked jurisdiction over ePorner operators located in Poland); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) (district court had specific jurisdiction over defendant Brand).

internet became a thing." Op. at 2, 3 (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997)).

Most importantly, this Circuit has striven to figure out what "minimum contacts" means for a defendant that works largely, or only, in digital signals emanating from a centralized source located many states or countries away. To begin, a website could not merely be "passive" by "mak[ing] information available to visitors," but rather must be "interactive" such that "users can exchange information with the host computer[.]" *Cybersell, Inc.*, 130 F.3d at 418. If the defendant website qualifies as "interactive," this Court reasoned, plaintiff must then establish "'something more' to indicate that the defendant purposefully (albeit electronically) directed [its] activity in a substantial way to the forum state." 130 F.3d at 418. Absent that "something more," asserting specific jurisdiction over the out-of-state defendant would indeed offend notions of "fair play and substantial justice." The *Cybersell* plaintiffs could not meet that burden and thus dismissal was affirmed. 130 F.3d at 420.

*Cybersell* is almost 30 years old. The panel expressly and painstakingly applied *Cybersell*, along with other internet-based cases like *Mavrix* and *AMA Multimedia*, to determine whether any Defendant-Appellee "exhibited an intent to cultivate an audience in the forum." Op. at 21 (quoting *Herbal Brands*, 72 F.4th at 1092). The panel found that no Defendant-Appellee had done so. Op. at 30. These

7

principles are not new and they were properly applied here. As such, the panel should be affirmed.

Plaintiff-Appellant's other chief argument is that the panel has left plaintiffs in this Circuit with only general jurisdiction as the basis for suing internet-based companies. Pet. at 1, 2. More than that, he purports that "the panel concluded that injured consumers … can sue only in fora with general jurisdiction over the defendants." Pet. at 2 (cite Op. at 28). But the panel reached no such conclusion and Plaintiff-Appellant's grandiose reaction misses the clear language of the panel's opinion.

The panel stated that Shopify "will be subject to personal jurisdiction in other fora, such as the jurisdictions where" they "are either incorporated or based." Op. at 28. Though not identified as such, that type of forum contact would satisfy general personal jurisdiction. The panel also stated, however, that in cases against "a web-based payment processor," Op. at 30, courts should explore whether specific jurisdiction is met, directing them to apply "*Mavrix*, *AMA*, and *Will Co*." Op. at 30. It bears repeating that, in two of those cases, the internet-based service was found properly to have been summoned to the district court via specific personal jurisdiction. *See supra* at 6 n.2. In no way did the panel state that specific jurisdiction was off the table for other plaintiffs.

Sound legal rationale and applicable precedent therefore strongly favor

8

affirmance of the panel's decision.

## II. PLAINTIFF-APPELLANT'S ARGUMENT WOULD ESTABLISH VIRTUALLY LIMITLESS JURISDICTION, AND POTENTIAL LEGAL EXPOSURE, FOR THE INTERNET ECOSYSTEM.

Affirming the panel is not only correct as a matter of law, it is the correct course due to the significant risk that reversal would pose to the internet ecosystem as a whole.

The business model being examined in this inquiry is commonly found among commercial websites and applications. It is a back-office—not consumer-facing—arrangement by which consumers complete purchases, with entities like Defendants-Appellees acting as the disinterested, remote payment processor. As stated above, in this case, Plaintiff Briskin went online to find some clothing and he found it on the IABMFG website. IABMFG made an offer, Mr. Briskin accepted it, and underneath the sale was the payment-processing functionality that Shopify procured from Stripe. This transaction is similar to millions of sales that occur on the internet every day: in 2023, 15.4% of sales of good and services in the United States happened online.[3] And according to the Census Bureau of the Department of Commerce, e-commerce retail sales for 1Q2024 totalled $289.2 billion, which is

---

[3] Abbas Haleem, *U.S. ecommerce sales reached $1.119 trillion in 2023*, Digital Commerce 360 (Feb. 26, 2024), https://www.digitalcommerce360.com/article/us-ecommercesales/#:~:text=U.S.%20ecommerce%20sales%20accounted%20for,don't%20typically%20sell%20online (last visited Aug. 2, 2024).

an increase of 2.1% over 4Q2023.[4] A great deal of the nation's commerce depends on the type of internet-based transaction that Mr. Briskin used in this case.

Companies that rely on the e-commerce retail chain to sell their products rely on the understanding that "traditional notions of fair play and substantial justice" will decide which fora have the power to adjudicate claims lodged against them. *International Shoe*, 326 U.S. at 316. These principles, grounded in due process, "give[] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Here, the rationale and holding of the panel preserve that necessary "predictability" for countless internet-based and internet-supporting companies, enabling them to continue innovating, refining, and enhancing their products for the betterment of consumers.

The position advanced by Plaintiff-Appellant would upend this *status quo*. To accept that position is to state that silently supporting the functionality of a website is an immediate concession of specific jurisdiction anywhere in the country, regardless of who else participated in the retail chain, the actual activity undertaken by the defendant, and whether any intent or effort was focused by the defendant into

---

[4] Census Department, Quarterly Retail E-Commerce Sales (May 17, 2024), https://www.census.gov/retail/ecommerce.html (last visited Aug. 2, 2024).

the forum state.

Writ large, Plaintiff-Appellant's argument is that ubiquity equals intentionality—a rule that would bring internet commerce to a screeching halt. Indeed, it is this "principle" that would be "new" (*see* Pet. at 9) in personal-jurisdiction precedent. Its unavoidable effect would be to compel the companies that facilitate—but do not invite, request, or initiate—online commerce to exit the market, which would deal a crushing blow to consumer choice and digital innovation.

## **CONCLUSION**

For all these reasons, this *en banc* Court should affirm the panel's decision.

Respectfully submitted,

Dated: August 2, 2024

By: /s/*Stephanie A. Joyce*
Stephanie A. Joyce
COMPUTER & COMMUNICATIONS
   INDUSTRY ASSOCIATION
25 Massachusetts Avenue, NW
Suite 300C
Washington, DC 20001
Tel. (202) 783-0070
stephaniejoyce@ccianet.org

# CERTIFICATE OF COMPLIANCE

In compliance with Fed. R. App. P. 29(a)(4), I certify that, according to the word-count function of Microsoft Word, the foregoing brief *amicus curiae* contains 2,348 words, which is less than one-half the number of words that Fed. R. App. P. 32(a)(7) generally affords to a party for its principal brief.

                                          /s/ *Stephanie A. Joyce*
                                          Stephanie A. Joyce

# CERTIFICATE OF SERVICE

I, Stephanie A. Joyce, hereby certify that on August 2, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                  /s/ *Stephanie A. Joyce*
                                                  Stephanie A. Joyce

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-15815

I am the attorney or self-represented party.

**This brief contains** 2,348 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Stephanie A. Joyce  **Date** August 2, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**  Rev. 12/01/22