No. 22-15815

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRANDON BRISKIN,

*Plaintiff-Appellant*,

v.

SHOPIFY INC., *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California, No. 4:21-cv-06269-PJH
Honorable Phyllis J. Hamilton, Senior District Judge

**BRIEF FOR AMICI CURIAE SOFTWARE AND DIGITAL ECONOMY ASSOCIATIONS IN SUPPORT OF DEFENDANTS-APPELLEES**

THOMAS G. SAUNDERS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6536
thomas.saunders@wilmerhale.com

August 2, 2024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

INTEREST OF AMICI CURIAE ...........................................................................1

INTRODUCTION ..................................................................................................3

SUMMARY OF THE ARGUMENT .....................................................................4

ARGUMENT .........................................................................................................5

I. LONGSTANDING LIMITS ON PERSONAL JURISDICTION SUPPORT THE PANEL'S DECISION ...........................................................................5

    A. Personal Jurisdiction Analysis Requires That The Defendant's Conduct Be Directed At The Forum State .............................................6

    B. Third-Party Action Does Not Confer Jurisdiction ...............................7

    C. General Contacts With A State Are Not Sufficient To Establish Specific Personal Jurisdiction ..............................................................9

II. THE PANEL'S DECISION STRIKES AN APPROPRIATE BALANCE OF PRACTICAL CONSIDERATIONS IN THE INTERNET ERA ....................10

    A. Enforcing Limits On Personal Jurisdiction Does Not Render Defendants Immune From Suit ...........................................................10

    B. Expanding Personal Jurisdiction To Encompass Digital Contacts Will Have A Chilling Effect On Commerce .......................................11

    C. More Expansive Jurisdiction Would Violate The Dictates Of Federalism ...........................................................................................12

CONCLUSION ....................................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Asahi Metal Industry Co. v. Superior Court of California*,
    480 U.S. 102 (1987)..................................................................................7

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    582 U.S. 255 (2017)..................................................................................9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................. 7-8

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................10

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    592 U.S. 351 (2021)........................................................................6, 9, 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)............................................................................9, 10

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)..................................................................................6

*Kulko v. Superior Court of California*,
    436 U.S. 84 (1987)....................................................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014)..................................................................................7

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..................................................................................6

# OTHER AUTHORITIES

*Facts & Data on Small Business and Entrepreneurship*, SMALL
 BUSINESS & ENTREPRENEURSHIP COUNCIL,
 https://sbecouncil.org/about-us/facts-and-data ............................................... 11

# INTEREST OF AMICI CURIAE[1]

The question before the Court has far-reaching implications for the digital economy. Amici are associations and companies concerned that overly expansive views of personal jurisdiction in the context of interactions which occur primarily or exclusively through the internet may significantly expand the number of fora in which companies are subject to jurisdiction, disrupting the traditional balance and subjecting business-to-business providers to suit in a wide variety of jurisdictions based on actions of their customers that are beyond their control.

BSA | The Software Alliance is the leading advocate for the global software industry before governments and in the international marketplace. Its members are among the world's most innovative companies, creating cutting-edge cloud services, artificial intelligence, data analytics, cybersecurity solutions, and other digital capabilities to help businesses of all sizes in every part of the economy. BSA advocates globally for public policies that foster technology innovation and drive growth in the digital economy.

ACT | The App Association is an international not-for-profit grassroots advocacy and education organization representing small business software

---

[1] All parties to this appeal have consented to the filing of this brief. No counsel for any party authored this brief in whole or in part, and no person or entity other than amicus and its counsel made a monetary contribution intended to fund the preparation or submission of this brief.

application developers and technology firms that create the apps used on mobile devices and in enterprise systems around the globe.  Today, ACT represents an ecosystem valued at approximately $1.8 trillion and responsible for 6.1 million American jobs.  ACT members are small business leaders in developing innovative applications and products across consumer and enterprise use cases.

The Interactive Advertising Bureau (IAB) is an advertising industry trade association that develops industry standards, conducts research, and provides legal support for the online advertising industry.  Through its public policy advocacy, IAB works to build a sustainable and consumer-centric media and marketing ecosystem and raise the industry's political visibility and profile as a driving force in the global economy through grassroots advocacy, member fly-ins, research, and public affairs campaigns.

The Financial Technology Association (FTA) represents industry leaders in finance.  FTA champions the power of technology-centered financial services and advocates for the modernization of financial regulation to support inclusion and responsible innovation.  FTA believes in breaking down barriers to give small businesses, entrepreneurs, and consumers greater access to financial services.  FTA's members are innovative, new market entrants driving competition with traditional financial players, lower-cost products, and greater consumer choice.  FTA prioritizes trust, transparency, and fairness in the financial technology

industry, and its members put consumers first with responsible financial products and services.

## INTRODUCTION

After conducting a detailed analysis of personal jurisdiction in the internet era, the panel correctly determined that courts in California do not have personal jurisdiction over Shopify, an online payment service provider, in the context of this case. The panel's reasoning fits squarely with the personal jurisdiction principles articulated by the Supreme Court and this Court, and the en banc Court should adopt the panel's conclusion.

Defining the limits of personal jurisdiction in the context of the internet can involve difficult questions, but the Court now faces a simple case in a complicated area of law. Shopify is a third-party payment service provider that, like many other third-party service providers, has established a relationship with the vendors who use its services. The activities Shopify directs toward those vendors, who are Shopify's only customers in this situation, do not open the door for courts with personal jurisdiction over those *vendors* to also exercise personal jurisdiction over *Shopify*. Any connection between Shopify and the vendors' customers is not the result of Shopify's purposeful direction with respect to those end customers, but rather depends on the independent decisions of the third-party vendors regarding their own operations.

3

Subjecting a company to person jurisdiction in such circumstances would effectively subject it to personal jurisdiction *everywhere* its customers do business, and could open the door to similarly expansive exercises of jurisdiction over a wide variety of other third-party service providers, such as software providers, cybersecurity firms, content delivery networks, cloud storage and processing services, communications platforms, and a host of other companies that power their customers' operations.

This Court does not need to sweep broadly or craft general rules for the internet as a whole in order to resolve such a straightforward case. Indeed, the Court should be wary of creating unintended consequences by venturing beyond the facts before it. Instead, it should confine itself to deciding this case, and rely on Shopify's role as a third-party service provider to hold that there is no personal jurisdiction on the facts of this case.

## SUMMARY OF THE ARGUMENT

This Court's analysis of the personal jurisdiction question in this case should be guided by three key principles. First, the focus of the analysis must be on the defendant's conduct and whether the defendant purposefully directed the allegedly injurious conduct at the forum state. Providing access to software or support services with the mere knowledge that they might be accessed in a particular state is not sufficient. Second, third-party action does not confer jurisdiction over a

defendant who did not control those actions. A company that offers business-to-business services should not be subjected to personal jurisdiction in a state based on the independent decisions made by its business customers. Third, general contacts with a state are not sufficient to establish specific personal jurisdiction.

Enforcing these limits on personal jurisdiction does not immunize a defendant from suit, but merely requires that the suit be brought in a forum with jurisdiction. In contrast, failing to enforce limits on personal jurisdiction would have a chilling effect on digital commerce, especially with respect to small businesses that merely provide support services to other companies. Expanding jurisdiction would also be inconsistent with a federalist system in which parties should have clear notice of where they will be subject to jurisdiction and an opportunity to adjust their actions accordingly.

## ARGUMENT

**I. LONGSTANDING LIMITS ON PERSONAL JURISDICTION SUPPORT THE PANEL'S DECISION**

Amici will not repeat the careful and comprehensive analysis of prior cases performed by the panel and Shopify. Instead, amici wish to highlight three doctrinal principles that are particularly important and should guide the Court's analysis. First, the focus of specific personal jurisdiction is on the *defendant's* conduct in relation to the forum. The defendant's allegedly injurious conduct must have been purposefully directed at California, and mere knowledge of a

downstream effect on a forum is not sufficient. Second, specific personal jurisdiction cannot be based on the independent actions of third parties. Third, general contacts with a state do not establish specific personal jurisdiction, and the focus must remain on the relevant conduct related to the suit.

> A. **Personal Jurisdiction Analysis Requires That The Defendant's Conduct Be Directed At The Forum State**

The internet can collapse distances and mask the complexity of transactions, but it is important not to lose sight of the fact that the focus of any personal jurisdiction inquiry must be on the actions taken *by the defendant* in relation to the forum state. "[A]n essential criterion" of the analysis "is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." *Kulko v. Superior Ct. of Cal.*, 436 U.S. 84, 92 (1987). Only when a corporate defendant purposefully directs its actions at the forum state does it have adequate notice and the opportunity to "alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). To satisfy the requirement, the "contacts [with the forum state] must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Importantly, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Ind. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987). Under these long-standing principles, providing access to software or support services with the mere knowledge that they *could*, or even anticipation that they *will*, be accessed in a particular state is an insufficient basis for asserting jurisdiction. Rather, the defendant's own alleged injurious conduct must have intentionally targeted the forum state.

### B. Third-Party Action Does Not Confer Jurisdiction

A corollary to the principle that the personal jurisdiction analysis must focus on the defendant's own purposeful activity directed at a forum state is that actions taken by a third party do not establish personal jurisdiction over a defendant who did not control those actions. The Supreme Court has explicitly made this point: "[A] defendant's relationship with a plaintiff *or third party*, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (emphasis added). For a court to exercise specific jurisdiction over a defendant, that defendant must be "haled into court in a forum State *based on his own affiliation with the State*, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.*

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis added).

A company that offers business-to-business services should not be subjected to personal jurisdiction in a state based on the independent decisions made by its business customers there.  Here, Briskin asserts jurisdiction on the basis of a third-party's location.  Shopify made its online payment services available for use by vendors anywhere in the country.  Shopify did not expressly take aim at *consumers* in California in doing so.  Rather, a business located in California chose to make use of Shopify's software by integrating it into its own online store, and the plaintiff then made a purchase from that online store while located in California.

In these circumstances, it is not the backend service provider that has targeted end consumers in California.  A backend service provider's customers are the other businesses that use its services, and it is agnostic as to where those vendors operate.  It is also agnostic as to where the customers of those vendors interact with the vendors.  Whether a plaintiff is a resident of California who accesses the vendor's website in California, a resident of California who accesses the vendor's website while traveling in another state, or someone who has never set foot in California, the backend service provider's actions are the same and are directed at assisting the company that is its customer.

### C. General Contacts With A State Are Not Sufficient To Establish Specific Personal Jurisdiction

A defendant's general connections with a state are not enough to confer jurisdiction for a particular claim. Rather, a case may be brought against the defendant in the forum state only if the claims "'arise out of or relate to'" the defendant's specific contacts with the state. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 272 (2017) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Importantly, the *injury itself* must arise from, or be related to, the contacts. *Ford*, 592 U.S. at 362. The Supreme Court emphasized that this inquiry does "not mean anything goes," and it "incorporates *real limits*, as it must to adequately protect defendants foreign to a forum." *Id.* (emphasis added). Therefore, to assert personal jurisdiction, a court must be able to establish "a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id.* at 365 (quoting *Helicopteros*, 466 U.S. at 414).

Like the panel, the Court should conclude that employees and market share in a state are not sufficient factors to establish specific jurisdiction in a lawsuit. Relying on general contacts to establish specific personal jurisdiction would improperly collapse the distinction between specific and general personal jurisdiction. The Supreme Court has held that states may exercise general jurisdiction "only when the corporation's affiliations with the State in which suit is

brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The paradigmatic examples of such contacts are a company's "place of incorporation and principal place of business." *Id.* at 137. This Court should not allow these important limits to be evaded by allowing loose use of a company's general contacts with a forum in the specific personal jurisdiction analysis. That would expand *Ford*'s notion of relatedness closer to its prohibition on "anything goes." *Ford*, 592 U.S. at 362.

## II. THE PANEL'S DECISION STRIKES AN APPROPRIATE BALANCE OF PRACTICAL CONSIDERATIONS IN THE INTERNET ERA

In addition to comporting with long-standing legal principles, the panel's decision strikes an appropriate balance of practical and policy considerations relating to personal jurisdiction in the internet era. An overexpansive reading of personal jurisdiction would have a chilling effect on digital commerce and threaten the balance of federalism.

### A. Enforcing Limits On Personal Jurisdiction Does Not Render Defendants Immune From Suit

The conclusion that specific personal jurisdiction cannot be established in a particular forum does not immunize a defendant from suit. Personal jurisdiction can almost always be established in a company's state of incorporation or in the

state where it maintains its principal place of business.  The question in this case is not whether there can be a lawsuit, but whether the particular forum the plaintiff selected for suing a backend service provider comports with the traditional limits on personal jurisdiction.

### B. Expanding Personal Jurisdiction To Encompass Digital Contacts Will Have A Chilling Effect On Commerce

Most companies in the technology space are smaller than Shopify, and many offer services with even less control over where their product is utilized.  There is an entire industry of backend software providers, from accounting support to payment processors to cloud computing and storage, that has little-to-no control over where a product is accessed or used.  Companies in this space rarely direct their actions at end users and such interactions are usually indirect or intermediated through their business customers.  Expanding personal jurisdiction will have devastating effects on this industry, and the threat of nationwide jurisdiction will disincentivize further technological development.

There are thousands of software companies in the United States alone, with many new businesses formed each year.  Companies in the technology space are predominantly small businesses.  *Facts & Data on Small Business and Entrepreneurship*, SMALL BUS. & ENTREPRENEURSHIP COUNCIL, https://sbecouncil. org/about-us/facts-and-data.  One area of particular growth in the past twenty years has been the vast pool of new companies focused on assisting other companies that

provide services online.  This evolving landscape is packed with young enterprises lacking the resources—financial, personnel, or otherwise—to travel to any forum to defend their startups against litigation from unintended contacts.

The expansive notions of personal jurisdiction being advanced by plaintiff and its amici would subject emerging companies in the digital economy to nationwide jurisdiction from the moment they go live with their new services.  In the sensitive period when a startup is first raising capital and starting to scale, this rapid expansion of exposure to suit from coast to coast could be devastating and would chill efforts to develop and commercialize the new technologies that are so important to economic growth in the United States.

    **C.**    **More Expansive Jurisdiction Would Violate The Dictates Of Federalism**

A central tenet of personal jurisdiction is that parties should be able to avoid suit in any given forum by structuring or conducting themselves appropriately, and at the very least, they should have clear notice of where they will be exposed to suit.  Unbounded notions of jurisdiction threaten defendants' ability to predict where they will be subject to suit and to structure their operations accordingly.

In the interconnected digital economy, one company may use the services of numerous service providers to support its operations.  For example, a manufacturer in Texas might (1) use a cloud-based human capital management tool from a company headquartered in California to track recruiting, training, payroll,

compensation, and performance; (2) process manufacturing data using computer power and storage from a company headquartered in New York; (3) connect with customers through an online presence hosted by a company headquartered in Massachusetts; (4) process payments using the services of a company headquartered in Delaware; and (5) have all these activities protected remotely by a cybersecurity firm headquartered in Idaho.

The activities these supporting companies direct toward the manufacturer should not open the door to personal jurisdiction over the supporting companies everywhere the manufacturer does business. The service providers may have no idea exactly where the manufacturer operates, and having structured themselves as providers of backend business-to-business service, they have directed their efforts toward the manufacturer, not toward the states in which the manufacturer's customers happen to be located.

To hold otherwise would deprive the supporting companies of control over which markets to target and where to establish significant contacts. It would also make personal jurisdiction unpredictable and dependent on the intervening acts of third parties. If states are the laboratories of democracy, the notions of reasonableness and fairness that underpin the limits on personal jurisdiction dictate that companies are at least entitled to know in advance whether they are part of the experiment.

## CONCLUSION

The en banc Court should affirm the dismissal of the case for lack of personal jurisdiction.

Respectfully submitted,

/s/ Thomas G. Saunders
THOMAS G. SAUNDERS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6536
thomas.saunders@wilmerhale.com

August 2, 2024

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Circuit Rule 29-2(c)(3).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 2,953 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Thomas G. Saunders
THOMAS G. SAUNDERS

August 2, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of August, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Thomas G. Saunders
THOMAS G. SAUNDERS